IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

MARQUIS LEE RAYNER,         :   CASE NO. 21-3230
          APPELLANT     :
                         :
         V.             :
                         :
SUPERINTENDENT FOREST SCI,   :
ET AL.,                     :
     RESPONDENTS/APPELLEES   :

## BRIEF OF THE APPELLANT, MARQUIS LEE RAYNER

    (The Appellant, Marquis Lee Rayner, has appealed to the United States Court of Appeals for the Third Circuit, from the Order dated November 22, 2021 and docketed on November 23, 2021 by the Honorable John M. Gallagher of the United States District Court for the Eastern District of Pennsylvania, affirming the dismissal of Mr. Rayner's Habeas Corpus Petition (28 U.S.C.A 2554) but granting a Certificate of Appealability on the issue of sufficiency of evidence. Judge Gallagher denied a Certificate of Appealability on the other issues. The case was docketed at Civil No. 18-CV-04909).

                  Samuel C. Stretton, Esquire
                  Attorney for Appellant,
                   Marquis Lee Rayner
                  103 South High Street
                  P.O. Box 3231
                  West Chester, PA  19381-3231
                  (610) 696-4243
                  Attorney I.D. No. 18491

## NOTICE OF CORPORATE DISCLOSURE

Not applicable.

Case: 21-3230     Document: 18     Page: 2     Date Filed: 06/27/2022

# I. TABLE OF CONTENTS

**PAGE**

NOTICE OF CORPORATE DISCLOSURE

I.    TABLE OF CONTENTS                                          i

II.   TABLE OF CITATIONS                                        iii

III.  STATEMENT OF BOTH SUBJECT MATTER
      JURISDICTION AND APPELLATE JURISDICTION                    1

IV.   STATEMENT OF ISSUES PRESENTED FOR REVIEW                   3

V.    STATEMENT OF THE CASE (PROCEDURAL)                         5

VI.   STATEMENT OF FACTS                                        13

VII.  STATEMENT OF RELEATED CASES AND
      PROCEEDINGS                                               14

VIII. STATEMENT OF THE STANDARD AND SCOPE
      OF REVIEW                                                 44

IX.   SUMMARY OF THE ARGUMENT                                   46

X.    ARGUMENT                                                  52

XI.   CONCLUSION                                                90

Certificate of Bar Membership

Certificate of Word Count

Certificate of Identical Compliance of Briefs

Certificate of Virus Check

Certificate of Service

Appendix – Volume I (A-1 to A-31[A][B])

Case: 21-3230     Document: 18     Page: 3     Date Filed: 06/27/2022

## II. TABLE OF CITATIONS

**CASES**                                                              **PAGE**

Cavazos v. Smith 565 US 1,
131 Sup. Ct. 2 (2011)                          42, 46, 62, 63

Commonwealth v. Rayner 153 A.3d 1049
(Pa. Super., 2016)                             7, 8, 13, 44, 55, 62

Jackson v. Virginia 443 US 307,
99 Sup. Ct. 2781 (1979)                        41, 45, 48, 60, 61,
                                               63, 67, 68, 69, 71,
                                               73, 76

Rayner v. Overmyer 2021 WL 5496867
(September 1st, 2021)                                          64

Travillion v. Superintendent of Rockview
982 F.3d 896 (3rd Cir., 2020)        46, 47, 48, 66, 69,
                                     71, 72, 73, 75, 76

United States v. Antico 295 F.3d 245, 260,
(3rd Cir., 2001)                                              41


**PENNSYLVANIA STATUTES**

18 Pa. C.S.A. 903                                        6, 43, 58

18 Pa. C.S.A. 903(a)                                          58

18 Pa. C.S.A. 2502(b)                                    5, 43, 57

18 Pa. C.S.A. 3502                                         5, 58

18 Pa. C.S.A. 3502(a)(i)                                     58

18 Pa. C.S.A. 3507(a)(i)                                     43

Case: 21-3230    Document: 18    Page: 4    Date Filed: 06/27/2022

Case: 21-3230     Document: 18     Page: 5     Date Filed: 06/27/2022

18 Pa. C.S.A. 3701(1) & (2)                                5

18 Pa. C.S.A. 3701(a)(i)                              43, 57

**<u>UNITED STATES STATUTES</u>**

28 U.S.C.A. 2254                    1, 2, 3, 8, 13, 41, 60, 61

**<u>UNITED STATES CONSTITUTION</u>**

Fourteenth Amendment                              3, 41, 43

## III. STATEMENT OF BOTH SUBJECT MATTER JURISDICTION AND APPELLATE JURISDICTION

The Appellant, Marquis Lee Rayner, was convicted of murder of the second-degree and related offenses after a trial by jury in the Court of Common Pleas of Chester County, Pennsylvania. This case is before this Honorable Court on appeal from the denial of his issue of sufficiency of evidence in his Habeas Corpus Petition pursuant to 28 U.S.C.A. 2254. His Habeas relief was denied by the Honorable John M. Gallagher of the United States District Court for the Eastern District of Pennsylvania. A Certificate of Appealability was issued on the issue of sufficiency of evidence.

This Honorable Court has appellate jurisdiction over the present appeal pursuant to 28 U.S.C.A. 1291 giving Court of Appeal jurisdiction over all final decisions of the District Courts of the United States.

This court has subject matter jurisdiction over this matter since it involved a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C.A. 2254.

# IV. STATEMENT OF ISSUES PRESENTED FOR REVIEW

1) Did the Honorable John M. Gallagher err in adopting the recommendation of Magistrate Judge, the Honorable Henry S. Perkin in dismissing this Habeas Corpus Petition pursuant to 28 U.S.C.A. 2254 on the issue of sufficiency of evidence even though a Certificate of Appealability was issued? Were the verdicts finding Mr. Rayner guilty of murder of the second-degree, robbery, burglary and conspiracy to commit robbery and burglary not supported by sufficient evidence and did the verdicts violate the due process clause under the Fourteenth Amendment of the United States Constitution? Were the verdicts not supported by sufficient evidence since no one identified Mr. Rayner, no statement was made, and the only evidence was a black t-shirt found one and a half blocks from the scene of the crime that contained Mr. Rayner's DNA and three other persons' DNA and the t-shirt was 15 to 16 feet away from a jar taken from the house which contained his half-brother's fingerprints and Mr.

Rayner presented an alibi defense? Could no rational trier of fact have found Mr. Rayner guilty beyond a reasonable doubt because of the highly speculative evidence? --- Judge Gallagher affirmed the recommendation of Magistrate Judge Perkin and dismissed the Habeas Corpus Petition but allowed a Certificate of Appealability on the issue.

4

## V. STATEMENT OF THE CASE (PROCEDURAL)

The Appellant, Marquis Lee Rayner, was charged with the murder of Dominick Williams for a crime that occurred on Friday, June 29th, 2012 at 12:23am at the location of 744 Merchant Street in Coatesville, Pennsylvania. Mr. Rayner's half-brother, Dominique Lee was also charged.

The case was assigned to then President Judge, the Honorable James MacElree, II, of the Court of Common Pleas of Chester County. A trial with a jury was held before Judge MacElree beginning on November 17th, 2014 and concluding with a jury verdict on November 20th, 2014 (see A-149 through A-911). On November 20th, 2014 the jury returned the following verdict (see A-909, A-910 and A-911):

A) Count 3 – Murder of the Second Degree (18 Pa. C.S.A. 2502(b) – guilty.

B) Count 7 – Robbery (18 Pa. C.S.A. 3701[1]&[2]) – guilty.

C) Count 14 Burglary (18 Pa. C.S.A. 3502 – guilty.

D) Count 10 Conspiracy to Commit Robbery and Burglary (18 Pa. C.S.A. 903) – guilty.

Mr. Rayner's co-defendant, his half-brother, Dominique Lee, was also convicted of the same charges by the jury (A-912, A-913, A-914).

A sentencing was held before Judge MacElree on April 17th, 2015. Judge MacElree sentenced Mr. Rayner as follows:

A) Murder of the Second Degree – life imprisonment.

B) Robbery – 90 months to 20 years consecutive to the life sentence.

C) Burglary – 54 months to 20 years consecutive to the life sentence.

D)  Conspiracy – 90 months to 20 years consecutive to the life sentence.

Judge MacElree also ordered restitution. Timely Post-Trial Motions were filed by Mr. Stretton on behalf of Mr. Rayner. Mr. Stretton has represented Mr. Rayner on all Post-Trial Motions and Appeals and this current

Habeas on a pro bono basis. The reason is, Mr. Stretton
believes and actually knows that Mr. Rayner is
innocent. The person who committed the crime is well
known on the streets. Mr. Rayner has always asserted
his innocence.

Judge MacElree denied Post-Trial Motions, six days
after they were filed on April 23rd, 2015. Mr. Stretton
then filed a timely appeal to the Superior Court of
Pennsylvania raising a number of issues. Judge MacElree
allowed Mr. Stretton to proceed in forma pauperis on
behalf of Mr. Rayner. Judge MacElree, on April 15th,
2015, filed his Opinion, (A-46).

A timely appeal was taken to the Superior Court of
Pennsylvania by Mr. Stretton. Oral argument was held
before Superior Court Judges, the Honorable Jack A.
Panella, the Honorable Jacqueline O. Shogan, and the
Honorable William Platt. Judge Platt actually wrote the
Decision which was filed on December 29th, 2016. The
argument was held on October 26th, 2016, (A-32). The
case is cited as Commonwealth v. Rayner 153 A.3d 1049

(Pa. Super., 2016). It is important to note on the day

Mr. Stretton argued the case, he was told by the

Superior Court Panel that he had won the case and he

did not have to continue to argue. Of course, that

turned out not to be correct as seen by the

aforementioned Decision, (A-32).

A timely Petition for Allowance of Appeal was filed

with the Supreme Court of Pennsylvania by Mr. Stretton

on behalf of Mr. Rayner. By Order dated July 11th, 2017,

the Supreme Court of Pennsylvania denied the Petition

for Allowance of Appeal, (A-44).

Mr. Stretton then filed a Petition for Writ of

Certiorari to the United States Supreme Court. After

two conferences, the United States Supreme Court denied

the Petition for Writ of Certiorari, (A-45).

Mr. Stretton, who is firmly convinced of Mr.

Rayner's innocence and feels there was a grave

injustice here, then filed a Petition for Writ of

Habeas Corpus pursuant to 28 U.S.C.A. 2254, (A-78). Mr.

Stretton raised both sufficiency and weight of evidence

and all other issues raised before the Superior Court of Pennsylvania. The issues which were fully raised with the Pennsylvania Superior Court and Pennsylvania Supreme Court, were weight of evidence, sufficiency of evidence, whether or not there was a denial right of cross examination by hearsay testimony by Detective Dutter concerning an anonymous call, and whether the District Attorney, in his closing, misled the jury by suggesting that Mr. Rayner had kept his alibi defense secret until the last day of trial, when witnesses were presented when in fact the alibi defense and notice had been filed months before the trial. In addition, Mr. Stretton had raised the issue that the Assistant District Attorney gave his personal opinion. The final very serious issue was the interference by Judge MacElree with Mr. Stretton's cross-examination of a key prosecution witness, and Judge MacElree's criticism of Mr. Stretton before the jury and Judge MacElree's repeated interruption of Mr. Stretton's closing argument, telling the jury Mr. Stretton was incorrect

on the burden of proof. In fact, Mr. Stretton was not.
All of these issues were raised in addition to the
current issue of sufficiency of evidence.
Unfortunately, no Certificate of Appealability was
allowed on the other issues, (A-31[A]&[B]).

Once the Writ of Habeas of Corpus was filed, the
case was originally assigned to the Honorable J. Curtis
Joyner of the United States District Court. A Petition
for Writ of Habeas Corpus had been timely filed on
November 8th, 2018, (A-78, A-79). Judge Joyner assigned
the case to Magistrate Judge, the Honorable Henry S.
Perkin. Mr. Stretton asked for a briefing schedule with
Judge Perkin and by Order dated December 21st, 2018,
Judge Perkin gave Mr. Stretton thirty (30) days to file
his Brief in support of his Habeas Corpus Motion which
Mr. Stretton did.

Despite requests, Judge Perkin did not allow any
hearing or argument. On September 1st, 2021 Judge Perkin
issued his Report and Recommendation, (A-12). Judge
Perkin recommended the denial of the Writ of Habeas

Corpus but indicated a Certificate of Appealability would be allowed on the issue of sufficiency of evidence only, (A-12).

Mr. Stretton filed timely objections to Judge Perkin's Decision, with the Honorable John M. Gallagher of the United States District Court for the Eastern District of Pennsylvania. Judge Gallagher had replaced Judge Joyner, who had retired. Judge Gallagher, by Order dated November 22nd, 2021, but docketed on November 23rd, 2021, dismissed Mr. Rayner's Petition for Habeas Corpus but issued a Certificate of Appealability following the recommendation of Judge Perkin, solely on the issue of the issue of sufficiency of evidence, (A-9).

Mr. Stretton then filed a timely appeal to the United States Court of Appeals for the Third Circuit on December 1st, 2021, (A-1). Mr. Stretton, in the Notice of Appeal, not only raised the issue of sufficiency of evidence but also requested this Honorable Court reverse the decision of Judge Gallagher in not issuing

a Certificate of Appealability on the other issues. Mr.
Stretton filed a request for a Certificate of
Appealability on all issues. Unfortunately, on April
21st, 2022 this Honorable Court denied those other
requests for appealability, (A-31[A]&[B]).

Mr. Stretton's Brief was originally due on May 31st,
2022. Mr. Stretton asked for a thirty (30) day
extension and this Appellate Brief is now due on June
30th, 2022.

## VI. STATEMENT OF RELATED CASES AND PROCEEDINGS

There are no directly related underlying cases or proceedings. To Mr. Stretton's knowledge, the co-defendant, Dominique Lee, did not timely file an appeal, at least initially. Whether he has filed a PCRA Petition, Mr. Stretton does not know.

Obviously, as mentioned in the procedural history of this case, prior to coming to this Honorable Court through the Petition for Writ of Habeas Corpus pursuant to 28 U.S.C.A. 2254, there was a direct appeal of Mr. Rayner's convictions to the Superior Court of Pennsylvania and to the Pennsylvania Supreme Court. The Pennsylvania Superior Court affirmed the Judgement of Sentence by decision of Commonwealth v. Rayner 153 A.3d 1049 (Pa. Super., 2016), (A-32). The Pennsylvania Supreme Court denied the Petition for Allocatur by Order dated July 11th, 2017, (A-44). The United States Supreme Court then denied the Petition for Writ of Certiorari on February 20th, 2018, (A-45). These are the related proceedings in the State Court.

## VII. STATEMENT OF FACTS

Since the only issue before this Honorable Court is sufficiency of evidence, the factual summary and statement is critical. As noted above, the Appellant, Marquis Lee Rayner, was charged with the murder of Dominick Williams for a crime that was committed on Friday June 29th, 2012 at 12:23am at the location of 744 Merchant Street in Coatesville, Pennsylvania. As noted in the previous section, Mr. Rayner's half-brother, Dominique Lee, was also charged.

Mr. Rayner has absolutely and emphatically asserted his innocence. The crime was committed at a location that sold marijuana regularly. People would come all hours of the day and night and buy marijuana. The night in question, around 12:30 or so in the evening, three men forced their way into this house/apartment. This was on the first floor in Coatesville, Pennsylvania. All men wore t-shirts over their face and at least one or two wore black t-shirts. There were three men. When they entered, one of the men pulled a gun and shot the person who leased the apartment, Dominick Williams.

That person was shot one time initially and died. There were three other people that were present at the time of the robbery. The perpetrators then went to the backroom where Mr. Crawford was present and took a plastic jar that contained marijuana, money and cigarettes. They then fled the apartment.

No one could identify who the assailants were. The police discovered later that morning the jar that was taken from the back bedroom, was stuck in a bush about a block and a half away around the corner from the scene of the crime. That jar had approximately ten or eleven sets of fingerprints including Dominique Lee's fingerprints, the half-brother of Marquis Rayner. Approximately 16 feet from the jar, on the grass, there was a black t-shirt that resembled the kind of t-shirts the assailants were using during their robbery/home invasion. That t-shirt contained Marquis Rayner's DNA with the DNA of three or four other people. There was no other evidence linking Mr. Rayner to this crime. Mr. Rayner presented four alibi witnesses placing him at

American Legion Hall at the time of the home invasion. The American Legion Hall was about two blocks away.

This was an extremely frustrating case because there was no evidence linking Mr. Rayner other than pure speculation. The other DNAs found on the t-shirt were not tested by the prosecution. The other fingerprints on the jar were not checked by the prosecution. There were 14 people who could have been suspects by fingerprints or DNA. Further, Mr. Lee, the half-brother if he was involved, could have easily taken Mr. Rayner's t-shirt out of the clothes bin or something like that.

The only issue is sufficiency of the evidence. A thorough review of the evidence will now be discussed with citation to the appendix.

The first Commonwealth witness was Jaleel Outz (11/17 N.T. 57), (A-153). Mr. Outz had an open case for burglary and two prior drug convictions for possession (11/17 N.T. 58), (A-154).

On Thursday, June 28, 2012, Mr. Outz went to the
house of his friend, Dominick Williams, the decedent,
at 744 Merchant Street in Coatesville, Pennsylvania
(11/17 N.T. 59), (A-155).  He went with Cornelia Bowers
(11/17 N.T. 62), (A-158).  He was playing an X-Box game
(11/17 N.T. 63), (A-159).

In the early morning hours of Friday, June 29,
2012, Mr. Outz stated three people entered the
apartment.  He said they were wearing tee shirts on
their face and blue jeans (11/17 N.T. 66, 67), (A-164).
He said the three people were all black males (11/17
N.T. 67), (A-164).  He said all three people had
handguns and one gun was a revolver (11/17 N.T. 68),
(A-164).  He said one man fired a gun when he came in,
which struck and killed Mr. Williams.  Mr. Williams was
shot in the leg, and died from his injuries (11/17 N.T.
69), (A-165).  Mr. Outz said there also was a person in
the back bedroom, Mr. Crawford, who was known as A.J.
(11/17 N.T. 71), (A-167).  Mr. Outz indicated one of
the men who came in went in the back room and came out

Case: 21-3230    Document: 18    Page: 23    Date Filed: 06/27/2022

holding something in his hand and then ran out (11/17 N.T. 71, 72), (A-167, A-168). Mr. Outz said he was struck in the head with the butt of a gun (11/17 N.T. 72), (A-168).

After the men left, Mr. Outz locked the door and he said A.J. (Mr. Crawford) called the police. Mr. Outz indicated Mr. Williams was lying on the floor (11/17 N.T. 73), (A-169). Mr. Outz said the man who left the room from the back was carrying a jar in his hand (11/17 N.T. 74, 75), (A-171).

On cross-examination, Mr. Outz denied that he and Mr. Williams were running a marijuana business out of the house (11/17 N.T. 79), (A-175). He was reminded that someone had attempted to enter the house when he was there on Wednesday, June 28, 2012 at 2:00 a.m., but the door was locked (11/17 N.T. 81, 82), (A-177, A-178). He was questioned extensively on the person who knocked on the door on Wednesday, who said their name was Trey. Mr. Outz testified the voice didn't sound like Trey (11/17 N.T. 86-88), (A-182, A-183, A-184).

Mr. Outz agreed he testified that the three men came in and the third person went into the bedroom (11/17 N.T. 96), (A-192). He indicated another man stayed where Mr. Williams was on the ground (11/17 N.T. 96), (A-192). He said the man who hit him was the same man who left the bedroom (11/17 N.T. 97), (A-193). He said the third person just stayed at the door (11/17 N.T. 97), (A-193).

Mr. Outz said the man who did the shooting was about 5'8" – 5'9" and around 175-185 lbs. (11/17 N.T. 98), (A-194). He described the other two people as slender and shorter and not very tall (11/17 N.T. 98), (A-194). He said the man who came out of the bedroom was carrying a large jar (11/17 N.T. 102), (A-198).

The next Commonwealth witnesses Cornelia Bowers (11/17 N.T. 114), (A-210). She was 23 years of age at the time of her testimony (11/17 N.T. 115), (A-211). She testified on the evening of Thursday, June 28th into the early morning hours of Friday, June 29th, she was with her friend at Dominick Williams' house on Merchant

19

Street (11/17 N.T. 115, 116), (A-211, A-212). She said
she was dating Jaleel Outz at the time (11/17 N.T.
116), (A-212). She said she fell asleep at the house
and was awoken when three men entered the house (11/17
N.T. 118), (A-214). She said she could not see their
faces since they were covered by tee shirts (11/17 N.T.
118, 119), (A-214, A-215). She believed all three of
them had guns (11/17 N.T. 119), (A-215). She was not
able to tell the race of the men (11/17 N.T 119), (A-
215). Her recollection was refreshed when she
indicated in her earlier statement the men were black
(11/17 N.T. 120), (A-216). She indicated after the
three men came in, one stayed by the door, one was over
where Mr. Williams was located, and one was in the back
room where A.J. had been sleeping (11/17 N.T. 122), (A-
218).

Ms. Bowers testified the man who went in the back
room came out carrying a jar. It was a clear jar
(11/17 N.T. 123), (A-219). She indicated when the man
came out of the bedroom, all three men left (11/17 N.T.

123), (A-219). She testified she called 911 and gave her phone to A.J. (11/17 N.T. 123, 124), (A-219, A-220).

On cross-examination, Ms. Bowers indicated Zachary Thomas left the house shortly before in the incident (11/17 N.T. 130), (A-226). She agreed she could not identify any of the persons who were involved in the robbery (11/17 N.T. 130), (A-226). She said she did not see the shooting of Mr. Williams because the gunshot sounds woke her up (11/17 N.T. 130), (A-226). She indicated one man was standing by Mr. Williams, one man was standing by the door, and all three men were dressed in black (11/17 N.T. 130, 131), (A-226, A-227). She indicated one man went into the back bedroom where Mr. Crawford was located (11/17 N.T. 130), (A-228). She stated the entire incident took less than a minute (11/17 N.T. 131), (A-227).

Ms. Bowers testified all three men had black tee shirts on. No one had a white tee shirt on (11/17 N.T. 132), (A-228).

The next Commonwealth witness was Aaron Crawford
(A.J.) (11/17 N.T. 141), (A-237). He testified he was
29 years of age at the time of his testimony (11/17
N.T. 141). He testified he had an open driving under
the influence case (11/17 N.T. 142), (A-238).

Mr. Crawford indicated he was living in June of
2012 at 744 Merchant Street in Coatesville,
Pennsylvania (11/17 N.T. 142, 143), (A-238, A-239). He
said he lived there with his cousin, Dominick Williams,
who was paying him rent (11/17 N.T. 143), (A-239). Mr.
Crawford said he had his own bedroom in the house. He
said Mr. Williams slept on the couch (11/17 N.T. 147,
148), (A-243, A-244).

On Friday, June 29th, in the early morning hours,
Mr. Crawford said he was asleep when he heard a loud
bang (11/17 N.T. 148), (A-244). He said he woke up and
started to get up to see what happened (11/17 N.T.
148), (A-244). He said he was pushed back into his
room by a person. He said the person had a white tee
shirt on his head and was African American (11/17 N.T.

149), (A-245). He said the tee shirt covered everything but his eyes (11/17 N.T. 150), (A-246). He said the person was asking him where it was and hit him with the pistol over his head (11/17 N.T. 150), (A-246). He said the pistol was in the person's right hand (11/17 N.T. 150, 151), (A-246, A-247).

Mr. Crawford indicated a second person then came into the bedroom, and that person, who was African American, had a black shirt over his head (11/17 N.T. 151), (A-247). That person also had a pistol. Mr. Crawford said the second person was shorter than he (Mr. Crawford was 6'2" at the time) (11/17 N.T. 152), (A248).

Mr. Crawford stated he opened the dresser door and gave one of the gunmen a jar that contained some marijuana and money, as well as a Newport cigarette pack (11/17 N.T. 155), (A-251).

Mr. Crawford identified the jar in question, which was marked as Commonwealth-10 (11/17 N.T. 155), (A-251). He said the person who took the jar was the

first one in the room (11/17 N.T. 156), (A-251). He
said he was then told to sit on the bed and both men
ran out of the room (11/17 N.T. 157). He said the men
were in his room for maybe a minute or two (11/17 N.T.
157), (A-253).

Mr. Crawford came out of the room and saw Mr.
Williams on the floor and noted Mr. Williams had been
shot in one of his legs (11/17 N.T. 158), (A-254). He
indicated he then called 911 (11/17 N.T. 159), (A-255).

Mr. Crawford said before he went to the hospital,
the police took him over to 8th Avenue where there was a
jar and a tee shirt on the ground or in the bushes
(11/17 N.T. 161, 162), (A-257, A-258). He identified
the jar as the one taken from his room (11/17 162), (A-258). He noted there was a pack of Newport cigarettes
still in the jar (11/17 N.T. 163), (A-259). He said
the marijuana that had been in the jar was his and the
decedent's (11/17 N.T. 163, 164), (A-259, A-260).

Mr. Crawford then identified the black tee shirt.
He testified, "It's the picture of the black shirt one

of the men had on their head." (11/17 N.T. 164), (A-260). He said he thought the tee shirt was a couple feet away (11/17 N.T. 164), (A-260). He was then actually shown the shirt and confirmed the shirt was the same as the shirt in the photograph (11/17 N.T. 164, 165), (A-260, A-261).

On cross-examination, Mr. Crawford agreed that he and Mr. Williams had a side business of selling marijuana (11/17 N.T. 174), (A-270). He testified he never had more than two ounces of marijuana in his room at one time (11/17 N.T. 174), (A-270). He said they would sell only to friends and people they liked (11/17 N.T. 174), (A-270).

Mr. Crawford indicated that he and Mr. Williams smoked a lot of marijuana and they would purchase marijuana and have friends come over, and the friends could buy some if they wanted (11/17 N.T. 174, 175), (A-270, A-271).

On Thursday, June 28, 2012, Mr. Crawford said Mr. Williams, the decedent, woke him up at 11:30 p.m. to

give him his rent money (11/17 N.T. 175), (A-271). He
put the money in the bureau (11/17 N.T. 175), (A-271).
Mr. Crawford testified the rent money was never taken
during the robbery (11/17 N.T. 175, 176), (A-271, A-
272). Mr. Crawford said he fell back to sleep again
and the next thing he heard was a loud noise (11/17
N.T. 176), (A-272).

Mr. Crawford was impeached with his prior testimony
that the men were in the bedroom for about 15-20
seconds (11/17 N.T. 182), (A-278). He testified that
some men had white tee shirts and one man had a black
tee shirt. He was impeached with earlier testimony
where he indicated all three men had black tee shirts
(11/17 N.T. 190), (A-286).

Mr. Crawford was questioned about the street
location where he was taken to look at the jar and tee
shirt. He stated he would have to go down Merchant
Street to 8th Street, and then make a right on 8th Street
to the corner of Chestnut Street (11/17 N.T. 195), (A-
291). He agreed that the jar in question was stuck in

the bushes in front of 762 Chestnut Street (11/17 N.T. 195, 196), (A-291, A-292).

Mr. Stretton then asked him if there was anything that stuck out about the shirt and for the first time, Mr. Crawford stated the shirt had a polo sign on it (11/17 N.T. 196), (A-292). Mr. Stretton then confronted him with his prior testimony before the Grand Jury where there was no such mention of anything on the shirt. That is when Judge MacElree interjected (11/17 N.T. 198-200), (A-294, A-295, A-296). Mr. Crawford agreed the prior Grand Jury testimony had nothing about a polo mark and he had only testified it looked like the shirt (11/17 N.T. 198), (A-294). Judge MacElree then improperly commented on the evidence saying it was not inconsistent (11/17 N.T. 198), (A-294).

The next Commonwealth witness was Police Officer Christopher McCarthy (11/17 N.T. 231), (A-326). He was employed as a Coatesville City Police Officer (11/17 N.T. 231), (A-326). He received a radio call about the

Case: 21-3230     Document: 18     Page: 33     Date Filed: 06/27/2022

incident at 744 Merchant Street and arrived there with
Police Officer Galletta (11/17 N.T. 233), (A-328). He
indicated that an ambulance was called and the decedent
was taken to the hospital (11/17 N.T. 234, 235), (A-
329, A-330).

The next Commonwealth witness was Police officer
Galletta, who at the time was employed by the
Coatesville Police Department (11/17 N.T. 238), (A-
333). He indicated he cordoned off the property and
went looking for evidence (11/17 N.T. 243), (A-338).
He stated he and Police Officer Colon found a glass
container in the hedge at 769 East Chestnut Street and
Officer Colon found a black tee shirt in the same
general vicinity. He said they found it around 2:00
a.m. (11/17 N.T. 244, 245), (A-339). He identified the
jar and the tee shirt (11/17 N.T. 247, 248), (A-342).
He indicated the distance from the crime scene was
about 200 yards around the corner (11/17 N.T. 248), (A-
343).

On cross-examination, Officer Galletta was asked if the tee shirt was 15 feet from the container, but he said he did not measure (11/17 N.T. 249), (A-344). He said the jar was in the hedge and the tee shirt was on the grass (11/17 N.T. 250), (A-345). He agreed both items were found about two blocks from the incident where the robbery took place (11/17 N.T. 250), (A-345). Officer Galletta indicated that he did not find the tee shirt, but he found the jar. Officer Colon found the shirt (11/17 N.T. 253), (A-348). The trial resumed the next morning.

The next Commonwealth witness was Detective Joseph Walton of the Chester County Detectives (11/18 N.T. 9), (A-359). His assignment that morning was crime scene forensics (11/18 N.T. 10), (A-360). He indicated that the police found the container 1½ blocks away and a tee shirt (11/18 N.T. 14), (A-364). He did a video of the house (11/18 N.T. 15, 16), (A-366). He testified the black tee shirt was found on the grass about 15 feet away from the jar (11/18 N.T. 18), (A-368). On cross-

Case: 21-3230    Document: 18    Page: 34    Date Filed: 06/27/2022

examination, Detective Walton testified he found
$400.00 in a drawer in the bedroom and another $81.00
in another drawer.  But he found no contraband (11/18
N.T. 19), (A-368).

Detective Kenneth Beam was called.  He was
qualified as a fingerprint expert (11/18 N.T. 31-34),
(A-382, A-384).  He said he was given the container jar
and the black tee shirt by Detective Walton (11/18 N.T.
49), (A-399).

Detective Beam sent the tee shirt for further
analysis and he wanted to see if it contained any DNA
(11/18 N.T. 55), (A-405).  He said he was looking for
saliva (11/18 N.T. 55), (A-405).

As to the plastic jar, Detective Beam said there
was a pack of cigarettes inside, which he photographed
(11/18 N.T. 58), (A-409).  He then developed
fingerprints off the jar.  He also developed one
fingerprint from the pack of Newport cigarettes (11/18
N.T. 60), (A-411).

Detective Beam said on January of 2013, he compared the fingerprints from the jar and the cigarette pack to the fingerprints of Dominique Lee (11/18 N.T. 68), (A-419). He said he identified a latent fingerprint of the left thumbprint to be that of Dominique Lee (11/18 N.T. 69-71), (A-420, A-422). Detective Beam agreed that as to the other 11 fingerprints, no one knew who they belonged to (11/18 N.T. 83, 84), (A-444, A-445).

Detective Beam indicated there were no prints of Mr. Rayner on the cigarettes or on the jar (11/18 N.T. 97), (A-468).

The Commonwealth then called Michael Gossford Serology Technician Specialist (11/18 N.T. 105), (A-476). He was qualified as an expert in serology (11/18 N.T. 111), (A-482). Mr. Gossford testified he received the black tee shirt for review and DNA testing (11/18 N.T. 114), (A-485). He indicated the information he had received from the detectives was the tee shirt had been used as a mask, so he was looking for saliva to test (11/18 N.T. 117), (A-488). He said he actually found

31

three stains (11/18 N.T. 119), (A-489). He sent the material for testing (11/18 N.T. 119, 123), (A-489, 494).

On cross-examination, he agreed there is no test that can say something is 100% saliva (11/18 N.T. 128), (A-499). He agreed there was an enzyme in saliva, which is also in other substances, but it is usually more concentrated in saliva (11/18 N.T. 128, 129), (A-499, A-500). Mr. Gossford indicated there was a presumptive finding of positive for saliva (11/18 N.T. 131, 132), (A-502, A-503). He was questioned in some detail about how he could give his opinion that it was saliva to any degree of certainty (11/18 N.T. 134, 135), (A-505, A-506). He also indicated one could not tell when the stains were put on the tee shirt (11/18 N.T. 136), (A-507).

Timothy Gavel from the State Police DNA lab then testified (11/18 N.T. 137), (A-508). He was qualified as an expert for the methodology for the DNA testing. He said he obtained a set of DNA from Marquis Rayner

and compared it to the DNA on the tee shirt (11/18 N.T. 149-152), (A-520, A-523).  Timothy Gavel stated one of the stains on the tee shirt was matched to Marquis Rayner.  The probability was 1 in 30 quintillion (11/18 N.T. 153, 154), (A-524, A-525).  He indicated the match was taken from the lower front of the black tee shirt (11/18 N.T. 156), (A-527).  He agreed there were other DNA stains from other people on the shirt (11/18 N.T. 156, 157), (A-527, A-528).

On cross-examination, Mr. Gavel agreed that as to the other stains, they could not be connected to Mr. Rayner (11/18 N.T. 158, 159), (A-529, A-530).  He said there were DNA mixtures that indicated more than one person's DNA was present (11/18 N.T. 159, 160), (A-530, A-531). He agreed there were four persons' DNA on the shirt, but he could not identify the DNA of the other person (11/18 N.T. 159-161), (A-530, A-532).  Mr. Gavel was questioned to some extent on the limited database of only 800 people used for him to reach his

conclusions (11/18 N.T. 165-167), (A-536, A-537, A-538).

Detective Harold Dutter was then called as a Commonwealth witness (11/18 N.T. 171), (A-542). He was the assigned detective. He explained to the jury the efforts he made to investigate the case (11/18 N.T. 180), (A-557). He indicated he took a DNA sample from Mr. Rayner (11/18 N.T. 183), (A-554).

Over objection and a motion for a mistrial, Detective Dutter testified that Dominique Lee's name came up as someone involved through an anonymous tip (11/18 N.T. 183, 184), (A-554, A-555). There was an immediate objection and motion for a mistrial (11/18 N.T. 183. 184), (A-555). He also indicated that Dominique Lee and Marquise Rayner were half-brothers (11/18 N.T. 184), (A-555). The detective indicated on the plastic container there were other unidentified fingerprints (11/18 N.T. 188), (A-559). There were also other names of persons with fingerprints (11/18 N.T. 188, 189), (A-559, A-560). He indicated there

were 11 unknown latent fingerprints (11/18 N.T. 190),
(A-561).

The Commonwealth then called Detective Michael
McGinnis (11/18 N.T. 190). He analyzed the cell phone
records of Mr. Rayner (11/18 N.T. 192), (A-563). He
was asked about cell phone towers and there were
repeated objections (11/18 N.T. 192-198), (A-563 – A-
569). Detective McGinnis indicated there was no phone
contacts between Marquis Rayner and A.J. Crawford,
Aaron Crawford, Jaleel Outz, and Zachary Thomas, and
Dominique Lee (11/18 N.T. 200, 201), (A-571, A-572).
He has had the same testimony in reference to Dominique
Lee's phone (11/18 N.T. 202), (A-573).

On cross-examination, Detective McGinnis was asked
about the phone number on Mr. Rayner's cell phone right
before midnight and around 12:46 a.m. He testified he
did not check those numbers to see who they were
registered to (11/18 N.T. 204), (A-575).

The Commonwealth then called Dr. Ian Hood, a
forensic pathologist (11/18 N.T. 210), (A-581). Dr.

Hood did the autopsy of the decedent at Paoli Hospital
(11/18 N.T. 212), (A-583). He testified Mr. Williams,
the decedent, died of a gunshot wound to the left groin
(11/18 N.T. 218), (A-589).

The trial resumed on November 19, 2014. The
Commonwealth called Zachary Thomas (11/19 N.T. 6), (A-
600). He indicated he had been at the house for about
six hours and left after his mother sent him a text
message that she wanted the car home (11/19 N.T. 9,
10), (A-603, A-604). The text message was on June 29,
2013 at 12:03 a.m. (11/19 N.T. 12), (A-606).

Mr. Thomas indicated there was always someone
knocking on the door at the house and there had been a
lot of activity in the house (11/19 N.T. 17), (A-611).
He testified on the night in question one or two people
had already come to the house (11/19 N.T. 18), (A-612).
Mr. Thomas stated he called the house around 12:25
because he forgot his cigarettes (11/19 N.T. 22), (A-
616), and then returned to the house where he found out
about the robbery (11/19 N.T. 23), (A-617).

The Commonwealth then rested their case (11/19 N.T. 26), (A-620).

Mr. Rayner chose not to testify. Mr. Lee also chose not to testify.

Mr. Stretton then, on behalf of Mr. Rayner, called alibi witnesses. The first alibi witness was Tara Lee (11/19 N.T. 44), (A-638). Tara Lee was the aunt of Marquis Rayner (11/19 N.T. 44), (A-638). She testified Mr. Rayner was employed as a dietician aide at Brandywine Hospital and was left-handed (11/19 N.T. 45), (A-639).

On the evening in question, Ms. Lee was employed at the V.F.W. Post Social Club at 109 North 7th Avenue (11/19 N.T. 45), (A-639). This was about a block from where the tee shirt was found (11/19 N.T. 45), (A-639). She testified Marquis Rayner was at the club. He came there around 10:40 p.m. and left after 2:00 a.m. (11/19 N.T. 46, 47), (A-640, A-641). She testified he arrived with a friend named Cornell (11/19 N.T. 47), (A-641). She indicated while everyone was at the V.F.W. they

learned about the shooting (11/19 N.T. 48), (A-642).

She testified that Mr. Rayner never left the club

between 12:10 a.m. and 12:45 a.m. (11/19 N.T. 48), (A-

642). She also indicated there was a playground about

two blocks away where all the young men would play

basketball (11/19 N.T. 49), (A-643).

Ms. Lee was wrongly cross-examined about why she

didn't come to the police and why this was the first

time everyone was hearing about this alibi (11/19 N.T.

54), (A-648). In fact, an alibi notice had been filed

months before. Mr. Stretton brought out on re-direct

that the alibi notice had been properly filed in March

of 2014 (11/19 N.T. 62-64), (A-656, A-657, A-658). Ms.

Lee also indicated Mr. Stretton never told her not to

talk to anyone (11/19 N.T. 64), (A-658).

The next alibi witness was Porscha Hoggard (11/19

N.T. 66), (A-660). She worked security at the door at

the Coatesville V.F.W. on the night in question (11/19

N.T. 67), (A-661). She confirmed that Mr. Rayner was in

the club and also confirmed they were cousins (11/19

N.T. 68, 69), (A-662, A-663). She indicated Mr. Rayner was at the club between midnight and 12:45 a.m. and actually left around 2:30 a.m. (11/19 N.T. 70, (A-664). She was also questioned why she didn't come forward and on redirect, Mr. Stretton again confirmed that an alibi notice had been filed listing her as an alibi witness in March of 2014 (11/19 N.T. 81, 81), (A-674, A-675).

The next alibi witness was Cornell Dickinson (11/19 N.T. 84), (A-678). He stated he was best friends with Marquis Rayner (11/19 N.T. 85), (A-679). He confirmed he was at the V.F.W. with Marquis Rayner on the night in question (11/19 N.T. 85, 86), (A-679, A-680). He noted he played basketball with Mr. Rayner near the V.F.W. (11/19 N.T. 89), (A-683).

The last alibi witness was Nichelle McCain (11/19 N.T. 100), (A-694). She confirmed Mr. Rayner was at the V.F.W. the night in question at the time of the alleged shooting (11/19 N.T. 100-102), (A-694, A-695, A-696). She confirmed specifically he was in the club between 12:00 a.m. and 12:30 a.m. (11/19 N.T. 102), (A-696).

After Ms. McCain's testimony, Mr. Stretton rested his case to the jury.

Dominique Lee's counsel then called Stephen Carter (11/19 N.T. 136, 137), (A-730, A-731). Mr. Carter indicated he knew Mr. Williams, the decedent (11/19 N.T. 137), (A-731). He indicated in May of the year in question, he went to Mr. Williams for marijuana and they met outside in the parking lot. Mr. Williams retrieved marijuana from a plastic container (11/19 N.T. 138, 139), (A-732, A-738). Mr. Lee's lawyer also presented several character witnesses.

There was a stipulation as to Mr. Lee's phone records (11/19 N.T. 157), (A-751). The trial then concluded. The verdict was on November 20th, 2014, (A-910, A-911).

The Appellant, Marquis Rayner, is respectfully requesting this Honorable Court grant his Writ of Habeas Corpus and reverse his conviction since the evidence was insufficient to support the verdict.

# VIII.  STATEMENT OF THE STANDARD AND SCOPE OF REVIEW

1) The standard of review for sufficiency of
evidence in a trial review is as follows:

> "We must sustain the verdict if there is
> substantial evidence, viewed in the light most
> favorable to the government, to uphold the
> jury's decision --- we do not weigh evidence or
> determine the credibility of witnesses in
> making the decision," United States v. Antico
> 295 F.3d 245, 260, (3rd Cir., 2001).

2)   For a Habeas Corpus Petition brought by a state
prisoner challenging his second-degree murder
conviction and related charges, the standard of review
and scope of review is set forth in Jackson v. Virginia
443 US 307, 99 Sup. Ct. 2781 (1979):

> "We hold that in a challenge to a state
> criminal conviction brought under 28 U.S.C.A.
> 2254 --- of the settled procedural
> prerequisites for such a claim have otherwise
> been satisfied – the applicant is entitled to
> habeas corpus relief, if it is found upon the
> record evidence added at the trial no rational
> trier of fact could have found proof of guilt
> beyond a reasonable doubt," Id 2792.

In the same case, the constitutional standard of
review for due process is set forth:

> "Winship presuppose as an essential of the due
> process guaranteed by the Fourteenth Amendment

41

that no person shall be made to suffer the onus
of a criminal conviction except upon sufficient
proof --- defined as evidence necessary to
convince a trier of fact beyond a reasonable
doubt of the existence of every element of the
offense," Id 2787.

In Cavazos v. Smith 565 US 1, 131 Sup. Ct. 2

(2011), the standard for habeas review of sufficiency

when a prior state court has affirmed sufficiency:

"What is more, a federal court may not overturn
a state court decision rejecting a sufficiency
of the evidence challenge simply because the
federal court disagrees with the state court.
The federal court instead may do so only if the
state court decision was objectively
unreasonable," Id 142.

# IX. SUMMARY OF THE ARGUMENT

The Appellant, Marquis Rayner, respectfully is requesting this Honorable Court grant his Writ of Habeas Corpus on the issue of sufficiency of evidence particularly in the context of a violation of due process under the Fourteenth Amendment of the United States Constitution.

Mr. Rayner was convicted after a trial by jury of participating in a home invasion/robbery resulting in the death of Dominick Williams by gunshot on June 29th, 2012. Mr. Raynor was convicted of murder of the second degree (felony murder) (18 Pa. C.S.A. 2502[b]), robbery (18 Pa. C.S.A. 3701[a][i]), burglary (18 Pa. C.S.A. 3507[a][i]), and conspiracy to commit robbery and burglary (18 Pa. C.S.A. 903). His half-brother, Dominique Lee, was also convicted.

No direct evidence connected Mr. Rayner to the crime. There was no identification, statement or contraband found on him. He presented four witnesses who confirmed his alibi that he was not present.

The only evidence referring to him was a black t-shirt found one and a half blocks away from the scene of the crime on the grass. About 15 feet away stuck in a bush, was the jar taken from the house. The jar had a fingerprint of Mr. Rayner's half-brother, Dominique Lee, but it also had 11 unidentified fingerprints of 11 other people. The t-shirt had Mr. Rayner's DNA and also the DNA of three other unidentified persons. There was a suggestion the DNA was from saliva but cross examination showed that was not a positive finding, (A-409, A-500, A-502, A-503). The jury was left with speculation who was present since 15 persons were potentially implicated. Further, there was the speculation that the half-brother could have taken the black t-shirt from the house and used it.

The Superior Court affirmed the conviction Commonwealth v. Rayner 153 A.3d 1049, 1055 (Pa. Super., 2016), (A-37, A-38). The Court noted the DNA but failed to note the expert could not say to reasonable medical certainty saliva was involved, (A-499, A-500, A-502, A-

503). The expert also said no one could tell when the stains were put on the shirt, (A-509).

The sufficiency argument was based on the facts that Mr. Rayner was not present and not involved. Mr. Rayner has always asserted his innocence. He contends pursuant to Jackson v. Virginia 443 US 307, 99 Sup. Ct. 2781 (1979) that no rational trier of the fact could have found him guilty beyond a reasonable doubt because of the highly speculative and extreme conjecture from this questionable evidence, Id 2792.

Mr. Rayner also argued under Jackson the constitutional due process aspect of the sufficiency argument. Jackson defined sufficient proof as:

> "The evidence necessary to convince a trier of fact beyond a reasonable doubt of the existence of every element of the offense", Id 2787.

Clearly the gross speculative and uncertain nature of the evidence would violate the sufficiency/due process requirement of Jackson. This evidence was not sufficient for any rational fact finder to conclude Mr. Rayner was involved or even there. There was in fact,

no evidence or any reasonable basis to conclude he was present.

The fact the Pennsylvania Superior Court affirmed the sufficiency of evidence is not binding on this Court. In Cavazos v. Smith 565 US 1, 132 Sup. Ct. 2 (2011), the decision of the state court is not binding if that decision was objectively unreasonable, Id 2.

Mr. Rayner contends under the facts of his case, there was no rational evidence and only gross conjecture that Mr. Rayner's DNA on a t-shirt with four other people cold place him as one of the three home invasion individuals.

Finally, Mr. Rayner contends his case is very similar to Travillion v. Superintendent of Rockview 982 F.3d 896 (3rd Cir., 2020) where this Honorable Court found the conviction for the robbery of Ms. Diodati in the Rainbow Apparel Store based solely on the fact Mr. Travillion's fingerprint was on the folder left on the floor during the robbery was insufficient. This Court found the fingerprints on the moveable folder the

robber brought into the store was not sufficient for a rational trier of the fact to place Travillion in the store, Id 904. This court concluded it was objectively unreasonable for the Pennsylvania Courts to conclude Mr. Travillion was guilty, Id 906.

Mr. Rayner makes the same argument. He would also point out the t-shirt with four peoples DNA was not found in the house but a block and a half away, unlike the folder found in the store in Travillion.

Mr. Rayner respectfully requests this Honorable Court reverse the Order of the District Court denying Habeas relief and order the dismissal of the charges with prejudice.

Case: 21-3230     Document: 18     Page: 52     Date Filed: 06/27/2022

# X. ARGUMENT

A)  Mr. Rayner respectfully contends his Writ of Habeas Corpus should be granted since the evidence was insufficient to support the verdict. He contends that no rational trier of the facts could have found him guilty beyond a reasonable doubt because of the highly speculative and extreme conjecture and inconsistencies of the evidence. He contends the speculative nature and conjecture would violate not only the sufficiency of evidence but also the due process requirements as set forth in Jackson v. Virginia 443 US 307, 99 Sup. Ct. 2781 (1979). He contends the decision of the Pennsylvania Superior Court was unobjectively reasonable. He contends this case is very similar to Travillion v. Superintendent of Rockview 982 F.3d 896 (3rd Cir., 2020).

This Brief to this Honorable Court may well be Mr. Rayner's last chance to get justice and have his convictions reversed for a crime he did not commit. Mr. Rayner has always asserted his absolute innocence.

Surprisingly, in a Federal Habeas Corpus review involving a state crime (28 U.S.C.A. 2554), the Courts have set forth an analysis that is very narrow and littered with obstacles that could allow an innocent man's conviction to be affirmed. As noted from the Statement of the Facts section of this Brief, which is incorporated by reference, there was a home invasion in the early morning hours on June 29th, 2012 at 744 Merchant Street in Coatesville, Pennsylvania. This occurred around 12:30am Friday June 29th, 2012.

Three men illegally entered the apartment of Dominick Williams and Aaron Crawford. This house was one that also sold marijuana on a regular basis and the marijuana was sold in a plastic jar, (A-270). When the three men came in, they were wearing white and/or black t-shirts over their head and face. One of the intruders shot Mr. Williams in the leg which ultimately caused his death due to an artery being severed, (A-165). Mr. Williams had been in the front room. There were two

other people in the front of the room but neither could identify any of the participants.

One or two of the men went into the backroom where Aaron Crawford was. One of those men took the plastic jar that contained marijuana, money and cigarettes, (A-171, A-251). One of the men hit Mr. Crawford and he went to the hospital.

About an hour after the incident the police, about a block and a half away on Eighth Avenue, found the plastic jar in a bush and a black t-shirt on the ground about 15 feet away, (A-257, A-258). Police Officer McCarthy said the jar was about 200 yards around the corner, (A-343). He said the t-shirt was about 15 feet from the jar in the bush and the t-shirt was on the grass, (A-344, A-345). The Officer indicated that he did not see the t-shirt initially but another Officer came and found it, (A-348).

The only evidence against Mr. Rayner was the t-shirt with his DNA. But there was DNA from three other people, on the t-shirt, who were not identified. The

Commonwealth brought in Detective Beam who reviewed the jar and found fingerprints on the jar and the Newport cigarettes still in the jar. He said there was a latent fingerprint matching the print of Dominique Lee, (A-420, A-421, A-422). Mr. Lee was the half-brother of Marquis Rayner and a co-defendant. Detective Beam indicated there were 11 other fingerprints on the jar but no one knew who they belonged to, (A-444, A-445). It would not be surprising for there to be multiple fingerprints on the jar since that jar was the one that people would hold when they were purchasing marijuana. Detective Beam made it very clear that there were no fingerprints of Mr. Rayner on the jar, (A-468).

The t-shirt had been submitted by Detective Beam to a Commonwealth expert in serology, Michael Gossford, (A-476). He reviewed the t-shirt and said he was looking for saliva to test, (A-488). He found three strains and sent them for testing, (A-493, A-494). Of importance is on cross-examination he agreed there were no tests where one could say the stain is 100% saliva,

(A-499). He agreed there was an enzyme in saliva which
is also in other substances but is usually more
concentrated in saliva, (A-499, A-500). He indicated
that it was only a presumptive finding, positive for
saliva, (A-502, A-503). He also agreed that one could
not say when the stains were placed on the t-shirt, (A-
507).

The state police lab expert, Timothy Gavel,
testified, (A-508). He obtained Mr. Rayner's DNA from a
search warrant and compared it to the DNA on the t-
shirt, (A-522, A-523). He said that one of the stains
on the t-shirt matched the DNA of Mr. Rayner, (A-524,
A-525). He said the stain was taken from the front of
the black t-shirt, (A-527). He agreed there were three
other DNA stains from other people on the t-shirt also,
(A-527, A-528). He said the other stains could not be
connected to Mr. Rayner, (A-529, A-530). There were
mixtures that indicated more than one person's DNA was
present. He agreed that were four persons DNA on the
shirt but he could not identify the DNA of the other

people, (A-530, A-532). Of interest was Mr. Gavel was then questioned extensively about the limited database of only 800 people from which he was drawing the conclusions as to whose DNA was there, etc., (A-536, A-537, A-538).

There was nothing else connecting Mr. Rayner. There was no identification. There was no contraband ever found on Mr. Rayner. There was no statement or confession. There was no video surveillance. There was no eye-witness saying Mr. Rayner was there. In fact, one could speculate that Domonique Lee had used the t-shirt and taken it from either the clothes hamper or wherever since he was Mr. Rayner's half-brother. The evidence linking Dominique Lee is also non-existent other than his fingerprint among 11 others on a jar that was regularly used to sell marijuana and handled by all.

Mr. Rayner did not testify but presented a strong alibi defense that he was at the VFW post social club on 109 North Seventh Street about two blocks away at

the time of the incident. The alibi notice had been filed long before the trial began. Mr. Rayner presented his alibi witnesses, Tara Lee, his aunt who was employed at Brandywine Hospital but worked part-time at the VFW social club in the early morning hours at issue, (A-638, A-639). She testified that Mr. Rayner was there at the pertinent times, (A-632). Of interest, was that she indicated there was playground a couple of blocks away where the young men would play basketball, (A-643). That may also explain how the t-shirt and how Mr. Rayner, with four other people's DNA got on the t-shirt. What was upsetting was the District Attorney's improper cross-examination of all of the alibi witnesses, that this was the first time the police knew about the alibi when the witnesses testified the last day of trial, (A-648). Mr. Stretton had to bring out on re-direct that the alibi notice had been filed in March of 2014, months before the trial, so everyone knew well in advance of the alibi, (A-656, A-657, A-658). Three other alibi witnesses also testified, (A-664-A-669).

The Superior Court affirmed the conviction of Mr. Rayner, (see Commonwealth v. Rayner 153 A.3d 1049 (Pa. Super., 2016) A-32). Of interest, when Mr. Stretton argued the case, he was told by the Judges after two or three minutes of argument that there was no need to continue since the conviction would be reversed. As a result, Mr. Stretton stopped arguing. As seen, despite what the Judges said during the argument, they ruled in exactly the opposite in the aforementioned case, affirming the verdict including the issue of sufficiency.

There was not much discussion on the sufficiency of evidence. A review of the Superior Court Opinion is found at A-32 in the Appendix and cited as Commonwealth v. Rayner 153 A.3d 1049 (Pa. Super., 2016). The Court discussed sufficiency in 1054 and 1055 of the Report and Opinion. The Court reviewed and summarized the evidence for the elements of the crime, i.e., entering the house, the shooting, the taking and stealing. The Court found that the elements of the crimes, of second-

degree murder, conspiracy were met. The Court then, in addressing sufficiency at Id 1055, 1056 of the Opinion, noted the fingerprint on the jar and the saliva on the t-shirt. It must be kept in mind, the expert could not say it was saliva but could only say it was a presumption. The Court then noted (Id 1055 and 1056), that the DNA belonged to Mr. Rayner. The Superior Court, at that point, did not discuss the 11 other fingerprints on the jar or the four other DNA samples that were unknown on the t-shirt. These points were mentioned later. The Court did not discuss speculation or anything but just said the evidence was enough. Clearly, this Opinion was not a convincing or resounding evaluation of what was speculative and conjecture related evidence. The Superior Court did not really discuss the alibi.

The elements of the crime for which Mr. Rayner contends the evidence was grossly insufficient are as follows:

First, he was convicted of murder of the second-degree. That is known as felony murder, (18 Pa. C.S.A. 2502[b]).

> "Murder of the second degree – a criminal homicide constitutes murder of the second degree when it is committed while defendant was engaged as a principal or an accomplice in the perpetration of a felony," 18 Pa. C.S.A. 2502(b).

Mr. Rayner was given a life sentence for this conviction. Obviously, the elements of the crime would be met by the facts with the exception as to who did it. Mr. Rayner contends that the evidence is absolutely and totally insufficient that he committed the crime. Similarly, Mr. Rayner was charged robbery, (18 Pa. C.S.A. 3701[a]).

> "A person is guilty if robbery if in the course of committing a theft, he inflicts serious bodily injury upon another," 18 Pa. C.S.A. 3701(a)(i).

Again, the facts as presented would meet the elements of the crime except Mr. Rayner contends the facts do not support that he was involved as the perpetrator.

Mr. Rayner was also charged with burglary (18 Pa.

C.S.A. 3502).

> "A person commits the offense of burglary if,
> with the intent to commit a crime therein the
> person i) enters a building or occupied
> structure or separately secured or occupied
> portion thereof, that is adopted for overnight
> accommodation in which at the time of the
> offense any person is present and the person
> commits, attempts or threatens to commit a
> bodily injury crime therein," 18 Pa. C.S.A.
> 3502(a)(i).

He was also charged with criminal conspiracy (18

Pa. C.S.A. 903[a]).

> "A person is guilty of conspiracy with another
> person or persons to commit a crime if with the
> intent of promoting or facilitating a
> commission he i) agrees with such another
> person or persons that they or one or more of
> them will engage in conduct that constitutes
> such a crime or an attempt of solicitation to
> commit such a crime; or ii) agrees to aid such
> other person or persons in the planning or
> commission of such crime or if an attempt or
> solicitation to commit such a crime," 18 Pa.
> C.S.A. 903.

With the robbery, burglary and criminal conspiracy,

there is no dispute that the crime of breaking and

entering the property at gunpoint, a gunpoint shooting,

a would meet the elements of the crime. The issue is

not the elements. The issue is who was the perpetrator and Mr. Rayner contends that he was not and the evidence does not support he was present except at a very speculative and highly conjecture level because of the DNA.

It is hard to conceive that this evidence was sufficient to convict someone. The evidence against him was rank speculation. If the half-brother, did it he would have had access to the t-shirt at home or at the basketball court that was several blocks away. The t-shirt though had three other unknown people on it. The suggestion by the expert, the DNA was saliva, was refuted during the cross-examination, when the expert could not say it was saliva as quoted above. He could only say that it was presumptively saliva and he agreed that the test he used with the protein was not definitive. The shirt could have come from basketball playground. The other people's DNA on the t-shirt could have been the culprits. The DNA people were not asked to test the other DNA. The half-brother was only

implicated by the marijuana jar which also had 11 other
fingerprints on it. He could have bought marijuana
sometime earlier from the decedent. His fingerprints
would have been on the jar. Both Commonwealth experts
indicated that no one could tell when the fingerprints
were placed on the jar and no one could tell when the
DNA stains were placed on the shirt. Mr. Rayner had a
strong defense of alibi. Now Mr. Rayner is serving life
imprisonment and has been in jail for about nine years
for a crime he did not commit, and for a crime for
which the evidence other than speculation does not
suggest his involvement.

The standard that Mr. Rayner must meet before this
Honorable Court can grant his Writ of Habeas Corpus (28
U.S.C.A. 2254) begins with the case of Jackson v.
Virginia 443 US 307, 99 Sup. Ct. 2781 (1979). Mr.
Rayner contends he did not commit the crime, was not
present and has always asserted his innocence. The case
Jackson v. Virginia, established the standard that for
sufficiency to be reversed on a Habeas appeal that no

rational trier of facts could have found Mr. Rayner

guilty beyond a reasonable doubt because of the highly

speculative and conjecture nature of the evidence, Id

2792.

> "We hold that a challenge to a state conviction
> under 28 U.S.C.A. 2254 – if the settled
> procedural prerequisites for such a claim have
> otherwise be satisfied – the appellant is
> entitled to habeas corpus relief if it is found
> that upon the record the evidence adduced at
> the trial no rational trier of fact could have
> found proof of guilt beyond a reasonable
> doubt," Id 2792.

The Jackson case then commented about fundamental

due process as part of a sufficiency of evidence

review.

> "Under 28 U.S.C.A. 2254 a federal court must
> entertain a claim by a state prisoner that he
> or she is being held in custody in violation of
> the constitution or laws or treaties of the
> United States. Under the Winship decision, it
> is clear that a state prisoner who alleges that
> the evidence in support of his state conviction
> cannot be fairly characterized as sufficient to
> have led a rational trier of fact to find guilt
> beyond a reasonable doubt has stated a federal
> constitutional claim," Id 2790.

The Jackson Court noted that the government had

argued that a challenge to constitutional sufficiency

of the evidence should not be entertained by the

district court. That view was rejected. The Court found

that there was a due process claim under the

sufficiency of evidence argument.

> "A challenge to a state conviction brought on
> the ground that the evidence cannot fairly be
> deemed sufficient to have established guilt
> beyond a reasonable doubt states a federal
> constitutional claim. Although the state
> appellate review undoubtably will serve in the
> vast majority of cases to vindicate the due
> process protection that follows from Winship,
> the same could be said of the vast majority of
> other federal constitutional rights that may be
> implicated in a state criminal trial. It is the
> occasional abuse that the federal writ of
> habeas corpus stands ready to correct," Id
> 2791, 2792.

There is a federal due process claim that is

presented here and this conviction must be corrected.

The analysis continues with the caselaw.

The fact that the Pennsylvania Superior Court

affirmed the sufficiency of evidence in the

aforementioned decision of Commonwealth v. Rayner 153

A.2d 1049 (Pa. Super., 2016) is not determinative. That

issue was dealt with in Cavazos v. Smith 565 US 1, 132

Sup. Ct. 2 (2011). The Court dealt with the issue of

whether a federal habeas court could overturn a state court decision rejecting a sufficiency of evidence argument. The United States Supreme Court established the following standard in terms of evaluating what deference should be given to the state court's dismissal on sufficiency. The United States Supreme Court in Cavazos found the Ninth Circuit decision was unreasonable for finding the jury verdict irrational. The standard the Court developed is very harsh and is as follows:

> "What is more a federal court may not overturn a state court simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was objectively unreasonable," Id 2.

That standard was affirmed the next year in Coleman v. Johnson 566 US 650, 132 Sup. Ct. 260 (2012), Id 2063. Coleman involved facts about the death of a man and the question was whether there was shared intent to kill. The Court noted the Jackson due process standard:

> "The minimum amount of evidence that the due process clause requires to prove the offense is purely a matter of federal law," Id 2064.

63

The Court noted using the deferential standard, that the appellant Johnson brought the decedent into the alleyway and he was killed by the co-defendant Williams. The Court found that the jury could reasonably infer the shared intent under those circumstances since Johnson knew Mr. Walker was armed with a gun and had threated to kill the person before.

The facts in Mr. Rayner's case are very different. How one could infer that Mr. Rayner was present, with DNA on the t-shirt, when three other people had DNA on the t-shirt. This makes absolutely no sense because the analysis departs from inferences or presumptions and goes into the realm of speculation and conjecture which is objectively unreasonable.

In Magistrate Judge Perkin's Report and Recommendation, which is found at Rayner v. Overmyer 2021 WL 5496867 (September 1st, 2021), (A-12), though agreeing to an issue of Certificate of Appealability, he did not grant the habeas on the issue of sufficiency of evidence. In reviewing Judge Perkin's Decision,

there appears to be some important facts that were left out. Judge Perkin's summarized the sufficiency of evidence on pages 6 and 7 of the Opinion. First, Judge Perkin said that the forensic scientist, Michael Gossford, found the presence of saliva, (see page 7). But as noted, Mr. Gossford when confronted on cross-examination, he had to agree that he could not say positively that it was saliva and could only say presumptively so. Judge Perkin also noted the positive match of the DNA for Mr. Rayner. But he did not initially note there were four other persons' DNA on the t-shirt. Judge Perkin noted a rational jury could infer that after wearing the black t-shirt across the face during the crime, either Mr. Rayner or the accomplice discarded the shirt and the jar one and a half blocks away, (see pages 9-10). Judge Perkin agreed with Mr. Stretton's argument, the DNA evidence supported alternative theories of the crime, (see page 10). He even suggested that he would have decided the case differently if he had been the fact finder, (page

10). He went back to that any rational trier of fact
could have found the essential elements, (page 10).
Judge Perkin then discussed the constitutional due
process aspect of the sufficiency analysis.

Judge Perkin then discussed the relatively recent
United States Court of Appeals for the Third Circuit
Decision in Travillion v. Superintendent of Rockview
SCI 982 F.3d 896 (3rd Cir. 2020). The facts Travillion
are very close to the present case. That case involved
a store manager opening up her store at 9:30am. It was
snowing that day. She entered the store alone because
the Assistant Manager was going to be late due to the
bad weather. After she opened the door, a man followed
her in carrying a manilla folder in his left hand. When
she said the store was not open, the person pushed her
aside and told her to turn off the alarm. The person
had her go to the cash register and safe and she gave
envelopes that contained $200-$300 to the person. The
robber then went to pick up his gun but left the folder
he was carrying on the floor. She then opened a second

safe that contained about $6,000.00. She then unlocked the backdoor and disabled the alarm and the robber left. Police came shortly thereafter. She was unable to identify the person. She gave a description of the robber of 5'9" or 5'10" when in fact, Mr. Travillion was 6'. The police processed for fingerprints and found fingerprints on the manilla folder and also some shoe prints. There were two thumb prints and a left ring finger print on the folder and they turned out to belong to Mr. Travillion. The jury found Mr. Travillion guilty based on the fingerprints on the folder. He was also at that point, serving a sentence for second degree murder. There was an issue raised of sufficiency of evidence. The Third Circuit Court of Appeals noted federal law governed the sufficiency of evidence, as set forth in the <u>Jackson</u> case was applicable, <u>Id</u> 902. The Court noted the aforementioned <u>Jackson</u> standard.

> "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt," <u>Id</u> 902.

The Court then noted the following:

> "This reasonable doubt standard of proof requires the finder of fact to reach a subjective state of near certitude of the guilt of the accused," Id 902.

The Court noted that a conviction that fails to establish and satisfy the Jackson standard violates due process. Therefore, the petitioner would be entitled to habeas relief if the insufficient evidence claim was objectively unreasonable. The Court noted there was no question there was a robbery committed, the only question was, was there sufficient evidence to identify Mr. Travillion. The Pennsylvania Superior Court had found that the fingerprints on the manilla folder that the person brought in and left at the crime scene were sufficient to prove his identity as the robber. The Third Circuit Court noted another case and found that in that case the fingerprints left on the post during the commission of the crime were unreasonably speculative since no one knew when the prints were

Case: 21-3230    Document: 18    Page: 73    Date Filed: 06/27/2022

placed. The Third Circuit then noted as follows in discussing some of the cases:

> "The Court concluded that in challenges to convictions involving fingerprints on movable objects, in the absence of evidence regarding when the fingerprints are made, the (prosecution) must marshal sufficient additional incriminating evidence so as to allow a rational juror to find guilt beyond a reasonable doubt. Although the prosecution may meet this burden with circumstantial evidence, the evidence must be sufficiency incriminating to support the conviction," Id 903.

In the Travillion case, the prosecution argued that the description, although it did not match Mr. Travillion, it was at least close enough not to exclude him. The Court found therefore, the only evidence linking Mr. Travillion to the crime was the fingerprint evidence on the manilla folder and paper, plus the fact that the witness' description did not exclude Mr. Travillion. The Court found that was not enough to reasonably conclude that the Jackson test was satisfied. The Court found that Mr. Travillion's fingerprints on the easily moveable manilla folder and paper carried into the store by the robber, who had a

description that did not exclude him, was not sufficient evidence for a trier of fact to place Mr. Travillion at the scene when the crime was committed beyond a reasonable doubt, Id 903, 904. The Court noted that a federal Habeas Corpus Court must consider not whether there was any evidence to support a state court conviction, but whether there was sufficient evidence to justify a rational trier of fact to find guilt beyond a reasonable doubt, Id 904. The Court noted that Mr. Travillion's fingerprints were only found on easily moveable objects, the manilla folder and paper, and there was no evidence of his fingerprints elsewhere at the crime scene. The Court indicated that were no evidence that the folder and paper were unavailable to Mr. Travillion prior to the robbery and no evidence as to the age of the prints, and no evidence as to how long the prints could remain on the folder and paper after their impression, Id 904. The Court also noted there was a lack of any additional incriminating evidence, circumstantial or otherwise, Id 905. The

Court noted that folder had the prints from the left

hand but there was no evidence the robber had carried

it with their left hand, Id 905. There was no evidence

that Mr. Travillion had ever been in the store before

though apparently the robber had inside information.

The Court then concluded as follows:

> "In particular, under the circumstances in this
> case, it was objectively unreasonable to apply
> the Jackson standard and deny relief on Mr.
> Travillion's claim that there was insufficient
> evidence to support a conclusion that Mr.
> Travillion was the robber that carried the
> folder and paper during the commission of the
> crime beyond a reasonable doubt. Any
> determination that Mr. Travillion's
> fingerprints were left on the folder and paper
> during the commission of the offense is
> unreasonable speculative," Id 906.

The Court then reversed the conviction and granted

the Habeas. A careful reading of the Travillion case

would suggest that Mr. Rayner's fact should result in

the same reversal of conviction for the same reasons.

When one views Mr. Rayner's case and compares it to

Mr. Travillion's case, in fact Mr. Rayner's case should

be stronger. The manilla folder was carried by the

person inside and found on the floor in the store and

71

the fingerprints were then lifted from the manilla folder and the paper in it. In Mr. Rayner's case, the t-shirt was found not at the home but almost two blocks away. It looked like the same t-shirt but no one could say for sure. The same conjecture and speculation that upset the Third Circuit in Travillion should apply here. There is nothing else, other than general descriptions, and that the perpetrators were black men. There was no other circumstantial evidence or direct evidence implicating Mr. Rayner. The fact his half-brother's fingerprints were on a jar with 11 other people, a jar that many people touched when they were buying marijuana from the home, is totally irrelevant and nothing but gross speculation in terms in what that should mean or not mean.

Most importantly, just as in Travillion, no one could say when the DNA was placed on the t-shirt, at what time period, and no one could say when then fingerprints were placed on the jar. It was wide open speculation.

Judge Perkin respectfully erred in his analysis on page 11. Judge Perkin noted in the Opinion:

> "In comparison to Travillion, the evidence presented by the Commonwealth petitioner's guilt is more compelling. Not only was the petitioner's DNA recovered from the black t-shirt resembling that of the kind used of the robber to cover his face, but the black t-shirt was located near to a jar taken from Dominick Williams' apartment. Further, the fingerprint on the jar matched petitioner's half-brother, Dominique Lee, allowing the jury to infer that petitioner aided and participated in the crime with someone with whom he was familiar. Although this case presents a close issue on the question of sufficiency, we cannot find as in Travillion that the Superior Court applied Jackson in an objectively unreasonable manner," Id 11.

With all due respect, Judge Perkin's analysis and conclusions are wrong. The conclusions he noted would have to be drawn by a conjecture and speculation. Under the Jackson standard no rational trier of fact could have found guilty beyond a reasonable doubt because of the highly speculative and extreme conjecture nature of the evidence. In this case, the evidence was highly speculative guess work. Judge Perkin erred in assuming that 11 different fingerprints including Domonique Lee,

means that Domonique Lee was there. More importantly, he erred in assuming that that could mean that Mr. Rayner was an accomplice working with his half-brother. Nothing supports that but speculation. If Mr. Lee's fingerprints could possibly show he was there, then there is speculation the t-shirt could have been used by Mr. Lee, the half-brother. With all due respect to Judge Perkin, his conclusions are not based on any incriminating evidence and just on idle speculation. There was no incriminating evidence at the scene that in any way implicated Mr. Rayner. This is a classic example of guess work and conjecture and the Superior Court's Decision accepting that should not be reasonably accepted, particularly in the case of absolute innocence.

Judge Perkin's statement and conclusions are in error because there is no basis for a rational jury to make the conclusion other than pure and naked speculation which violates fundamental due process. In this case, Mr. Rayner contends loud and clear that no

rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt based on this speculative testimony and evidence without anything more. If anything, this case is stronger than Travillion for the defense because the folder was in the store while the t-shirt was two blocks away.

There were multiple different scenarios, all of which involved speculation and guess work. Further, Judge Perkin ignored the fact that Mr. Rayner presented a strong alibi defense from four different individuals.

In Travillion the United States Court of Appeals for the Third Circuit in quoting a Fourth Circuit Decision noted as follows:

> "The Court concluded that in challenges to convictions involving fingerprints on moveable objects and the absence of evidence regarding when the fingerprints were made, the prosecution must marshal sufficient additional incriminating evidence so as to allow a rational juror to find guilt beyond a reasonable doubt," Id 903, 904.

No such evidence in Mr. Rayner's case was presented.

In <u>Travillion</u> there was only fingerprints on the folder that the robber dropped on the floor. In Mr. Rayner's case there were 16 other people who could be suspects due to the 11 fingerprints on the jar and the four persons' DNA on the t-shirt. No objectively, reasonable jury or no objectively reasonable Superior Court could convict under these questionable and highly speculative facts.

The Superior Court in their Opinion quoted Judge MacElree's summary, (A-45), but Judge MacElree's summary ignored the fact that there were 11 other fingerprints and four other DNA samples.

In this case, the standard as set forth in <u>Jackson v. Virginia</u> 443 US 307, 99 Sup. Ct. 781 (1979), has been met. That standard allows a man or a woman to be entitled to Habeas Corpus relief if the record introduced at trial shows no rational trier of fact could have found proof of guilt beyond a reasonable doubt, <u>Id</u> 324. In Mr. Rayner's case, no rational trier

of fact could reach such a verdict due to the gross speculation and conjecture.

In conclusion, a Writ of Habeas Corpus should be granted in this matter since there was no evidence that a rational jury or Superior Court or any Judge could logically infer, that a rational trier of fact could have found sufficient evidence for proof of guilt in this case. There was no sufficient evidence. This is a fundamental due process violation and this wrongful conviction is a nightmare for Mr. Rayner. But this is also a nightmare for Mr. Stretton who retries this case in his head every day because he knows an innocent man has been sentenced to life imprisonment for a crime he did not commit. In conclusion, Mr. Stretton respectfully requests this Honorable Court grant the Writ of Habeas Corpus and reverse the convictions and discharge this case with prejudice.

# XI. CONCLUSION

The Appellant, Marquis Lee Rayner, by his and through his counsel, Samuel C. Stretton, Esquire, respectfully requests this Honorable Court reverse the judgement of sentence and conviction, grant his Writ of Habeas Corpus and discharge this matter with prejudice.

Respectfully submitted,

*S/Samuel C. Stretton*
Samuel C. Stretton, Esquire
Attorney for Appellant,
 Marquis Lee Rayner
103 South High Street
P.O. Box 3231
West Chester, PA  19381-3231
(610) 696-4243
Attorney I.D. No. 18491

Case: 21-3230    Document: 18    Page: 84    Date Filed: 06/27/2022

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE THIRD CIRCUIT

MARQUIS LEE RAYNER,      :    **CASE NO. 21-3230**
          **APPELLANT**    :
                       :
          **V.**           :
                       :
**SUPERINTENDENT FOREST SCI,**    :
**ET AL.,**                        :
     **RESPONDENTS/APPELLEES**    :

### CERTIFICATE OF BAR MEMBERSHIP

I hereby certify I am admitted to practice law before the United States Court of Appeals for the Third Circuit.

Respectfully submitted,

*S/Samuel C. Stretton*
Samuel C. Stretton, Esquire
Attorney for Appellant,
 Marquis Lee Rayner
103 South High Street
P.O. Box 3231
West Chester, PA  19381-3231
(610) 696-4243
Attorney I.D. No. 18491

**IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT**

MARQUIS LEE RAYNER,       :  **CASE NO. 21-3230**
          **APPELLANT**   :
                       :
          **V.**          :
                       :
**SUPERINTENDENT FOREST SCI,**  :
**ET AL.,**                  :
      **RESPONDENTS/APPELLEES**   :

## CERTIFICATE OF WORD COUNT

This Brief complies with the type volume limitation of the Federal Rules of Appellate Procedure, Rule 32(A)(7)(b) because this Brief contains 12,800 words.

Respectfully submitted,

*S/Samuel C. Stretton*
Samuel C. Stretton, Esquire
Attorney for Appellant,
 Marquis Lee Rayner
103 South High Street
P.O. Box 3231
West Chester, PA  19381-3231
(610) 696-4243
Attorney I.D. No. 18491

IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

MARQUIS LEE RAYNER,             :   CASE NO. 21-3230
            APPELLANT           :
                                :
        V.                      :
                                :
SUPERINTENDENT FOREST SCI,      :
ET AL.,                         :
        RESPONDENTS/APPELLEES   :


## CERTIFICATE OF IDENTICAL COMPLIANCE OF BRIEFS

I hereby certify that the hard copies of the Brief

and e-mailed and mailed copies are identical.

Respectfully submitted,


*S/Samuel C. Stretton*
Samuel C. Stretton, Esquire
Attorney for Appellant,
 Marquis Lee Rayner
103 South High Street
P.O. Box 3231
West Chester, PA   19381-3231
(610) 696-4243
Attorney I.D. No. 18491

IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

MARQUIS LEE RAYNER,                    :    CASE NO. 21-3230
                    APPELLANT          :
                                       :
            V.                         :
                                       :
SUPERINTENDENT FOREST SCI,             :
ET AL.,                                :
        RESPONDENTS/APPELLEES          :

## VIRUS CERTIFICATION

I hereby certify the attached document was scanned

for viruses using Webroot.

                        Respectfully submitted,


                        *S/Samuel C. Stretton*
                        Samuel C. Stretton, Esquire
                        Attorney for Appellant,
                         Marquis Lee Rayner
                        103 South High Street
                        P.O. Box 3231
                        West Chester, PA  19381-3231
                        (610) 696-4243
                        Attorney I.D. No. 18491

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE THIRD CIRCUIT

MARQUIS LEE RAYNER,                    :    CASE NO. 21-3230
           **APPELLANT**      :
                                :

          **V.**                            :

SUPERINTENDENT FOREST SCI,             :
ET AL.,                                :
     **RESPONDENTS/APPELLEES**     :

### APPENDIX OF THE APPELLANT, MARQUIS LEE RAYNER
### VOLUME I

(The Appellant, Marquis Lee Rayner, has appealed to the United States Court of Appeals for the Third Circuit, from the Order dated November 22, 2021 and docketed on November 23, 2021 by the Honorable John M. Gallagher of the United States District Court for the Eastern District of Pennsylvania, affirming the dismissal of Mr. Rayner's Habeas Corpus Petition (28 U.S.C.A 2554) but granting a Certificate of Appealability on the issue of sufficiency of evidence. Judge Gallagher denied a Certificate of Appealability on the other issues. The case was docketed at Civil No. 18-CV-04909).

Samuel C. Stretton, Esquire
Attorney for Appellant,
 Marquis Lee Rayner
103 South High Street
P.O. Box 3231
West Chester, PA  19381-3231
(610) 696-4243
Attorney I.D. No. 18491

**APPENDIX – TABLE OF CONTENTS**
**VOLUME I ATTACHED TO BRIEF**

**PAGE**

I.   Notice of Appeal of the Appellant, Marquis
     Rayner                                           A-1
II.  Order of November 22, 2021 but docketed on
     November 23, 2021 of the Honorable John Gallagher
     dismissing the Petition for Habeas Corpus but
     issuing a Certificate of Appealability on
     sufficiency of evidence                          A-9
III. Report and Recommendation of the Honorable Henry
     S. Perk, Magistrate Judge, dated September 1,
     2021                                             A-12
IV.  Order dated April 21, 2022 of the United States
     Court of Appeals for the Third Circuit denying
     requests for appealability                       A-31(A)(B)

**VOLUME II**

V.     Opinion of the Superior Court of Pennsylvania
       cited as Commonwealth v. Rayner 153 A.3d 1049
       (Pa. Super., 2016)                             A-32
VI.    Order of the Pennsylvania Supreme Court dated
       July 11, 2017 denying the Petition for
       Allowance of Appeal                            A-44
VII.   Order dated February 20, 2018 of the United
       States Supreme Court denying the Petition for
       Writ of Certiorari                             A-45
VIII.  Opinion of Judge MacElree dated
       April 15, 2015                                 A-46
IX.    Docket entries for the United States Court of
       Appeals for the Third Circuit                  A-63
X.     Docket entries for the United States District
       Court for the Eastern District of
       Pennsylvania                                   A-68
XI.    Bill of Information                            A-72

XII.      Petition for Writ of Habeas Corpus pursuant to
          28 U.S.C.A. 2254                          A-78

                    **VOLUME III**

XIII.     Portions of the November 17, 2014 trial
          transcript – first day                    A-149

                    **VOLUME IV**

XIV.      November 18, 2014 trial transcript –
          Second day                                A-351

                    **VOLUME V**

XV.       November 19, 2014 trial transcript –
          Third day                                 A-595
XVI.      November 20, 2014 trial transcript –
          Verdict                                   A-902

# Appeal Documents

2:18-cv-04909-JMG RAYNER v. OVERMYER et al **CASE CLOSED on 11/23/2021**

CLOSED,HABEAS

## United States District Court

## Eastern District of Pennsylvania

### Notice of Electronic Filing

The following transaction was entered by STRETTON, SAMUEL on 12/1/2021 at 3:29 PM EST and filed on 12/1/2021

**Case Name:**        RAYNER v. OVERMYER et al
**Case Number:**        2:18-cv-04909-JMG
**Filer:**        MARQUIS LEE RAYNER
**WARNING: CASE CLOSED on 11/23/2021**
**Document Number:** 23

**Docket Text:**
**NOTICE OF APPEAL as to [22] Order Adopting Report and Recommendations,, Order on Report and Recommendations, by MARQUIS LEE RAYNER. Filing fee $ 505, receipt number APAEDC-15582782. Copies to Judge, Clerk USCA, Appeals Clerk and (Attachments: # (1) Certificate of Compliance, # (2) Certificate of Service, # (3) Exhibit Exhibit A)(STRETTON, SAMUEL)**

**2:18-cv-04909-JMG Notice has been electronically mailed to:**

NICHOLAS J. CASENTA , JR     ncasenta@chesco.org

SAMUEL C. STRETTON     strettonlaw.samstretton@gmail.com, strettonlaw.jen@gmail.com, strettonlaw.maddy@gmail.com, strettonlaw.rachel@gmail.com

**2:18-cv-04909-JMG Notice will not be electronically mailed to:**

The following document(s) are associated with this transaction:

**Document description:** Main Document
**Original filename:** n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1001600548 [Date=12/1/2021] [FileNumber=17984523-0] [7dd6ef3822a74dec8b502cbc7535ac7e00f1cfe5071a08c4f2d8dcaf1639970a51 21f2b832462e9de517db4b27ecaf00c60518cae8c42b36caa7af7fe2050dd9]]
**Document description:** Certificate of Compliance
**Original filename:** n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1001600548 [Date=12/1/2021] [FileNumber=17984523-1] [7be6ff0ea4d569e63e4c1eba6b03cb511edda4cbd51b3cd4dcd2ad0594d92e072d 7e7434967f8244dfb6c28243676e20b0d204c3c5ba912fef8d51e8ddf42321]]
**Document description:** Certificate of Service
**Original filename:** n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1001600548 [Date=12/1/2021] [FileNumber=17984523-

*A-1*

2] [2f140677c20f09d90abc5f187b3058be892b4a36574e9adadfb8b6ce5ee1d42a3d
13e406914f9c9aefe938c610e471f6e93ccffd4b159e42e79d5ebeb885f605]]

**Document description:**Exhibit Exhibit A

**Original filename:**n/a

**Electronic document Stamp:**

[STAMP dcecfStamp_ID=1001600548 [Date=12/1/2021] [FileNumber=17984523-
3] [98883f176c4dc6c6414da2ffb6b99dc9212932f81fcf60e0e7ecc4f1b1f223e190
f43a6aa18c06aafe08d68fbadb5cdcbea777d8048c0d9bfe8f87964f0a6d8d]]

Date Filed: 06/27/2022   Page: 92   Document: 18   Case: 21-3230

A-2

 Gmail

Rachel Tillman <strettonlaw.rachel@gmail.com>

---

## Pay.gov Payment Confirmation: PENNSYLVANIA EASTERN DISTRICT COURT

1 message

---

**do_not_reply@psc.uscourts.gov** <do_not_reply@psc.uscourts.gov>　　　Wed, Dec 1, 2021 at 3:28 PM
Reply-To: fiscal@paed.uscourts.gov
To: strettonlaw.rachel@gmail.com

Your payment has been successfully processed and the details are below. If you have any questions or you wish to cancel this payment, please contact: John Bullock at 267-299-7066.

Account Number: 2773493
Court: PENNSYLVANIA EASTERN DISTRICT COURT
Amount: $505.00
Tracking Id: APAEDC-15582782
Approval Code: 92030Z
Card Number: ************4700
Date/Time: 12/01/2021 03:28:08 ET

NOTE: This is an automated message. Please do not reply



*(Left margin, vertical text):* Case: 21-3230　Document: 18　Page: 93　Date Filed: 06/27/2022

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

MARQUIS LEE RAYNER,          :
          PETITIONER,    :
                   :
        V.                    :
                   :  CIVIL No. 2:18-cv-04909-JMG
MICHAEL OVERMYER,            :
SUPERINTENDENT OF SCI-FOREST, :
ET AL                        :
          RESPONDENTS,   :

## NOTICE OF APPEAL TO THE UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

The Petitioner/Appellant, Marquis Lee Rayner, by his pro bono counsel, Samuel C. Stretton, Esquire, respectfully appeals pursuant to Federal Rules of Appellate Procedure 3, to the United States Court of Appeals for the Third Circuit, from the Order dated November 22nd, 2021 and docketed on November 23rd, 2021 by the Honorable John M. Gallagher, of the United States District Court for the Eastern District of Pennsylvania. Attached and marked Exhibit "A" is the Order of the Honorable John M. Gallagher. A certificate of appealability was issued as to issues of sufficiency of the evidence. A certificate of appealability was not issued as to issues of prosecutorial and judicial misconduct. The Petitioner/Appellant, Marquis Lee Rayner, is seeking to appeal all of the issues raised below by the Honorable Judge John M. Gallagher and Honorable Magistrate Judge Henry S. Perkin. Pursuant to Federal Rules of Appellate Procedure Rule 22(b), Mr. Rayner is requesting a certificate of appealability on the issues of prosecutorial and judicial misconduct. It is the understanding of Mr. Rayner that pursuant

$A-4$
1

to Federal Rule of Appellate Procedure Rule 22, this appeal

constitutes a request to this Honorable Court for a certificate

of appealability as to the issues which were not granted in the

certificate of appealability below.

Respectfully submitted,

*s/Samuel C. Stretton*
Samuel C. Stretton, Esquire
Attorney for Petitioner/Appellant,
 Marquis Lee Rayner
103 S. High Street
P.O. Box 3231
West Chester, PA  19381
(610) 696-4243
Attorney I.D. No. 18491

A-4

2

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

MARQUIS LEE RAYNER,                    :
              PETITIONER,              :
                                       :
        V.                             :
                                       :  CIVIL No. 2:18-cv-04909-JMG
MICHAEL OVERMYER,                      :
SUPERINTENDENT OF SCI-FOREST,          :
ET AL                                  :
              RESPONDENTS,             :

## CERTIFICATE OF COMPLIANCE

I, Samuel C. Stretton, Esquire, certify that this filing
complies with the provisions of the *Public Access Policy of the
Unified Judicial System of Pennsylvania: Case Records of the
Appellate and Trial Courts* that require filing confidential
information and documents differently than non-confidential
information and documents.

Respectfully submitted,


*December 1, 2021*
        Date

*s/Samuel C. Stretton*
Samuel C. Stretton, Esquire
Attorney for the Defendant,
 Marquis Lee Rayner
103 South High Street
P.O. Box 3231
West Chester, PA  19381-3231
(610) 696-4243
Attorney I.D. No. 18491

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

MARQUIS LEE RAYNER,                    :
            PETITIONER,                :
                                       :
            V.                         :
                                       :   CIVIL No. 2:18-cv-04909-JMG
MICHAEL OVERMYER,                      :
SUPERINTENDENT OF SCI-FOREST,          :
ET AL                                  :
            RESPONDENTS,               :

## CERTIFICATE OF SERVICE

I hereby certify I am this date serving a copy of the

Petitioner's Notice of Appeal to the United States Court of

Appeals for the Third Circuit in the captioned matter upon the

following persons in the manner indicated below, which service

complies with the Pennsylvania Rules of Appellate Procedure.

Service by electronic mail addressed as follows:

1.      Honorable John M. Gallagher
        United States District Judge
        United States District Court
        Eastern District of Pennsylvania
        504 West Hamilton Street
        Suite 4701
        Allentown, PA 18101
        Email:
        Chambers_of_Judge_John_Gallagher@paed.uscourts.gov

A-7

2.  Honorable Henry S. Perkin
    United States Magistrate District Judge
    United States District Court
    Eastern District of Pennsylvania
    4000 U.S. Courthouse
    601 Market Street
    Philadelphia, PA 19106
    Email:
    Chambers_of_Judge_Henry_S_Perkin@paed.uscourts.gov

3.  Nicholas Casenta, Jr., Esquire
    Chief Deputy District Attorney of Appeals
    Chester County District Attorney's Office
    201 West Market Street
    Suite 4450
    West Chester, PA 19380
    Email: NCasenta@chesco.org

Service by first class mail addressed as follows:

4.  Marquis Rayner
    MA-3096
    SCI-Forest
    P.O. Box 307
    286 Woodland Drive
    Marienville, PA  16239

                        Respectfully submitted,

December 1, 2021        s/Samuel C. Stretton
          Date          Samuel C. Stretton, Esquire
                        Attorney for Petitioner/Appellant,
                         Marquis Lee Rayner
                        103 S. High Street
                        P.O. Box 3231
                        West Chester, PA  19381
                        (610) 696-4243
                        Attorney I.D. No. 18491

A-8

Date Filed: 06/27/2022      Page: 99      Document: 18      Case: 21-3230

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

MARQUIS LEE RAYNER,               :
          Petitioner,             :
                                  :
          v.                      :        Civil No. 2:18-cv-04909-JMG
                                  :
MICHAEL OVERMYER,                 :
SUPERINTENDENT OF SCI-FOREST, *et al.*, :
          Respondents.            :

## ORDER

**AND NOW**, this 22nd day of November, 2021, upon careful and independent consideration

of the Petition for a Writ of Habeas Corpus (ECF No.1), and after review of the Report and

Recommendation of United States Magistrate Judge Henry S. Perkin (ECF No. 17), Petitioner's

Objection thereto (ECF No. 18), and Petitioner's Second Set of Objections (ECF No. 21) we find

as follows:

1. On November 13, 2018, Marquis Lee Rayner filed a petition for a writ of habeas

   corpus. (ECF No. 1). The case was referred to United States Magistrate Judge

   Henry S. Perkin. (ECF No. 3). Judge Perkin issued a Report and Recommendation

   on September 1, 2021. (ECF No. 17).

2. Petitioner filed objections to the Report and Recommendation on September 9,

   2021 and September 14, 2021. (ECF Nos. 18, 21). The objections raised insufficient

   evidence and prosecutorial and judicial misconduct claims. *Id*. The Court reviewed

   the record using the sufficiency standard found in *Jackson v. Virginia,* 443 U.S.

   307, 315-324 (1979). Under *Jackson*, evidence is sufficient to support a conviction

A-9

Exhibt A

Case: 21-3230     Document: 18     Page: 100     Date Filed: 06/27/2022

if "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319. "A reviewing court may set aside the jury's verdict on the grounds of insufficient evidence only if no rational trier of fact could have agreed with the jury." *Coleman v. Johnson,* 566 U.S. 650, 651 (2012). After review, the Court finds that Magistrate Judge Perkin did not err in his determination that the Superior Court's decision was not an objectively unreasonable application of *Jackson.* Petitioner also claims prosecutorial misconduct, alleging that the Assistant District Attorney for the Commonwealth made comments that violated due process. The Court agrees that Appellant's argument in this regard lacks merit. Finally, Appellant argues that the trial court violated his due process and Sixth Amendment rights by "improper interference" during the trial. The Court finds that these interruptions did not violate Petitioner's constitutional rights. The Petitioner's objections do not undermine Judge Perkin's well-reasoned Report and Recommendation.

**WHEREFORE,** it is **HEREBY ORDERED** that:

1. The Report and Recommendation of Magistrate Judge Henry S. Perkin (ECF No.17) is **APPROVED AND ADOPTED.**

2. Petitioner's Objections to the Report and Recommendation (ECF No. 18), and Petitioner's Second Set of Objections (ECF No. 21) are **OVERRULED;**

3. The Petition for Writ of Habeas Corpus (ECF No. 1) is **DISMISSED with prejudice;**

4. The Clerk of the Court shall mark this case **CLOSED;** and



2

Case: 21-3230   Document: 18   Page: 101   Date Filed: 06/27/2022

5.  The Court concurs with Judge Perkin's determination that there is probable cause to

    **ISSUE** a certificate of appealability with respect to Petitioner's second claim

    challenging the sufficiency of the evidence.

                                    BY THE COURT:


                                    _/s/ John M. Gallagher_____
                                    JOHN M. GALLAGHER
                                    United States District Court Judge

A-11

2021 WL 5496867
Only the Westlaw citation is currently available.
United States District Court, E.D. Pennsylvania.

## Marquis Lee RAYNER, Petitioner,

v.

## Michael OVERMYER, et al., Respondents.

CIVIL ACTION NO. 18-4909
|
Filed 09/01/2021

### Attorneys and Law Firms

Samuel C. Stretton, West Chester, PA, for Petitioner.

Nicholas J. Casenta, Jr., District Attorney's Office of Chester County, West Chester, PA, for Respondent The District Attorney of the County of Chester.

### REPORT AND RECOMMENDATION

Henry S. Perkin, M.J.

**\*1** Before the Court is the counseled Petition for Writ of Habeas Corpus and Memorandum of Law filed by Petitioner, Marquis Lee Rayner, pursuant to 28 U.S.C. § 2254 (ECF No. 1). Petitioner is currently housed in S.C.I. Forest in Marienville, Pennsylvania. For the reasons that follow, it is recommended that the petition should be denied with prejudice and dismissed without an evidentiary hearing. However, I do recommend that a certificate of appealability issue with respect to Petitioner's second claim challenging sufficiency of the evidence.

### I. FACTS AND PROCEDURAL HISTORY

On November 20, 2014, at the conclusion of a four-day trial before the Honorable James P. MacElree, the jury found Petitioner guilty of second-degree murder, robbery, burglary, and criminal conspiracy. See Dkt. No. CP–15–CR–0001737–2013. On April 17, 2015, the trial court sentenced Petitioner to, *inter alia*, a sentence of life imprisonment without the possibility of parole on the charge of second-degree murder.[1] (N.T. 4/17/16, 38:19-39:4) Petitioner then filed post-sentence motions (1) to modify and reconsider the sentence and (2) for

a new trial and arrest of judgment, which the trial court denied on April 23, 2015. See Dkt. No. CP–15–CR–0001737–2013.

| 1 | The trial court further sentenced Petitioner to: 90 to 240 months on the charge of robbery, 54 to 240 months on the charge of burglary, and 90 to 240 months on the charge of criminal conspiracy. All counts were imposed to run consecutively to each other. (N.T. 4/17/16, 38:19-39:4) |

The trial court summarized the facts underlying these charges as follows:

> Shortly after midnight on June 29, 2012, three armed men burst into the living room of the apartment shared by Dominick Williams and Aaron Crawford. Mr. Crawford was asleep in his bedroom. Mr. Williams was awake and playing video games in the living room. All three intruders wore t-shirts wrapped around their faces to disguise their identity. One of the intruders immediately shot Mr. Williams in the groin. Another of the intruders went to Mr. Crawford's bedroom and grabbed a clear, plastic jar that contained marijuana, money and a pack of cigarettes. All three intruders then ran from the apartment. Dominick Williams remained on his living room floor bleeding to death. Later, at the hospital, he died.

> Shortly after the robbery[,] the police located the plastic jar about two blocks away from the victim's apartment. Located nearby was a black t-shirt. Subsequent testing revealed the presence of co-defendant Dominique Lee's thumbprint on the jar, and [Appellant's] DNA on the t-shirt. [Appellant] and Dominique Lee, who are half-brothers, were subsequently arrested for the murder of Dominick Williams.

Trial Court Opinion, 5/03/16, at 1–2 (footnotes omitted).

Petitioner filed a notice of appeal to the Pennsylvania Superior Court, raising the following five issues for the Superior Court's review.

1. Were the convictions for murder of the second degree, robbery, burglary and conspiracy to commit robbery and burglary against the weight of the evidence? Were the verdicts against the weight of the evidence when the only evidence was [Appellant's] DNA on a black tee shirt found [one and one-half] blocks from the crime and [fifteen] feet from a jar taken from the house, which jar had his half-brother's fingerprints?

**\*2** 2. Were the convictions for murder of the second degree, robbery, burglary and conspiracy to commit

robbery and burglary not supported by sufficient evidence?

3. Did the Assistant District Attorney err in his opening statement and err when presenting Detective Dutter by stating his office received an anonymous tip linking Dominique Lee (half-brother of [Appellant]) as a participant in the crime? Did [the trial court] err in denying the defense request for a mistrial? Did this intentional error violate [Appellant's] right to confront a critical witness in violation of the Sixth Amendment of the United States Constitution and Article I, Section 9 of the Pennsylvania Constitution and further, was this improper hearsay, particularly since [Appellant] was charged with conspiracy?

4. Did [the Commonwealth] err in [its] closing speech by incorrectly suggesting [Appellant] kept the alibi defense a secret until the last day of trial when, in fact, the alibi notice had been filed long before the trial, and did the [Commonwealth] err in giving [a] personal opinion that [Appellant] was guilty? Did [the trial court] err in not granting a timely mistrial?

5. Did [the trial court] err by interfering improperly with [defense counsel's] cross-examination of a key prosecution witness on his critical testimony on the tee shirt, and did [the trial court] err in criticizing [defense counsel] before the jury? Did [the trial court] further err in repeatedly and incorrectly criticizing [defense counsel] during his closing argument on the issue of burden of proof? Did [the trial court] wrongly criticize [defense counsel] in front of the jury? Did [the trial court] err in not granting a mistrial? Did [the trial court's] improper inference and criticism of [defense counsel] prejudice [Appellant], deny him a fair trial, and impact on [Appellant's] [Sixth] Amendment right to effective counsel?

*Commonwealth v. Rayner*, 153 A.3d 1049, 1053–54 (Pa. Super. 2016). The Superior Court affirmed the judgment of sentence on direct review. *Id.* at 1063. On July 11, 2017, the Supreme Court of Pennsylvania denied Petitioner's petition for discretionary review. *Commonwealth v. Rayner*, 642 Pa. 63, 169 A.3d 1046 (Pa. 2017) (table). Petitioner sought review before the United States Supreme Court, which denied his petition for certiorari on February 20, 2018. *Rayner v. Pennsylvania*, —— U.S. ——, 138 S. Ct. 976, 977, 200 L.Ed.2d 259 (2018).

Petitioner did not seek state collateral relief pursuant to Pennsylvania's Post Conviction Relief Act ("PCRA"), 42 Pa. Cons. Stat. Ann. §§ 9541, et seq.[2] Instead, on November 9, 2018, Petitioner's counsel filed the instant habeas Petition with the Eastern District of Pennsylvania. (ECF No. 1.) The petition raises the following grounds for relief:

1. Were the convictions for murder of the second degree, robbery, burglary and conspiracy to commit robbery and burglary against the weight of the evidence and based on pure speculation? Were the verdicts against the weight of the evidence when the only evidence was [Petitioner's] DNA with other persons' DNA on a black tee shirt found [one and one-half] blocks from the crime and [fifteen] feet from a jar taken from the house, which jar had his half-brother's fingerprints? Did the Superior Court fail to properly address and discus[s] this lack of evidence and its speculative nature in a case of actual innocence and does this implicate due process?

*3 2. Were the convictions for murder of the second degree, robbery, burglary and conspiracy to commit robbery and burglary not supported by sufficient evidence? Was the evidence too speculative in nature and did the Superior Court fail to address the speculative nature of these verdicts? Did the Superior Court fail to discuss this highly speculative evidence and lack of evidence and does this implicate due process?

3. Did the Assistant District Attorney err in his opening statement and err when presenting Detective Dutter by stating his office received an anonymous tip linking Dominique Lee (half-brother of [Petitioner]) as a participant in the crime? Did [the trial court] err in denying the defense request for a mistrial? Did this intentional error violate [Appellant's] right to confront a critical witness in violation of the Sixth Amendment of the United States Constitution and Article I, Section 9 of the Pennsylvania Constitution and further, was this improper hearsay, particularly since [Petitioner] was charged with conspiracy? Did the Superior Court wrongly treat this as a course of conduct hearsay?

4. Did the District Attorney err in his closing speech by incorrectly suggesting [Petitioner] kept the alibi defense a secret until the last day of trial when, in fact, the alibi notice had been filed long before the trial, and did the District Attorney err in giving his personal opinion that [Petition] was guilty? Did [the trial court] err in not granting a timely mistrial? Did the Superior Court

A-13

Case: 21-3230    Date Filed: 06/27/2022    Document: 18    Page: 104

neglect its responsibility by calling this oratorical flair, thus not addressing the serious misconduct?

5. Did [the trial court] err by interfering improperly with [defense counsel's] cross-examination of a key prosecution witness on his critical testimony on the tee shirt, and did [the trial court] err in criticizing [defense counsel] before the jury? Did [the trial court] further err in repeatedly and incorrectly criticizing [defense counsel] during his closing argument on the issue of burden of proof? Did [the trial court] wrongly criticize [defense counsel] in front of the jury? Did [the trial court] err in not granting a mistrial? Did [the trial court's] improper inference and criticism of [defense counsel] prejudice [Petitioner], deny him a fair trial, and impact on [Petitioner's] [Sixth] Amendment right to effective counsel? Did the Superior Court fail to responsibly address this most serious issue of a trial judge wrongly interfering and criticizing a trial lawyer in front of the jury?

(ECF No. 1 at 23-24.)

2    Though Petitioner did not seek state collateral review, his claims are exhausted as he fairly presented them to the Superior Court on direct review. As discussed *infra*, to satisfy this requirement the petitioner must "fairly present" his claims to the state courts allowing the state courts a meaningful opportunity to correct alleged constitutional violations. *Duncan v. Henry*, 513 U.S. 364, 365, 115 S.Ct. 887, 130 L.Ed.2d 865 (1995); *O'Sullivan v. Boerckel*, 526 U.S. 838, 845, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999)(requiring "one complete round" of the state's appellate procedures). In Pennsylvania, one complete round includes presenting the federal claim through the Superior Court on direct *or* collateral review. *See Lambert v. Blackwell*, 387 F.3d 210, 233-34 (3d Cir. 2004).

The case was first assigned to the Honorable Curtis J. Joyner, who referred it to the undersigned for preparation of a Report and Recommendation on November 21, 2018. (ECF No. 3.) Respondents filed a response to the petition on December 5, 2018, arguing that the petition should be denied. (ECF No. 7.) On January 10, 2019, Petitioner filed an additional brief with leave of Court and, on February 1, 2019, Respondents filed a supplemental answer in response. (ECF Nos. 13, 14.) The case was reassigned to the Honorable John M. Gallagher on July 30, 2021. (ECF No. 16.) Having reviewed the documents of record available in this case, I offer this Report and Recommendation.

## II. STANDARD OF REVIEW

### a. Habeas Corpus Standards

*4 Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which is codified at 28 U.S.C. § 2254(d), a habeas corpus petition can only succeed if Petitioner can show that: (1) the state court's adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or if (2) the adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2); *see Parker v. Matthews*, 567 U.S. 37, 40-45, 132 S.Ct. 2148, 183 L.Ed.2d 32 (2012); *Berryman v. Morton*, 100 F.3d 1089, 1103 (3d Cir. 1996).

"A state-court decision is 'contrary to' clearly established federal law if the state court (1) 'contradicts the governing law set forth in [the Supreme] Court's cases' or (2) 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a [different] result.' " *Lambert v. Blackwell*, 387 F.3d 210, 234 (3d Cir. 2004) (quoting *Williams v. Taylor*, 529 U.S. at 362, 405-406, 120 S.Ct. 1495 (2000)). "A state-court decision 'involve[s] an unreasonable application' of clearly established federal law if the state court (1) 'identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular ... case'; or (2) 'unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.' " *Id.* (quoting *Williams*, 529 U.S. at 407, 120 S.Ct. 1495). An objectively unreasonable application does not require merely that a state court's decision be erroneous or incorrect, but also that it be unreasonable. *Williams*, 529 U.S. at 407, 120 S.Ct. 1495. Clearly established federal laws are the holdings, not the dicta of the Supreme Court. *Id.* at 390, 120 S.Ct. 1495.

With respect to 28 U.S.C. § 2254(d)(2), which dictates that federal habeas relief may be granted when the state court adjudication was based on an unreasonable determination of the facts in light of the evidence presented, the petitioner must demonstrate that a reasonable fact-finder could not have reached the same conclusions given the evidence. If a reasonable basis existed for the factual findings reached in the state courts, then habeas relief is not warranted. *Burt v. Titlow*, 571 U.S. 12, 18, 134 S.Ct. 10, 187 L.Ed.2d 348

A-14

Date Filed: 06/27/2022    Page: 105    Document: 18    Case: 21-3230

(2013); _Campbell v. Vaughn_, 209 F.3d 280, 290-91 (3d Cir. 2000), _cert. denied_, 531 U.S. 1084, 121 S.Ct. 789, 148 L.Ed.2d 685 (2001). Additionally, "a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). _See also Rountree v. Balicki_, 640 F.3d 530, 538 (3d Cir. 2001) ("State-court factual findings ... are presumed correct; the petitioner has the burden of rebutting the presumption by clear and convincing evidence.") (quotation omitted), _cert. denied_, 565 U.S. 992, 132 S.Ct. 533, 181 L.Ed.2d 374 (2011); _Simmons v. Beard_, 590 F.3d 223, 231 (3d Cir. 2009) ("Under the § 2254 standard, a district court is bound to presume that the state court's factual findings are correct, with the burden on the petitioner to rebut those findings by clear and convincing evidence.").

**b. Exhaustion and Procedural Default**

A petitioner may only succeed in a habeas corpus petition if he has first exhausted all remedies available in the state courts. 28 U.S.C. § 2254(b)(1)(A). "The exhaustion requirement ensures that state courts have the first opportunity to review federal constitutional challenges to state convictions and preserves the role of state courts in protecting federally guaranteed rights." _Caswell v. Ryan_, 953 F.2d 853, 857 (3d Cir. 1992). To satisfy this requirement the petitioner must "fairly present" his claims to the state courts allowing the state courts a meaningful opportunity to correct alleged constitutional violations. _Duncan v. Henry_, 513 U.S. 364, 365, 115 S.Ct. 887, 130 L.Ed.2d 865 (1995); _O'Sullivan v. Boerckel_, 526 U.S. 838, 845, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999)(requiring "one complete round" of the state's appellate procedures). In Pennsylvania, one complete round includes presenting the federal claim through the Superior Court on direct or collateral review. _See Lambert v. Blackwell_, 387 F.3d 210, 233-34 (3d Cir. 2004). Petitioner bears the burden of proving the exhaustion of all available remedies for each claim. _Toulson v. Beyer_, 987 F.2d 984, 987 (3d Cir. 1993).

**\*5** Claims that are not exhausted will become procedurally defaulted, and the petitioner is not entitled to a review on the merits. _O'Sullivan_, 526 U.S. at 848, 119 S.Ct. 1728. Review of a procedurally defaulted claim is permitted in extremely narrow circumstances, where the petitioner can show either (1) cause for the default and actual prejudice or (2) the failure to consider the claim will result in a fundamental miscarriage of justice. _Coleman v. Thompson_, 501 U.S. 722, 749, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991).

"Cause" for procedural default is shown when the petitioner demonstrates "some objective factor external to the defense impeded counsel's efforts to comply with the state procedural rule." _Murray v. Carrier_, 477 U.S. 478, 488 (1986). "Actual prejudice" occurs when the errors at trial "worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." _Id._ at 494 (quoting _United States v. Frady_, 456, U.S. 152, 179 (1982)). A "fundamental miscarriage of justice" occurs when a petitioner presents new evidence of his actual innocence such that "it is [now] more likely than not that no reasonable juror would have convicted him." _Schlup v. Delo_, 513 U.S. 298, 327, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995). Procedural default and untimeliness are affirmative defenses which the state may waive. _Trest v. Cain_, 522 U.S. 87, 89, 118 S.Ct. 478, 139 L.Ed.2d 444 (1997) (procedural default subject to waiver); _Robinson v. Johnson_, 313 F.3d 128, 134 (3d Cir. 2002) (statute of limitations defense subject to waiver).

**III. DISCUSSION**

Petitioner raises substantially identical claims in his habeas petition that he raised to the Superior Court on direct appeal. As discussed in detail below, I find that none of Petitioner's claims warrant relief. I therefore respectfully recommend that his habeas petition be denied.

**a. Claim 1: Weight of the Evidence**

In his first claim, Petitioner argues that the verdict was against the weight of the evidence as it was "founded only on pure speculation and conjecture without any support in the trial evidence." (ECF No. 13 at 38.) Petitioner's challenge to the weight of the evidence fails as it does not present a cognizable ground for habeas relief.

Under AEDPA, a stand-alone claim challenging the weight of the evidence is not a cognizable ground for federal habeas corpus relief because it does not allege a constitutional violation. _See Tibbs v. Florida_, 457 U.S. 31, 37–38, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982). A weight of the evidence claim challenges "issues of credibility," arguing that "a greater amount of credible evidence supports one side of an issue or cause than another." _Id._ at 38–39, 102 S.Ct. 2211. As discussed by the Supreme Court in _Tibbs_, a reviewing court hearing a weight of the evidence claim sits as a "thirteenth juror" to agree or disagree with the jury's resolution of the conflicting testimony. _Id._ at 42, 102 S.Ct. 2211. In habeas proceedings, however, federal courts are bound by the factual findings of the state courts and are precluded

from re-evaluating the credibility of witnesses. *Marshall v. Longberger*, 459 U.S. 422, 434–35, 103 S.Ct. 843, 74 L.Ed.2d 646 (1983); *see also* 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a state court shall be presumed to be correct.") Consequently, a claim that a trial court decision was against the weight of the evidence is not a valid basis for habeas corpus review. *See Woodruff v. Williams*, 2016 WL 8257719, at *6 (E.D. Pa. Nov. 30, 2016), *report and recommendation adopted*, 2017 WL 617008 (E.D. Pa. Feb. 15, 2017) (collecting cases).

*6 Because Petitioner's first claim is not cognizable on habeas review I respectfully recommend that it be denied.

### b. Claim 2: Sufficiency of the Evidence

Petitioner next contends that there was insufficient evidence to support the verdict. (ECF No. 1 at 52-58.) Petitioner does not dispute that the relevant statutes for robbery, burglary, conspiracy, and second-degree murder were violated. Rather, Petitioner argues that there was not sufficient evidence to identify him as a perpetrator, that is, to place him at the crime scene, beyond a reasonable doubt. In challenging the sufficiency of the evidence, Petitioner stresses that the only evidence connecting him to the crimes of which he was convicted was the black t-shirt found one and one-half blocks away from the crime scene. *Id.* at 53. Though the t-shirt contained Petitioner's DNA, he notes that it also contained the DNA of four other unknown persons. (ECF No. 13 at 49.) Thus, the inference that Petitioner was involved in the crime was "equally consistent with the inference that his half-brother [and co-defendant] could have taken the shirt from the house and used in in the robbery" and consistent with the inference that "other people [ ] could have been involved." *Id.*

Respondents maintain that the Superior Court correctly addressed Petitioner's challenge the sufficiency of the evidence. (ECF No. 7 at 23.) On direct appeal, the Superior Court found Petitioner's sufficiency challenge meritless, writing:

> In his second issue, Appellant argues that the evidence was insufficient to support the verdict because it required pure speculation. (*See* Appellant's Brief, at 49–55). Appellant's issue lacks merit.
>
> In reviewing the sufficiency of the evidence, we must determine whether the evidence admitted at trial, and all

reasonable inferences drawn from that evidence, when viewed in the light most favorable to the Commonwealth as verdict winner, was sufficient to enable the fact finder to conclude that the Commonwealth established all of the elements of the offense beyond a reasonable doubt. The Commonwealth may sustain its burden by means of wholly circumstantial evidence. Further, the trier of fact is free to believe all, part, or none of the evidence.

*Commonwealth v. Taylor*, 137 A.3d 611, 614 (Pa. Super. 2016) (citation omitted). In this case, Appellant was convicted of murder of the second degree, robbery, burglary, and conspiracy.

Pursuant to section 2502(b) of the Crimes Code, "[a] criminal homicide constitutes murder of the second degree when it is committed while defendant was engaged as a principal or an accomplice in the perpetration of a felony." 18 Pa.C.S.A. § 2502(b). The Crimes Code also provides, in pertinent part, that "[a] person is guilty of robbery if, in the course of committing a theft, he ... inflicts serious bodily injury upon another [or] threatens another with or intentionally puts him in fear of immediate serious bodily injury[.]" 18 Pa.C.S.A. §§ 3701(a)(1)(i), (ii). It further provides, "[a] person commits the offense of burglary if, with the intent to commit a crime therein, the person ... enters a building or occupied structure, or separately secured or occupied portion thereof that is adapted for overnight accommodations in which at the time of the offense any person is present[.]" 18 Pa.C.S.A. § 3502(a)(1). Finally:

> *7 A person is guilty of conspiracy with another person or persons to commit a crime if with the intent of promoting or facilitating its commission he ... agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime ... or ... agrees to aid such other person or persons in the planning or commission of such crime ....

18 Pa. C.S.A. § 903(a).

In this case, the evidence at trial established that three men broke into Dominick Williams' apartment with the intent of robbing him. (*See* N.T. Trial, 11/17/14, at 67, 69, 150). The men were armed with guns and wore t-shirts across their faces. (*See id.* at 66–68, 77, 118–119, 132). After shooting Mr. Williams, and pistol whipping his roommate, Aaron Crawford, one of the men stole a plastic-lidded jar that contained marijuana and other items. (*See id.* 155–57). The individual was not wearing gloves. (*See id.* at 150).

As further described by the trial court:

> Approximately [ninety] minutes after Dominick Williams had been shot, police officer Stephen Galletta of the Coatesville City Police Department located the clear plastic jar tossed in a hedge row approximately a block and a half from the crime scene. (*See id.* at 244). The jar contained a pack of Newport cigarettes. (*See id.* at 163). Located several feet away was a black t-shirt. (*See id.* at 244, 248). Witness Aaron Crawford was brought to the discovery scene and identified the jar as the one taken from his bedroom earlier that morning, and the t-shirt as the type of shirt that one of the robbers had been wearing across his face. (*See id.* at 161–64).

> Chester County Detective Kenneth Beam testified as an expert in the field of fingerprint analysis. Detective Beam received as evidence the plastic jar and t-shirt found close to the scene of the robbery. (*See* N.T. Trial, 11/18/14, at 49). Detective Bean testified that the print with the sharpest and clearest detail found on the plastic jar belonged to co-defendant Dominique Lee. (*See id.* at 65, 69, 73). Because Detective Bean knew that the t-shirt had possibly been tied across the face of one of the intruders as a disguise, he surmised that the intruder might have left saliva on the shirt. Accordingly, Detective Bean sent the t-shirt to the State Police Laboratory for DNA analysis. (*See id.* at 55).

> Michael Gossard, a forensic scientist with the Pennsylvania State Police, testified as a serology expert. Mr. Gossard tested the t-shirt for evidence of saliva. (*See id.* at 117). His testing indicated the presence of saliva on two different areas of the t-shirt. (*See id.* at 121, 135).

> Timothy Gavel, a forensic scientist with the Pennsylvania State Police DNA lab, performed a DNA analysis on the evidence left on the t-shirt. Mr. Gavel testified that DNA evidence left on the t-shirt belonged to Appellant [ ]. (*See id.* at 149, 153). He also testified that the chance of a coincidental DNA match in the African–American population was one in 7.9 quintillion. (*See id.* at 154).

(Trial Ct. Op., at 4–6) (some record citation formatting provided).

Based on the above evidence, and our review of the record in the light most favorable to the Commonwealth as verdict winner, we conclude that it was sufficient to establish the elements of the crimes of which Appellant was convicted. *See Taylor, supra* at 614,. Appellant's sufficiency challenge does not merit relief.

**\*8** *Commonwealth v. Rayner*, 153 A.3d 1049, 1054-56 (Pa. Super. 2016)(footnotes omitted).

### i. *Legal Standard*

Unlike claims challenging the weight of the evidence, claims challenging the sufficiency of the evidence do provide a potential basis for habeas relief as they implicate the Due Process Clause. *See Jackson v. Virginia*, 443 U.S. 307, 315-324, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Under *Jackson*, evidence is sufficient to support a conviction if, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319, 99 S.Ct. 2781.

"*Jackson* claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference." *Coleman v. Johnson*, 566 U.S. 650, 651, 132 S.Ct. 2060, 182 L.Ed.2d 978 (2012) (per curiam). The first layer of deference applies both on direct appeal and in the habeas context: "it is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury." *Id.* (quoting *Cavazos v. Smith*, 565 U.S. 1, 2, 132 S.Ct. 2, 181 L.Ed.2d 311 (2011) (per curiam)). On habeas review, a second layer of deference is added: "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.' " *Id.* (quoting *Renico v. Lett*, 559 U.S. 766, 773, 130 S.Ct. 1855, 176 L.Ed.2d 678 (2010)).

### ii. *Analysis*

To determine whether the Superior Court's decision – that the evidence was sufficient to convict Petitioner of second-degree murder, robbery, burglary, and criminal conspiracy – was "objectively unreasonable," this Court first examines the trial testimony in the light most favorable to the prosecution.

Case: 21-3230    Document: 18    Page: 108    Date Filed: 06/27/2022

Having reviewed the entirety of record, we conclude that the trial testimony reveals the following facts.

Approximately ninety minutes after the robbery, burglary, and shooting at Dominick Williams' apartment, Officer Stephen Galletta recovered a clear plastic jar located in a hedge row approximately a block and a half from the crime scene. (N.T. 11/17/14, 244:14-23.) Around that same time, Office Jose Colon found a black t-shirt in the grass nearby.[3] (*Id.* at 244:10-21, 250:11-18.) Following the discovery, witness Aaron Crawford was brought to the site and identified the jar found as the one taken from his room. (*Id.* at 161: 20-22) Specifically, Crawford identified a pack of Newport cigarettes and marijuana inside the recovered jar that were identical to the objects present in the jar taken from him during the robbery. (*Id.* at 163:7-164:1.) Crawford also identified the black t-shirt as the kind that one of the robbers had on his face. (*Id.* at 164:7-165:3.)

[3]    The exact distance between the jar and shirt is unknown. On direct, Officer Galleta testified that the distance between the two objects was approximately "[a] few feed, maybe one, two feet, very close to each other." (N.T. 11/17/14, 248:10-14.) On cross, Officer Galletta testified that he "did not measure" and the distance "was approximate" when being asked whether the t-shirt was in fact fifteen feet from the container. (*Id.* at 249:3-7.)

*9  The Commonwealth presented Detective Kenneth Beam as an expert in the field of fingerprint analysis. (N.T. 11/18/14, 31:16-37:13.) Detective Beam testified that, after testing the plastic jar, the print with "the sharpest and clearest detail" matched co-defendant Dominique Lee's left thumbprint. (*Id.* at 65:10-69:5.) He further testified that he marked and photographed ten other "fragments or partial areas of ridge detail on the jar" and one on the pack of Newport cigarettes. (*Id.* at 59:24-60:12, 83:11-17.) However, none of these additional prints could be identified upon comparison to other individuals' fingerprints. (*Id.* at 79:24-85:20.)

Next, the Commonwealth offered Michael Gossard, a forensic scientist with the Pennsylvania State Police, as a serology expert. (N.T. 11/18/14, 105:5-111:17.) Having tested the black t-shirt, Mr. Gossard testified that two areas on the shirt tested positive for the presence of saliva.[4] (*Id.* at 121:7-9.) Specifically, the two areas that tested positive were on the front neck and lower right front areas of the shirt. (*Id.* at 134:22-24.)

[4]    In response to further questioning on cross-examination, Mr. Gossard elaborated on his opinion, stating "My opinion is that those two stains around the front neck and lower right front of that t-shirt exhibited amylase activity. We regard that as a positive test result and our wording for that is presumptive chemical testing which indicates the presence of saliva in those stains." (N.T. 11/18/14, 134:22-135:3.)

Finally, the Commonwealth presented Timothy Gavel, a forensic scientist at the Pennsylvania State Police DNA Laboratory, as an expert in DNA profiling (N.T. 11/18/14, 137:12-142:3.) Mr. Gavel tested portions of the black t-shirt for DNA from three sections: the lower right front, front neck, and collar tag areas. (N.T. 11/18/14, 147:11-18.) Testing of the lower front sample resulted in a DNA profile that was "consistent with a mixture," that is, "more than one person's DNA." (*Id.* at 147:11-18.) Mr. Gavel testified that "most of the DNA was from one particular person" with two other contributors to the mixture. (*Id.* at 147:23-148:12.) The most prominent and distinguishable DNA profile was compared against a DNA database and resulted in a match to Petitioner's DNA. (*Id.* at 148:16-149:15.) Mr. Gavel also testified that he could not identify the other two DNA profiles present on that testing sample as "the complexity of those other two [contributors] was too complex to do a reliable interpretation." (*Id.* at 150:4-15.)

For the DNA profile identified as Petitioner's on the t-shirt, Mr. Gavel explained that the chance of a coincidental DNA match in the African-American population was one in 7.9 quintillion. (*Id.* at 153, 2-23.) With respect to the other two sections of t-shirt tested, Mr. Gavel testified that a "DNA profile was obtained but due to the complexity of the mixture no results were obtained from [those] particular items." (*Id.* at 156:19-157:5.)

Reviewing the evidence in the light most favorable to the prosecution, this Court cannot find that the Superior Court's decision was contrary to or an objectively unreasonable application of *Jackson*.[5] Though the evidence establishing the essential elements of these crimes is entirely circumstantial, "*Jackson* leaves juries broad discretion in deciding what inferences to draw from the evidence presented at trial, requiring only that jurors 'draw reasonable inferences from basic facts to ultimate facts.' " *Coleman*, 566 U.S. at 655, 132 S.Ct. 2060 (quoting *Jackson*, 443 U.S. at 319, 99 S.Ct. 2781.) As previously stated, a black t-shirt, matching the description of one used by a robber to disguise his face, contained the DNA of Petitioner in an area that also tested

positive for saliva. This shirt was found only ninety minutes after the robbery, burglary, and shooting a block and a half from the crime scene. Further, the shirt was located nearby the recovered jar taken from the apartment of Dominick Williams. Expert witness testimony indicated the presence of a left thumbprint on the jar belonging to Petitioner's half-brother, Dominique Lee. On the basis of these facts, a rational jury could infer that Petitioner left the DNA on the black shirt when he participated in the robbery, burglary, and shooting at Dominick Williams' residence. Further, a rational jury could infer that, after the wearing the black shirt across his face during the crime, either he, or an accomplice, discarded the shirt and stolen jar shortly after and only one and one-half blocks away from the scene of the crime.

5    Though the Superior Court applied the Pennsylvania standard for sufficiency of evidence, it is the same as the federal standard under *Jackson*. *See Evans v. Court of Common Pleas, Delaware County*, 959 F.2d 1227, 1233 (3d Cir. 1992) (sufficiency standard is same under Pennsylvania and federal law).

**\*10** Petitioner argues that the trial testimony regarding the DNA found on the black t-shirt is "speculative and conflicting" as other profiles were also identified, but did not produce a match to any individuals. (ECF No. 13 at 49.) He further contends that the jury could have easily inferred either that Petitioner's half-brother and co-defendant took the shirt from the house to use in the robbery or that another unidentified person could have been involved. *Id.* We do not disagree with Petitioner that the DNA evidence could possibly support alternate theories of the crime. Were this Court sitting as the trier of fact at Petitioner's trial, we likely would have weighed the evidence against him differently, or drawn other conclusions from the evidence at trial. However, the test for sufficiency of the evidence before this Court, and the Superior Court, is not whether additional inferences are consistent with the evidence presented, but rather, whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319, 99 S.Ct. 2781. *Jackson* unambiguously instructs that a reviewing court, "faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Id.* at 326, 99 S.Ct. 2781.

Even if this Court were to disagree with the Superior Court's decision on sufficiency of the evidence, we would also have

to conclude that it was objectively unreasonable. *Williams*, 529 U.S. at 407, 120 S.Ct. 1495. In determining whether the Superior Court's decision was objectively unreasonable, we are guided by a recent decision from the Third Circuit. In *Travillion v. Superintendent Rockview SCI*, 982 F.3d 896 (3d Cir. 2020), the Court of Appeals reversed the decision of the District Court denying habeas relief, finding that the Pennsylvania court's adjudication of Travillion's insufficient evidence claim involved an unreasonable application of *Jackson*. *Id.* at 898, 99 S.Ct. 2781.

At trial, the jury found Travillion guilty of robbery based on testimony presented by two witnesses for the Commonwealth, (1) Deborah Lynn Diodati, the manager of the store that was robbed; and (2) Detective John J. Godlewski, a fingerprint expert. *Id.* at 196. Ms. Diodati could not identify Travillion as the robber, as the robber's face was covered, but described the robber as: 5'9" to 5'10"; around 160 pounds; probably in his early- to mid-twenties; possibly African-American based on his voice; and wearing a big, bulky off-white winter coat with fur around the hood, a turtle neck pulled up to his nose, and dark pants. *Id.* at 899. At the time of arrest, the police report indicated that Travillion "was 6'1" tall and weighed 170 pounds" and "had black, straight and short hair, brown eyes, medium complexion, medium frame build, a 'U.S. region' accent, and a pierced left ear." *Id.* Detective Godlewski testified that he processed for fingerprints on the counter, the sliding accordion door that the robber tore partially off its hinges, and several areas in the store. *Id.* No prints of value were recovered on these items. *Id.* However, Detective Godlewski also tested a Manila folder left at the scene by the robber. *Id.* From the Manila folder and one of the papers inside the folder, Detective Godlewski obtained and identified thumbprints and fingerprints belonging to Travillion. *Id.*

The Superior Court rejected Travillion's sufficiency claim, concluding that the fingerprints on the Manila envelope and paper left at the scene were sufficient to prove Travillion's identity as the robber. *Id.* at 902. On review, the Third Circuit found the state court's conclusion "objectively unreasonable," explaining:

Travillion's fingerprints were only found on easily movable objects, i.e., the Manila folder and the paper, and there was no evidence of his prints anywhere else at the crime scene. There was no evidence that the folder and paper were unavailable to Travillion prior to the robbery, no evidence as to the age of the prints, and no evidence as to how long the prints could remain on the folder and paper after their impression. Appellees acknowledge that the fingerprint

expert was unable to say when the prints were placed on the folder and paper.

In addition to the absence of evidence regarding when Travillion's fingerprints on the easily movable folder and paper were impressed, there was a lack of sufficient additional incriminating evidence, circumstantial or otherwise, so as to allow a rational juror to find guilt beyond a reasonable doubt. Although there is evidence that Travillion touched the folder at some indefinite time with his left hand, and there is evidence that the robber carried the folder at the time of the crime in his left hand, there is not sufficiently incriminating evidence that Travillion was the perpetrator holding the folder at the time of the crime.

**\*11** Ms. Diodati's description of the offender, at best, merely does not exclude Travillion as the perpetrator. Among other things, Diodati testified that she never saw the robber's face, and when asked if "[a]nything indicate[d] to [her] whether he might have been African-American? [or] Hispanic?," she replied, "His *voice* led me to believe he *could* have been African-American." App. 112-13 (emph. added). It is undisputed that Travillion was actually three to four inches taller than the offender described by the witness. The general description given by the witness in this case was insufficient additional incriminating evidence for any rational trier of fact to find Travillion guilty of being the robber beyond a reasonable doubt.

The witness' testimony also revealed the robber had knowledge about the store unknown to the general public, including, among other things, the store's layout and inner offices, the existence and location of a second safe known only to store management and assistants, and (possibly) that the witness had children. The timing of the robbery also suggests the robber knew when a large amount of cash would be present before the armored car pickup. There was no evidence, however, that Travillion was privy to any of this information.

There was no evidence connecting Travillion to the robbery, such as evidence he owned clothing worn by the intruder, or that he owned a bag similar to the one used during the crime, or that he had any connection to the getaway vehicle, or possessed any of the robbery's proceeds. There was also no evidence of any attempt to match the photographed shoeprint at the crime scene with shoes owned by Travillion, or even his shoe size. *Travillion*, 982 F.3d at 904–05.

In comparison to *Travillion*, the evidence presented by the Commonwealth of Petitioner's guilt is more compelling. Not only was Petitioner's DNA recovered from the black t-shirt resembling that of the kind used by a robber to cover his face, but the shirt was located next to the jar taken from Dominick Williams' apartment. Further, the fingerprint on the jar matched Petitioner's half-brother, Dominique Lee, allowing the jury to reasonably infer that Petitioner aided and participated in the crime with someone with whom he was familiar. Although this case presents a close issue on the question of sufficiency, we cannot find, as in *Travillion*, that the Superior Court applied *Jackson* in an "objectively unreasonable" manner. As the Supreme Court noted in a case challenging sufficiency of the evidence, "[d]oubts as to whether [Petitioner] is in fact guilty are understandable. But it is not the job [of federal courts] to decide whether the State's theory was correct." *Cavazos*, 565 U.S. at 8, 132 S.Ct. 2.

As noted previously, *Jackson* claims face a high bar because of the twice-deferential standard, deferring to both the jury's findings at trial and to the opinion of the Superior Court on direct and collateral appeal. Petitioner's second claim challenging the sufficiency of the evidence fails to meet that bar and, thus, I respectfully recommend that it be denied. As discussed in further detail below, I do recommend that a certificate of appealability issue on this claim.

**c. Claim 3: Motion for Mistrial/Confrontation Clause**

In Petitioner's third claim, he argues that the trial court erred in denying the defense request for a mistrial after the Commonwealth referenced an anonymous tip linking co-defendant Dominique Lee as a participant in the crime. (ECF No. 1 at 24-25.) Petitioner maintains that this reference constituted improper hearsay and also violated his right to "confront a critical witness in violation of the Sixth Amendment ... [as] Petitioner was charged with conspiracy." (*Id.* at 24.) The Commonwealth first referenced this anonymous tip during its opening statement. (N.T. 11/17/14, 18:1-7). Later, during direct examination of Detective Harold Dutter, upon being questioned as to when Dominique Lee's name first came up in the context of the investigation, Detective Dutter responded, "I received an anonymous tip." (N.T. 11/18/14, 183:14-19).

**\*12** The Superior Court found the issue meritless. First, with respect to opening statements, the Superior Court explained:

Appellant first argues that the trial court erred in denying his motion for a mistrial where Commonwealth's counsel made a hearsay statement during his opening statement, which prejudiced him. (*See* Appellant's Brief, at 55–56). We disagree.

It has long been the law of this Commonwealth that:

> Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. [*See*] Pa.R.E. 801(c). Thus, any out of court statement offered not for its truth but to explain the witness's course of conduct is not hearsay.

*Commonwealth v. Johnson*, 615 Pa. 354, 42 A.3d 1017, 1035 (2012), cert. denied, —— U.S. ——, 133 S. Ct. 1795, 185 L.Ed.2d 818 (2013) (case citation and internal quotation marks omitted).

In this case, during the Commonwealth's opening statement, the prosecutor explained the process by which the fingerprints on the jar were identified. Specifically, after stating that investigators had been unable to identify the fingerprints for approximately six months, the prosecutor stated:

> Now it's time for me to talk about that second lucky break that happened in January of 2013 when Detective Harold Dutter received an anonymous tip from someone who identified Dominque Lee, this [co-]defendant, as one of the men who [was] involved in the home invasion robbery.

(N.T. Trial, 11/17/14, at 18). Immediately thereafter, Appellant's counsel objected and moved for a mistrial, which the trial court denied. (*See id.*). When counsel completed his opening statement, the court instructed the jury:

> Ladies and gentlemen, before we get to the defense opening, I need to give you an instruction. You will recall that during the course of [the prosecutor's] opening[,] he made mention of what a tipster said and certain tipster information was provided to the police and there was an objection by defense. I need to give you an instruction with respect to that.
>
> When an anonymous tip comes to the police[,] the police are allowed to act on an anonymous tip. In other words, they are allowed to check fingerprints and identities and

these types of things. But what the tipster said, his actual words, is not evidence of [Appellant's] guilt and you may not consider what the tipster said as being evidence of any defendant's guilt.

> However, the prints that were checked as a result of the tip is evidence that you may consider in this particular case. ...

(*Id.* at 30–31).

Here, because the statement about the tipster was made to explain the course of conduct pursued by the police, not for the truth of the matter asserted, it was not hearsay. *See Johnson, supra* at 1035. Moreover, any prejudice allegedly suffered by Appellant was cured by the court's cautionary instruction, which the jury is presumed to have followed. *See Jemison, supra* at 1263; *Chamberlain, supra* at 422, 103 S.Ct. 843. This argument lacks merit. *Rayner*, 153 A.3d at 1057.

With regard to Detective Dutter's statements, the Superior Court stated:

> Appellant also argues that the trial court abused its discretion when it denied counsel's motion for a mistrial on the basis of the prosecutor's questioning of Detective Dutter about the anonymous tip. (*See* Appellant's Brief, at 57–58). Appellant maintains that, because the anonymous tip led to a fingerprint identification that allowed Detective Dutter to determine that he and Dominque Lee were half-brothers, the tip was "very damning evidence" that denied Appellant the right to confrontation. (Appellant's Brief, at 58). However, this argument also fails.

**\*13** A review of the testimony reveals that the Commonwealth's attorney asked Detective Dutter, "[w]hen [ ] Dominique's Lee's name first c[a]me up in the context of this investigation[,]" to which the detective responded, "I received an anonymous tip." (N.T. Trial, 11/18/14, at 183). Appellant's counsel objected and moved for a mistrial, which the trial court denied after cautioning the jury: "[J]ust because somebody's name comes up in an anonymous tip, it is not to be construed in any way by you as evidence against that individual. It[ is] simply being used in this context to show that the police took [a] step and went forward." (*Id.* at 183–84).

Again, we conclude that the cautionary instruction provided by the trial court was sufficient to overcome any potential prejudice. *See Chamberlain, supra* at 422, 103

Case: 21-3230    Document: 18    Page: 112    Date Filed: 06/27/2022

S.Ct. 843; *see also Jemison, supra* at 1263. Moreover, as observed previously, the statement by the anonymous tipster was not hearsay because it was offered to show why the police took the investigation in the direction that they did, not for the truth of the matter asserted. *See Johnson, supra* at 1035.. Therefore, this argument fails and the trial court did not abuse its discretion when it denied Appellant's motions for a mistrial on the basis of the anonymous tip. *See Chamberlain, supra* at 422, 103 S.Ct. 843. Appellant's third issue lacks merit.

Rayner, 153 A.3d at 1057–58.

First, the Superior Court's determination that the statements did not constitute hearsay under state law is binding upon this court on habeas review. *See Bradshaw v. Richey, 546 U.S. 74, 76, 126 S.Ct. 602, 163 L.Ed.2d 407 (2005)* ("We have repeatedly held that a state court's interpretation of state law ... binds a federal court sitting in habeas corpus."); *see also Sistrunk v. Rozum, 674 F.3d 181, 186 (3d Cir. 2012)* (same). "[F]ederal habeas corpus review does not lie for errors of state law." *Estelle v. McGuire, 502 U.S. 62, 68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991).* Because these references to the anonymous tip were not hearsay under Pennsylvania law, as they were not admitted to prove the truth of the matter asserted, the trial court could not have erred in denying a motion for mistrial on that basis.

Upon review of the Superior Court's opinion, it is clear that the court did not analyze or discuss whether these statements violated Petitioner's right to confrontations under the Sixth Amendment. This Court finds, nevertheless, that the issue is meritless as references to the anonymous tip did not violate Petitioner's rights under the Confrontation Clause because they were not admitted to establish the truth of the matter asserted.

### i. *Legal Standard*

The Sixth Amendment guarantees a criminal defendant the right "to be confronted with the witnesses against him." U.S. Const. amend. VI. In *Crawford v. Washington*, the Supreme Court held that the Confrontation Clause bars the admission of testimonial out-of-court statements unless the declarant is unavailable to testify at trial and the defendant had the prior opportunity to cross-examine the declarant. 541 U.S. 36, 59, 68, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). The Confrontation Clause, however, "does not bar the use of

testimonial statements for purposes other than establishing the truth of the matter asserted." *Id.* at 59, 124 S.Ct. 1354 n. 9.

A statement qualifies as testimonial if the "primary purpose" of the conversation was to "creat[e] an out-of-court substitute for trial testimony." *Ohio v. Clark, 576 U.S. 237, 237, 135 S.Ct. 2173, 192 L.Ed.2d 306 (2015)*(quoting *Michigan v. Bryant, 562 U.S. 344, 369, 131 S.Ct. 1143, 179 L.Ed.2d 93 (2011)*). In other words, a statement is testimonial if it was "made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." *Crawford, 541 U.S. at 52, 124 S.Ct. 1354.*

### ii. *Analysis*[6]

[6]    Petitioner argues that his right to confrontation was violated because his co-defendant, Dominique Lee's, right was violated, and they were both charged with criminal conspiracy. This Court has not found a case addressing this specific issue: whether violation of a co-conspirator's right to confront a witness simultaneously violates an individual's right to confront that witness when they are charged with conspiracy. However, as discussed above, the issue is irrelevant as we find that reference to the anonymous tip did not violate the Confrontation Clause.

**\*14** As discussed by the Superior Court on direct appeal, references to the anonymous tip were admissible as non-hearsay in order to explain why Detective Dutter pursued a certain course of action, that is, comparing the fingerprint on the jar against co-defendant Dominique Lee. When questioned on direct as to when Dominique Lee's name first "c[a]me up in the context of the investigation," Detective Dutter responded only that he "received an anonymous tip. (N.T. 11/18/14, 183:14-19). Detective Dutter did not reveal the contents of the tip or specific information conveyed to him. Rather, Detective Dutter only testified that he received a tip, which included Dominique Lee's name. Thus, the statement elicited on direct was not offered to establish the fact that Dominique Lee participated in the crime, but merely to provide background information as to why the police took the action they did.

The Commonwealth's reference to the anonymous tip in its opening statement did disclose additional details concerning its substance. As noted, the Commonwealth stated "Detective Harold Dutter received an anonymous tip from someone who

identified Dominique Lee, this [co-]defendant, as one of the men who [was] involved in the home invasion robbery." (N.T. 11/17/14, 18:1-7). Nonetheless, we agree with the Superior Court's finding that the statement about the tipster was made to explain process by which the fingerprints on the jar were identified, rather than as an offer of proof that Dominique Lee did, in fact, participate in the crimes.

Even if this Court did find that Petitioner's rights under the Confrontation Clause were violated, we would have to determine if this violation constituted harmless error. Violations of the Confrontation Clause are subject to harmless-error analysis. _Delaware v. Van Arsdall_, 475 U.S. 673, 684, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986); _United States v. Hardwick_, 544 F.3d 565, 574 (3d Cir. 2008) (recognizing that the harmless error test applies to violations of the Confrontation Clause). A constitutional error is harmless unless it had a " 'substantial and injurious effect or influence in determining the jury's verdict.' " _Brecht v. Abrahamson_, 507 U.S. 619, 623, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993) (quoting _Kotteakos v. United States_, 328 U.S. 750, 776, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946)).

Here, the anonymous tip, indicating that co-defendant Dominique Lee was involved in the crime, was not essential to the Commonwealth's case of conspiracy against either Petitioner or his co-defendant. Expert witness testimony established the presence of Dominique Lee's fingerprint on the jar taken from Dominick Williams' apartment, found shortly after the crime only one and one-half blocks away. Further, witness Aaron Crawford, who also lived in the apartment for a year prior to the shooting, testified that he did not know Dominique Lee and had never seen Dominique Lee inside the residence. (N.T. 11/17/14, 165:13-166:13) Consequently, there was no reason to infer that the fingerprint would have been left prior to the robbery. As discussed, a black t-shirt, matching the description of one used by a robber to disguise his face, contained the DNA of Petitioner in an area that also tested positive for saliva.

Furthermore, the trial court specifically instructed the jurors, after each reference to the tip, that testimony regarding the tip given to law enforcement officials was not evidence of Petitioner's guilt, but to demonstrate why the police compared Dominique Lee's fingerprints. In light of the trial court's jury instruction, and the presentation of expert evidence establishing the guilt of Petitioner and his co-defendant, the alleged error could not have had a substantial and injurious effect or influence on the jury's verdict and was harmless.

Therefore, I respectfully recommend that Petitioner's third claim be denied.

### d. Claim 4: Prosecutor's Closing Arguments

Next, Petitioner claims that the Assistant District Attorney for the Commonwealth committed prosecutorial misconduct during closing arguments "by giving his personal opinion as to [Petitioner's] guilt during trial and incorrectly and untruthfully suggesting that [Petitioner] kept the alibi defense a secret until the last day of trial when the District Attorney knew the Alibi Notice had been file long before trial." (ECF No. 1 at 62-63.) In his supplemental brief, Petitioner contends that this alleged misconduct violated the Fourteenth Amendment as it rendered the trial fundamentally unfair and violated due process. (ECF No. 13 at 59-67.)

**\*15** Again, Petitioner raised this claim before the Superior Court on direct appeal. The Superior Court found this issue meritless explaining:

> In his fourth issue, Appellant argues that the trial court erred in denying his motion for a mistrial where the prosecutor committed prosecutorial misconduct during his closing argument. (_See_ Appellant's Brief, at 61–68). Specifically he maintains that the Commonwealth's counsel incorrectly suggested that Appellant kept the alibi defense a secret until the last day of trial and gave his opinion that Appellant was guilty. (_See id._). Appellant's issue does not merit relief.

> With specific reference to a claim of prosecutorial misconduct in a closing statement, it is well settled that [i]n reviewing prosecutorial remarks to determine their prejudicial quality, comments cannot be viewed in isolation but, rather, must be considered in the context in which they were made. Our review of prosecutorial remarks and an allegation of prosecutorial misconduct requires us to evaluate whether a defendant received a fair trial, not a perfect trial.

> _Commonwealth v. Judy_, 978 A.2d 1015, 1019 (Pa. Super. 2009) (citations and quotation marks omitted). Here, when viewing the prosecutor's comments about the alibi witnesses in context, it is clear that Appellant's argument in this regard lacks merit.

> During the prosecutor's closing argument, the following exchange occurred:

[Commonwealth:] Let's talk about some other obvious issues with the alibi witnesses. None of these people who had this valuable information ever brought it to the attention of anyone except the defense lawyers. Think about this. Your loved one gets arrested on a crime such as this. And you know unequivocally, without a doubt this person could not have committed the crime. Why? Because they were with [you] at that precise moment in time.

Are you going to just sit on that information for two years, not pick up the phone, call the police [and] the County Detectives and just sit on it and let it sit there and sit there until when? The last day of trial it comes out. Does that make any sense at all?

[Additionally,] [t]wo of the four witnesses, when the police did find out they that they were alleged alibi witnesses couldn't, wouldn't talk to police. Who does that? ...

They refused to talk to the police. Why do you think that is? Why do you think they didn't want to talk to them? You know. Because if they told the detectives what their account was and the detectives could follow-up on it, see if it holds water, attempt to corroborate. But if they don't talk to the detective and the detectives [don't] have a chance to do any of that. That is why they kept it a secret until the last day of the trial.

[Appellant's Counsel]: Objection, move for mistrial. Alibi notices were filed.

THE COURT: Objection overruled. Motion denied.

(N.T. Trial, 11/19/14, at 219–20).

Reading the prosecutor's comments in context, we conclude that he did not commit prosecutorial misconduct. See *Judy, supra* at 1019,. He properly questioned the reliability of alibi witnesses who chose not speak to police on behalf of their loved one prior to trial, when they allegedly could have given him an alibi. (*See* N.T. Trial, 11/19/14, at 219–20). Therefore, the trial court did not abuse its discretion when it denied Appellant's motion for a mistrial on this basis. *See Chamberlain, supra* at 422, 103 S.Ct. 843.

**\*16** Additionally, Appellant's argument that the Assistant District Attorney committed prosecutorial misconduct

because he gave his personal opinion about Appellant's guilt also lacks merit. (*See* Appellant's Brief, at 64–66).

It is well established that a prosecutor must have reasonable latitude in presenting a case to the jury, and must be free to present arguments with logical force and vigor. Counsel may comment upon fair deductions and legitimate inferences from the evidence presented during the testimony. Although a prosecutor may argue to the jury that the evidence establishes the defendant's guilt, arguments from personal opinion as to the guilt of the accused are not proper.

*Chamberlain, supra* at 407–08, 120 S.Ct. 1495 (citations and quotation marks omitted).

Here, Appellant's counsel objected to the following language by the prosecutor:

The word verdict is from the Latin word verdictum. It means to speak the truth. That is what I am asking you to do. I'm asking you to go back to the jury room, deliberate and speak the truth.

And there is only one truth in this case and it is a very simple truth. And that is that these two men, these half-brothers, these two co-conspirators, went into the house at 744 Merchant Street and committed a home invasion robbery. In the course of committing that, Dominick Williams was shot and killed.

(N.T. Trial, 11/19/14, at 212).

Reading the prosecutor's statement in light of his closing argument as a whole, it appears that he merely was commenting on "fair deductions and legitimate inferences from the evidence[.]" *Chamberlain, supra* at 408, 120 S.Ct. 1495 (citation omitted). Moreover, even if the prosecutor's comments were considered prejudicial, we observe that:

[N]ot every remark by the prosecutor, even assuming it is intemperate or uncalled for, requires a new trial. A prosecutor's comments do not amount to reversible error unless the unavoidable effect of such comments would be to prejudice the jury, forming in their minds fixed bias and hostility toward the defendant so that they could not weigh the evidence objectively and render a true verdict. Moreover, the prejudicial effect of the prosecutor's remarks must be evaluated in the context in which they occurred. In applying these standards on appellate review, we have explained that whether

this standard has been violated by the language of the prosecutor is not in the first instance an appellate court's decision to make; rather, it is the duty of the trial judge to rule upon the comments and we are limited to reviewing whether the trial court abused its discretion.

*Chamberlain, supra* at 408, 120 S.Ct. 1495 (citations and quotation marks omitted).

In this case, it was for the trial court to weigh whether the prosecutor's remarks constituted reversible error. *See id.* The court found that they did not, but that, instead, the "prosecutor was not offering his personal opinion[, but rather] was arguing to the jury that the evidence presented established [A]ppellant's guilt." (Trial Ct. Op., at 12). We discern no abuse of discretion. *See Chamberlain, supra* at 408, 120 S.Ct. 1495.

*Rayner,* 153 A.3d at 1058–60.

#### i. *Legal Standard*

To successfully state a claim for habeas relief based upon a prosecutor's comments at trial, a petitioner must show that the comments "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *See Darden v. Wainwright,* 477 U.S. 168, 181, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986) (quoting *Donnelly v. DeChristoforo,* 416 U.S. 637, 643, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974)); *Fahy v. Horn,* 516 F.3d 169, 199 (3d Cir. 2008). This determination requires the court to distinguish between ordinary trial error and the egregious misconduct, which amounts to a denial of constitutional due process. *Fahy v. Horn,* 516 F.3d 169, 199 (3d Cir. 2008).

**\*17** Even assuming, *arguendo,* that the comments were improper, the inquiry then becomes whether, in light of the record as a whole, the prosecutor's conduct "had substantial and injurious effect or influence in determining the jury's verdict." *Brecht,* 507 U.S. at 638, 113 S.Ct. 1710 (quotations omitted). A "reviewing court must examine the prosecutor's offensive actions in context and in light of the entire trial, assessing the severity of the conduct, the effect of the curative instructions, and the quantum of evidence against the defendant." *Moore v. Morton,* 255 F.3d 95, 107 (3d Cir. 2001). Improper conduct only becomes constitutional error when the impact of the misconduct is to distract the trier of fact and thus raise doubts as to the fairness of the trial. *Marshall v. Hendricks,* 307 F.3d 36, 67 (3d Cir. 2002)

#### ii. *Comments Regarding Alibi Witnesses*

First, we note that the Superior Court focuses its analysis on whether the statements made in question deprived Petitioner of a fair trial, which is consistent with the federal standard articulated above. Thus, the state court's adjudication of the claim did not result in a decision that was contrary clearly established federal law. This Court also concludes that the Superior Court's decision did not involve an unreasonable application of clearly established Federal law because (1) the prosecutor's statements regarding the alibi witnesses did not constitute prosecutorial misconduct and (2) even if the comments were improper, they did not "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden,* 477 U.S. at 181, 106 S.Ct. 2464.

This Court agrees with the decision of the Superior Court that, reading the prosecutor's comments in context, the statements do not constitute prosecutorial misconduct. During trial, none of the alibi witnesses independently contacted the police to give their statements, and two of the four witnesses testified that they refused to speak with police after having been contacted. (N.T. 11/19/14, 54:19-58:7, 74:9-76:12, 90:10-97:4, 206:18-112:20.) The Commonwealth does conclude with a statement that the witnesses "kept [the alibis] a secret until the last day of the trial." (N.T.,11/19/14, 219:16–220:21). However, when read in conjunction with the preceding statements, it is clear that the Commonwealth is properly questioning the reliability of these witnesses because of their decision not to contact or communicate with police prior to trial regarding Petitioner's alibi.

Assuming, *arguendo,* that this singular statement was improper, this Court cannot conclude that it "had substantial and injurious effect or influence in determining the jury's verdict." *Brecht,* 507 U.S. at 638, 113 S.Ct. 1710. During trial, on cross and direct examination, these witnesses testified extensively as to when they first disclosed their alibi statements to Petitioner's counsel and the manner in which they disclosed the details. (N.T. 11/19/14, 44:7-112:20.) In light of this testimony, one comment by the Commonwealth suggesting that these witnesses kept the alibi statements secret until the last day of trial does not establish severe enough conduct to raise doubts as to the fairness of the trial.

### iii. *Comments Regarding Petitioner's Guilt*

Again, we observe that, though the Superior Court relies on Pennsylvania precedent, its analysis concentrates on whether the prosecutor's statements prejudiced the jury in a way to deprive Petitioner of a fair trial. Accordingly, the state court's adjudication of the claim did not result in a decision that was contrary clearly established federal law. Further, because the prosecutor's statements were not improper, the Superior Court's decision did not involve an unreasonable application of clearly established Federal law in concluding that these remarks did not deny Petitioner a fair trial.

**\*18** A prosecutor's expression of personal opinion about the credibility of witnesses or the guilt of a defendant creates a risk that the jury will "trust the Government's judgment rather than its own view of the evidence." *Buehl v. Vaughn,* 166 F.3d 163, 176 (3d Cir. 1999)(quoting *United States v. Young,* 470 U.S. 1, 18–19, 105 S.Ct. 1038, 84 L.Ed.2d 1 (1985)). Nevertheless, the fact that a prosecutor made improper statements is insufficient, by itself, to require a new trial. While it is improper for prosecutor to express personal opinion as to the truth or falsity of any testimony or as to the guilt of defendant, such comments, if based on evidence, are not reversible errors per se. *United States v. LeFevre,* 483 F.2d 477, 479 (3d Cir. 1973.) The Court must examine whether the prosecutor's comments prejudiced Petitioner's defense, which includes consideration of whether the comments suggested that the prosecutor had knowledge of evidence other than that which was presented to the jury. *See United States v. Gross,* 961 F.2d 1097, 1108 (3d Cir. 1992.)

We agree with the Superior Court that, reading the prosecutor's statements in light of his closing argument as a whole, it appears that he was commenting on "fair deductions and legitimate inferences from the evidence." While, the statements appeared in the beginning of the prosecutor's closing, he then went on to summarize each piece of evidence presented at trial that supported the conclusion that Petitioner was guilty of guilty of second-degree murder, robbery, burglary, and criminal conspiracy. Together with the remainder of the closing arguments, the prosecutor's suggestion – that there "is only one truth in this case ... that these two men ... committed a home invasion robbery" – was not based on his own personal knowledge, but deduced from the entirety of evidence presented at trial. Accordingly, there is no prosecutorial misconduct in these statements made by the prosecutor, much less enough misconduct that would

"so infect the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly,* 416 U.S. at 643, 94 S.Ct. 1868.

For these reasons, I respectfully recommend that this claim be denied.

### a. Claim 5: Closing Arguments

In Petitioner's final claim, he argues that the trial court violated his right to due process and to effective counsel under the Sixth Amendment when he "improperly interfered" during cross-examination of a witness and during Petitioner's closing arguments. (ECF No. 1 at 67-68.) This Court finds that the trial court's interruptions were appropriate in each instance, and thus, did not violate Petitioner's constitutional rights.

### i. *Legal Standard*

"The federal court's power to review the conduct of a state trial court is limited to whether a defendant's right to due process of law has been violated." *See Johnston v. Love,* 940 F. Supp. 738, 774 (E.D. Pa. 1996), aff'd, 118 F.3d 1576 (3d Cir.), *cert. denied,* 522 U.S. 972, 118 S.Ct. 425, 139 L.Ed.2d 326 (1997)(citing *Perry,* 584 F.2d at 645 (citing *United States ex rel. Perry v. Cuyler,* 584 F.2d 644, 645 (3d Cir. 1978)). To obtain habeas corpus relief on a challenge based on judicial misconduct, a petitioner must show actual bias, that the judge treated him unfairly. *Id.* A mere allegation or the mere appearance of bias does not establish bias. *Id.; see Withrow v. Larkin,* 421 U.S. 35, 47, 95 S.Ct. 1456, 43 L.Ed.2d 712 (1975). Furthermore, an adverse ruling to the defense on various motions or objections is not sufficient for petitioner to make out a claim of judicial bias. *United States v. Gallagher,* 576 F.2d 1028, 1039 (3d Cir. 1978).

The standard applied by the Superior Court in analyzing Petitioner's claim based on judicial bias was consistent with established federal law. Quoting Pennsylvania law, the Superior Court began its discussion of Petitioners' final claim as follows:

[O]pinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible. Thus, judicial remarks during

A-76

the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge. They may do so if they reveal an opinion that derives from an extrajudicial source; and they will do so if they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible Not establishing bias or partiality, however, are expressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women, even after having been confirmed as [ ] judges, sometimes display. A judge's ordinary efforts at courtroom administration— even a stern and short-tempered judge's ordinary efforts at courtroom administration—remain immune. However, [a] judge's remarks to counsel during trial do not warrant reversal unless the remarks so prejudice the jurors against the defendant that it may reasonably be said [that the remarks] deprived the defendant of a fair and impartial trial. *Commonwealth v. Kearney*, 92 A.3d 51, 61 (Pa. Super. 2014), *appeal denied*, 627 Pa. 763, 101 A.3d 102 (2014) (citation and emphases omitted).

*19 Thus, this Court concludes that the Superior Court's adjudication did not result in a decision that was contrary to clearly established federal law.

ii. *Cross-Examination of Aaron Crawford*

Petitioner first argues that the trial judge improperly interrupted his cross-examination of Aaron Crawford on two occasions. Beginning with the first alleged instance of judicial misconduct, the Superior Court rejected Petitioner's, explaining:

In this case, Appellant first maintains that the trial court improperly interrupted his cross-examination of Aaron Crawford, who was in the subject house during the robbery. (*See* Appellant's Brief, at 72–76). On direct examination, Crawford testified that the intruders who entered the home were African American individuals, and that they wore t-shirts on their heads as disguises, with one of the two individuals entering his bedroom wearing a white t-shirt on his head, and the other wearing a black one. A third person, who did not enter the bedroom wore a white t-shirt on his head. (*See* N.T. Trial, 11/17/14, at 149, 151, 169). In response to the prosecutor's questions about what color shirts the men were wearing on their bodies, Crawford testified that the two men wearing white t-shirts on their heads were also wearing white t-shirts on their torsos, and

the individual wearing a black t-shirt on his head was wearing a black t-shirt on his body. (*See id.* at 169–70). One of the individuals disguised by a white t-shirt struck Crawford in the head and stole a jar from his bedroom that contained marijuana, money, and a pack of Newport cigarettes. (*See id.* at 152, 155). Minutes later, police took Crawford to a location approximately one-and-a-half blocks from his home where he identified a jar containing a pack of Newport cigarettes as the one taken from his home. (*See id.* at 161–63). He also identified a black t-shirt located "a couple feet away" from the jar as being the one worn on the head of one of the intruders. (*Id.* at 164).

On cross-examination, the following relevant exchange occurred:

[Defense Counsel]: Now two guys come in [the bedroom], you said ... both of them had white t-shirts on. ...

[Crawford]: I don't know.

[Defense Counsel]: White t-shirts on their head[s] today earlier in front of the jury[?]

[Commonwealth]: Objection.

THE COURT: Sustained.

* * *

THE COURT: [Defense counsel], the testimony was that one had a white t-shirt on. He testified that the other had a black t-shirt. There was another man outside that had a white t-shirt.

(Id. at 186).

After our independent review, we conclude that the trial court was responding to an objection raised by the Commonwealth, not condemning defense counsel. The court merely was correcting the mistake in counsel's recitation of Crawford's testimony. This does not evidence any of the partiality or bias necessary to find that the trial court acted improperly. *See Kearney, supra* at 61. *Rayner*, 153 A.3d 1049, 1060–61.

Having reviewed the trial testimony, it is clear that the trial court was simply responding to an objection raised by the prosecution by clarifying the testimony of the witness on direct. On direct, Aaron Crawford testified that there were two individuals who entered his room, one wearing a white shirt



on his body and a white shirt concealing his face, and another wearing a black shirt on his body and a black shirt covering his face. (N.T. 11/17/18, 170:5-21.) Crawford further testified that the third individual, who did not enter his room, wore a white shirt on his body and a white shirt over his face. (*Id.* at 168:18-170:6.)

**\*20** On cross examination, Petitioner's counsel began a question "Now two guys come in [the bedroom] ... both of them had white t-shirts on." (*Id.* at 186:7-14.) After Crawford responded, "I don't know," Petitioner's counsel reiterated "White t-shirts on their head ..." It was at this point that the Commonwealth objected, and the trial court clarified the testimony of Mr. Crawford on direct regarding the clothing the perpetrators wore as Petitioner's counsel had improperly characterized Crawford's prior testimony. Accordingly, the trial court's statements were entirely proper in this first occasion, and did not constitute misconduct or bias toward Petitioner in any way.

Addressing the second alleged instance of judicial misconduct on cross-examination, the Superior Court found Petitioner's claim meritless, stating:

> Appellant additionally maintains that the trial court improperly interfered when defense counsel was impeaching Crawford about an allegedly inconsistent statement about a Polo insignia on the black t-shirt. (*See* Appellant's Brief, at 74–76). Specifically, Appellant attempted to bring in Crawford's grand jury testimony as an inconsistent statement where, in that statement, he had said that one of the assailant's t-shirts was black and, at trial, he testified that the shirt was black with a Polo insignia on it. (*See* N.T. Trial, 11/17/14, at 197–99). The trial court advised defense counsel that this was not a prior inconsistent statement, and suggested that he read the rules about what such a statement is. (*See id.* at 199). We find no error.
>
> A prior inconsistent statement, in relevant part, is "[a] prior statement by a declarant-witness that is inconsistent with the declarant-witness's testimony and ... was given under oath subject to the penalty of perjury[.]" Pa.R.E. 803.1(1) (A). In other words, prior inconsistent statements are those earlier statements, taken under oath, that are incompatible with the witness's trial testimony.
>
> For example, in *Commonwealth v. Buford*, 101 A.3d 1182 (Pa. Super. 2014), *appeal denied*, 631 Pa. 741, 114 A.3d 415 (2015), this Court concluded that a trial court properly

admitted a tape recorded statement in which the witness identified the defendant as the perpetrator of the subject crime as a prior inconsistent statement, where the witness recanted her prior identification, and the defendant's culpability, at trial. *See Buford, supra* at 1200,. Similarly, in *Commonwealth v. Stays*, 70 A.3d 1256 (Pa. Super. 2013), a trial court properly admitted a prior inconsistent statement identifying the defendant and the signed photo array, where witness recanted the identification at trial. *See Stays, supra* at 1262,. Finally, in *Commonwealth v. Pitner*, 928 A.2d 1104 (Pa. Super. 2007), *appeal denied*, 596 Pa. 716, 944 A.2d 757 (2008), this Court affirmed a trial court's admission of the witness's guilty plea colloquy, which identified defendant as participating in the crime with him, as a prior inconsistent statement, where he denied defendant's involvement at trial. *See Pitner,* supra at 1108–09,.

> However, here, the prior statement merely lacked a detail that was included in Crawford's trial testimony. Therefore, the trial court properly advised Appellant that these statements were not incompatible and inconsistent in the sense required for admission as a prior inconsistent statement. *See* Pa.R.E. 803.1(1)(A); *Buford, supra* at 1200,; *Stays, supra* at 1262,; *Pitner, supra* at 1108–09,. Hence, for all of these reasons, Appellant's claim that the trial court improperly interfered with his cross-examination of Crawford, lacks merit. *See Kearney, supra* at 61,.

Rayner, 153 A.3d 1049, 1061–62.

Again, we conclude the trial court's statements were entirely proper in in this instance and did not constitute misconduct or bias toward Petitioner. Before the grand jury, the Commonwealth showed Mr. Crawford a photograph, asking whether he recognized it. (N.T. 11/17/14, 197:12-21.) Mr. Crawford responded affirmatively, stating "it looks like one of the shirts [the intruders] had on their head." *Id.* Petitioner's counsel attempted to use this statement to impeach Mr. Crawford after he testified on cross that the black shirt found several blocks from the scene of the crime – which Mr. Crawford was shown by officers later that night – "had a Polo sign on it." (*Id.* at 196:3-21.) The trial court asked Petitioner's counsel if he intended to offer the grand jury testimony as an inconsistent statement, to which counsel responded affirmatively. (*Id.* at 198:4-20.) The trial court then appropriately instructed Petitioner's counsel that Mr. Crawford's testimony before the grand jury was not inconsistent with his statement on direct. *Id.*

WESTLAW © 2022 Thomson Reuters. No claim to original U.S. Government Works.

**\*21** As Respondents explain, the two statements – "[i]t looks like one of the shirts [the intruders] had on their head" and "[i]t had a Polo sign on it" do not conflict as they can both be logically true without invalidating the other statement. (ECF No 14 at 64.) The first statement came about in response to a picture of the black t-shirt found nearby the jar. The Commonwealth did not ask Mr. Crawford to describe the shirt from his recollection, only whether he recognized the picture. The second statement "[i]t had a Polo sign on it" was elicited on cross when Petitioner's counsel asked Mr. Crawford whether there "was [anything] that stuck out about the [black t-shirt found near the jar]." (N.T. 11/17/14, 196:9-11.) Thus, the trial court properly interjected during cross examination because Mr. Crawford's testimony before the grand jury did not contradict testimony given regarding the Polo insignia on the black t-shirt.

Petitioner also argues, in one line, that the "trial judge also then erred by giving jury instructions of what an inconsistent statement was." (EF No. 13 at 77.) Petitioner does not explain why the jury instructions were improper, or how they violated federal or constitutional law. Petitioner does not elaborate further on this claim, which is devoid of factual support. "A federal district court should dismiss habeas corpus claims that are based on vague and conclusory allegations." *Keeling v. Shannon*, 2003 WL 22158814, at \*10 (E.D. Pa. Aug. 20, 2003). *See also Mayberry v. Petsock*, 821 F.2d 179, 187 (3d Cir.) (petitioner's vague and general allegations fail to make sufficient showing to justify habeas corpus relief), *cert. denied*, 484 U.S. 946, 108 S.Ct. 336, 98 L.Ed.2d 362 (1987). Thus, this claim should be dismissed as vague and conclusory.

### iii. *Closing Arguments*

Lastly, Petitioner contends that the trial court improperly interfered during Petitioner's closing arguments, specifically in his discussion of reasonable doubt. The exchange between Petitioner's counsel and the trial court is as follows:

[COUNSEL]: Legal commentators have called reasonable doubt as the kind of doubt that makes a reasonable person. Hopefully, you guys are all reasonable. People hesitate or refrain in a matter of importance.

THE COURT: I'm going to interrupt you for a moment. Ladies and gentlemen, that is not the exact definition I would give you. That is not the exact legal definition of reasonable doubt for the Commonwealth of Pennsylvania. Go ahead, [Counsel].

[COUNSEL]: When you listen to the Judge he'll say essentially a few more words. The kind of doubt that makes a reasonable person hesitate or refrain in the matter of importance And what the Commonwealth has to do is overcome that doubt, your reasonable doubt, overcome it to your satisfaction. If you visualize lady justice blindfolded and if you can imagine a scale as evidence, weigh[ ] one way or the other. For if it was a civil case and we were fighting over damages, a car accident, breach of contract, the burden is preponderance of the evidence, fifty-one percent. Some civil cases it's higher.

THE COURT: [Counsel] it's not fifty-one percent either. I'll explain to the jury as well. You may proceed.

[Counsel]: With all due respect.

THE COURT: [Counsel], you're wrong in the law. It's my job to give this jury the law. Proceed. It's not fifty-one percent. It is the scales dip ever so slightly in one direction or the other.

(N.T. 11/19/14, 160:11-6-161:15.)

On direct appeal, the Superior Court rejected Petitioner's argument of judicial misconduct, writing:

Finally, Appellant contends that the trial court "improperly criticized and objected to [defense counsel's] closing and misled the jury concerning [his] discussion of the burden of proof." (Appellant's Brief, at 78). This issue is waived for Appellant's failure to provide any pertinent authority in support of his argument that the trial court's interruption during his closing argument supports a finding that it acted improperly. (*See id.* at 78–81); *see also Kearney, supra* at 66–67, (finding claim waived for failure to cite pertinent authority and discussion thereof). Moreover, it would not merit relief.

**\*22** In *Commonwealth v. Britton*, 334 Pa. Super. 203, 482 A.2d 1294 (1984), *appeal denied*, 509 Pa. 620, 506 A.2d 895 (1986), similar to this case, the appellant argued that the trial court acted improperly when it interrupted him during closing argument as defense counsel was explaining the meaning of reasonable doubt. *See Britton, supra* at 1301,. In concluding the issue had no merit, this Court observed:

The court correctly curtailed the attorney's remarks explaining to the jury that it was his role to instruct as to the law. It is the duty of the trial judge to instruct the jury

Case: 21-3230    Document: 18    Page: 119    Date Filed: 06/27/2022

Case: 21-3230    Document: 18    Page: 120    Date Filed: 06/27/2022

as to the applicable law, and it is not error for the judge to interrupt counsel and correct a possibly misleading statement of the law.

*Id.* (citations omitted)

Likewise, here, we conclude that the trial court was acting within its purview when it interrupted defense counsel to correct what it perceived as a misstatement of the law. *See id.* Further, the complained-of exchange, (*see* N.T. Trial, 11/19/14, at 159–61), even were we to view it as "critical or disapproving of, or even hostile to, counsel[,]" does not "reveal such a high degree of favoritism or antagonism as to make fair judgment impossible." *Kearney, supra* at 61, (citations omitted). Hence, Appellant's argument in this regard lacks merit. Therefore, after our review of the entire record, we conclude that there is nothing in any of the trial court's remarks to Appellant's counsel that rises to the level of requiring a new trial. *See id.* Appellant's fifth issue lacks merit.

*Rayner,* 153 A.3d 1049, 1062–63.

This Court finds that the Superior Court's analysis was not an unreasonable application of federal law on judicial misconduct because the judge's comments were entirely proper and did not bias Petitioner. In Pennsylvania, "it is the duty of the trial judge to instruct the jury as to the applicable law, and it is not error for the judge to interrupt counsel and correct a possibly misleading statement of the law." *Commonwealth v. Britton,* 334 Pa.Super. 203, 482 A.2d 1294, 1301 (1984)(citing *Commonwealth v. Coleman,* 235 Pa.Super. 379, 341 A.2d 528 (1975)). Thus, when the trial court determined that counsel's description of reasonable doubt did not comport with the definition that he ultimately provided to the jury[7], he was well within his role to interject.

[7]    During jury instructions, the trial court provide standard jury instruction on reasonable doubt: "A reasonable doubt is a doubt that would cause a reasonably careful and sensible person to hesitate before acting upon a matter of importance in his or her own affairs. (N.T. 11/19/14, 247:13-16).

Petitioner contends that it was "absolutely baffling why [the trial court] decided to interject." (ECF No. 13 at 81.) However, it is apparent from the exchange that the trial court interrupted because Petitioner's counsel provided misleading statements on the burden of proof. Counsel stated that reasonable doubt "makes a reasonable person ... hesitate or refrain in a matter of importance." (N.T. 11/19/14,

160:11-6-161:15.) However, as described in footnote 7, it is a doubt that would cause a "*reasonably careful and sensible person* to hesitate *before acting upon a matter of importance in his or her own affairs.*" (N.T. 11/19/14, 247:13-16). As respondents highlight, Petitioner's counsel also erroneously described the standard of preponderance of the evidence in a civil case. It is not "fifty-one percent." Rather, the Supreme Court of Pennsylvania has approved a definition of preponderance of the evidence as the "greater weight of the evidence." *See Commonwealth v. Brown,* 567 Pa. 272, 284, 786 A.2d 961, 968 (2001).

**\*23** Because Petitioner has not shown any actual bias against him on the part of the trial court, he cannot obtain habeas corpus relief on his final judicial misconduct claim. Therefore, I respectfully recommend that Petitioner's fifth claim be denied.

## IV. CERTIFICATE OF APPEALABILITY
Pursuant to Local Appellate Rule 22.2 of the Rules of the United States Court of Appeals for the Third Circuit, at the time a final order denying a habeas petition is issued, the district court judge is required to make a determination as to whether a certificate of appealability ("COA") should issue. A certificate of appealability is appropriate only if the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The petitioner must "demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel,* 529 U.S. 473, 484, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000).

This Court respectfully recommends that a certificate of appealability issue with respect to Petitioner's second claim, challenging the sufficiency of the evidence. As discussed above, this case presents a close issue on the question of sufficiency, as the only evidence connecting Petitioner to the crimes is the presence of his DNA on the black t-shirt, found next to the stolen jar. The expert witness, Mr. Gavel, also testified that there were at least two other DNA profiles present on the t-shirt that he could not identify. (N.T. 11/18/14, 150:4-15.) Similar to the Manila envelope discussed by the Third Circuit in *Travillion,* the black t-shirt found near the crime scene is an easily movable object, and there is no evidence that it was unavailable to Petitioner prior to the robbery. As Petitioner discussed, it is possible that his co-defendant, and half-brother, could have taken the black t-shirt with Petitioner's DNA and used it during the robbery and shooting.



The test for sufficiency under *Jackson* states that evidence is sufficient to support a conviction if, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *See Jackson*, 443 U.S. at 319, 99 S.Ct. 2781. Ultimately, this Court does find that the Superior Court's decision was not an objectively unreasonable application the test for sufficiency under *Jackson.* However, we believe that reasonable jurists could find our assessment debatable. Accordingly, because Petitioner has made a substantial showing of the denial of a constitutional right, in particular, his rights under the Due Process Clause, I respectfully recommend that a certificate of appealability issue on Petitioner's second claim.

Therefore, I make the following:

## RECOMMENDATION

**AND NOW**, this 1st day of September, 2021, it is respectfully **RECOMMENDED** that the petition for a writ of habeas corpus be **DENIED** with prejudice. It is **FURTHER RECOMMENDED** that a certificate of appealability **SHOULD ISSUE**, limited to Petitioner's claim challenging the sufficiency of the evidence.

Petitioner may file objections to this Report and Recommendation. *See* Local Civ. Rule 72.1. Failure to file timely objections may constitute a waiver of any appellate rights.

**All Citations**

Slip Copy, 2021 WL 5496867

---

End of Document

© 2022 Thomson Reuters. No claim to original U.S. Government Works.



DLD-104
## UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

C.A. No. **21-3230**

MAQUIS LEE RAYNER, Appellant

VS.

SUPERINTENDENT FOREST SCI, ET AL.

(E.D. Pa. Civ. No. 2-18-cv-04909)

Present: KRAUSE, MATEY and PHIPPS, Circuit Judges

> Submitted is Appellant's request for a certificate of appealability under 28 U.S.C. § 2253(c)(1), which seeks certification of additional issues under 3d Cir. L.A.R. 22.1(b) in the above-captioned case.

Respectfully,

Clerk

_____ORDER_____

Appellant's request for a certificate of appealability as to additional claims not certified by the District Court, namely, Appellant's claims of prosecutorial misconduct and trial court error, is denied. For substantially the same reasons given by the Magistrate Judge and adopted by the District Court, jurists of reason would not debate the District Court's decision to deny Appellant's claims. See Miller-El v. Cockrell, 537 U.S. 322, 336 (2003). Specifically, jurists of reason would agree that neither the prosecutor's nor the trial judge's remarks deprived Appellant of a fair trial. See Chambers v. Mississippi, 410 U.S. 284, 298, 290 n.3 (1973); Donnelly v. DeChristoforo, 416 U.S. 637, 642 (1974); United States v.

A-31 (a)

<u>Reilly</u>, 33 F.3d 1396, 1421 (3d Cir. 1994). A briefing schedule for the briefing of the issue already certified by the District Court shall issue in due course.  <u>See</u> 3d Cir. L.A.R. 22.1(b).

By the Court,

s/Paul B. Matey _____
Circuit Judge

Dated: April 21, 2022

kr/cc:  Gerald P. Morano, Esq.
        Samuel C. Stretton, Esq.
        Erik T. Walschburger, Esq.
        Ronald Eisenberg, Esq.

A-31(B)

**IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT**

MARQUIS LEE RAYNER,           :   CASE NO. 21-3230
           **APPELLANT**      :
                                :
           **V.**              :
                                :
**SUPERINTENDENT FOREST SCI,**   :
**ET AL.,**                    :
     **RESPONDENTS/APPELLEES**   :

## CERTIFICATE OF SERVICE

I hereby certify I am this date serving a copy of
the Brief and Appendixes in the captioned matter upon
the following persons in the manner indicated below,
which service satisfies the requirements of Pa. R.A.P.
121.

Service by Electronic Mail addressed as follows:

     1.    Honorable John M. Gallagher
          United States District Judge
          United States District Court
          Eastern District of Pennsylvania
          504 West Hamilton Street
          Suite 4701
          Allentown, PA 18101
          Email:
          Chambers of Judge John Gallagher@paed.usco
          urts.gov

2.   Gerald P. Morano, Esquire
     Chief Deputy District Attorney of Appeals
     Chester County District Attorney's Office
     201 West Market Street
     Suite 4450
     West Chester, PA 19380
     Email: Gmorano@chesco.org

Service by First-Class Mail addressed as follows:

3.   Josh Shapiro, Esquire
      Attorney General of Pennsylvania
     Pennsylvania Office of Attorney General
     Strawberry Square
     Harrisburg, PA 17120
     Phone No. 717-787-3391

4.   Marquis Rayner, ID No. MA-3096
     SCI-Forest
     P.O. Box 307
     286 Woodland Drive
     Marienville, PA  16239


                    Respectfully submitted,


June 27, 2022          s/Samuel C. Stretton
      Date             Samuel C. Stretton, Esquire
                       Attorney for Appellant,
                        Marquis Lee Rayner
                       103 South High Street
                       P.O. Box 3231
                       West Chester, PA  19381-3231
                       (610) 696-4243
                       Attorney I.D. No. 18491