# IN THE UNITED STATES COURT OF APPEALS
# FOR THE THIRD CIRCUIT

---

NO. 21-3230

---

## MARQUIS LEE RAYNER,
Appellant

**vs.**

## SUPERINTENDENT FOREST SCI, et al.,
Appellees

---

## BRIEF FOR APPELLEES

---

Appeal from the November 21, 202, Order, denying Appellant's habeas corpus
petition, of the Honorable John M. Gallagher, of the United States District Court
for the Eastern District of Pennsylvania at C.A. No. 18-cv-4904.

---

Gerald P. Morano, Esquire
Attorney I.D. No.  82269
Chief Deputy District Attorney

Deborah S. Ryan, Esquire
Attorney I.D. No. 82302
District Attorney

District Attorney's Office
Chester County Justice Center
201 West Market Street, P.O. Box 2746
West Chester, PA  19380-0989
(610) 344-6801

Attorneys for Appellees

# **TABLE OF CONTENTS**

**PAGE**

TABLE OF CITATIONS                                                                          ii

COUNTER-STATEMENT OF THE QUESTIONS INVOLVED                    1

COUNTER-STATEMENT OF THE CASE                                            2

STATEMENT OF THE SCOPE AND STANDARD OF REVIEW             10

SUMMARY OF ARGUMENT                                                        12

ARGUMENT

I. THE EVIDENCE WAS SUFFICIENT TO SUPPORT THE JURY'S GUILTY VERDICT FOR PETITIONER'S CONVICTION AND THE SUPERIOR COURT'S DECISION WAS NOT AN OBJECTIVELY UNREASONABLE APPLICATION UNDER JACKSON.

                                                                                        14

CONCLUSION                                                                          39

CERTIFICATION OF BAR MEMBERSHIP

CERTIFICATION OF COMPLIANCE WITH F.R.A.P. 32(a)

CERTIFICATION OF COMPLIANCE WITH 3d Cir. L.R.A. 31.1

PROOF OF SERVICE

# **TABLE OF CITATIONS**

**PAGE**

**Federal Cases**

Branch v. Sweeney, 758 F.3d 226 (3d Cir. 2014)                                    10

Brumfield v. Cain, 576 U.S. 305, 135 S.Ct. 2269, 192 L.Ed.2d 356 (2015)      28

Cavazos v. Smith, 132 S.Ct. 2, 181 L.Ed.2d 311 (2011)                      Passim

Coleman v. Johnson, 566 U.S. 650 (2012)                              16, 18, 32

Davis v. Adm'r New Jersey State Prison, 795 Fed. Appx. 100 (3d Cir. 2019)    10

Eley, 712 F.3d                                                              23

Holland v. United States, 348 U.S. 121, 75 S. Ct. 127, 99 L. Ed. 150 (1954)    31

In re Winship, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970)          23

Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)    Passim

Jacobs v. Horn, 395 F.3d 92 (3d Cir. 2005)                                22

Johnson v. Louisiana, 406 U.S. 356, 92 S.Ct. 1620, 32 L.Ed.2d 152 (1972)   23, 24

Lambert v. Blackwell, 387 F.3d 210 (3d Cir. 2004)                          28

Marshall v. Hendricks, 307 F.3d 36 (3d Cir. 2002)                          22

Miller-El v. Cockrell, 537 U.S. 322, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003)  28, 29

Palmer v. Hendricks, 592 F.3d 386 (3d Cir. 2010)                          10

Parker v. Matthews, ⸺ U.S. ⸺, 132 S.Ct. 2148, 183 L.Ed.2d 32 (2012)  10, 24

Rayner v. Overmyer, 2021 WL 5495812                                        9

Rayner v. Overmyer, 2021 WL 5496867 (E.D. Pa. Sept. 1, 2021)                     27

Rayner v. Pennsylvania, ___ U.S. ___, 138 S.Ct. 976, 200 L.Ed.2d 259 (2018)      4

Renico v. Lett, 559 U.S. 766, 130 S.Ct. 1855, 176 L.Ed.2d 678 (2010)     11, 16, 17

Rice v. Collins, 546 U.S. 333, 126 S.Ct. 969, 163 L.Ed.2d 824 (2006)             28

Richter, 562 U.S. 131 S.Ct. 770                                                  27

Rountree v. Balicki, 640 F.3d 530 (3d Cir. 2011)                                 22

Travillion v. Superintendent Rockview SCI, 982 F.3d 896 (3d Cir. 2020)24, 25, 26,
    27

U.S. v. Frazier, 580 F.2d 229 (6th Cir. 1978)                                    14

U.S. v. Young, 470 U.S. 1, 105 S. Ct. 1038, 84 L. Ed. 2d 1 (1985)                14

United States v. Caraballo-Rodriguez, 726 F.3d 418 (3d Cir. 2013)                18

United States v. Cotton, 770 F.2d 940 (11th Cir.1985)                            29

United States v. Dent, 149 F.3d 180 (3d Cir. 1998)                               17

United States v. Depalma, 414 F.2d 394 (9th Cir. 1969)                       29, 30

United States v. McBane, 433 F.3d 344 (3d Cir. 2005)                             17

United States v. Quiles, 618 F.3d 383 (3d Cir. 2010)                             17

United States v. Spoonhunter, 476 F.2d 1050 (10th Cir. 1973)                     29

United States v. Thomas, 114 F.3d 403 (3d Cir. 1997)                             17

United States v. Tyson, 653 F.3d 192 (3d Cir. 2011)                              17

United States v. Voigt, 89 F.3d 1050 (3d Cir. 1996)                              17

Williams, 529 U.S. 120 S.Ct. 1495                                            27, 28

Wood v. Allen, 558 U.S. 290, 130 S.Ct. 841, 175 L.Ed.2d 738 (2010)          28

Wright v. Smith, 569 F.2d 1188 (2d Cir. 1978)          29

**State Cases**

Commonwealth v. Blevins, 453 Pa. 481, 309 A.2d 421 (1973)          19

Commonwealth v. Boettcher, 313 Pa. Super. 194, 459 A.2d 806 (1983)          18

Commonwealth v. Davis, 799 A.2d 860 (Pa. Super. 2002)          19

Commonwealth v. Griscavage, 512 Pa. 540, 517 A.2d 1256 (1986)          19, 20

Commonwealth v. Harper, 485 Pa. 572, 403 A.2d 536 (1979)          19

Commonwealth v. Lanager, 360 Pa. Super. 578, 521 A.2d 53 (1987)          19

Commonwealth v. Libonati, 346 Pa. 504, 31 A.2d 95 (1943)          19

Commonwealth v. Rayner, 24 MAL 2017, ___ Pa. ___, 169 A.3d 1046 (2017)          4

Commonwealth v. Rayner, 153 A.3d 1049 (Pa. Super. 2016)          2, 3, 37

Commonwealth v. Seibert, 424 Pa. Super. 242, 622 A.2d 361 (1993)          19

Commonwealth v. Sullivan, 472 Pa. 129, 371 A.2d 468 (1977)          19

Commonwealth v. Taylor, 137 A.3d 611 (Pa. Super. 2016)          35, 37

Commonwealth v. Weston, 561 Pa. 199, 749 A.2d 458 (2000)          18

Commonwealth v. Young, 494 Pa. 224, 431 A.2d 230 (1981)          18

Gray, 867 A.2d          38

People v. Bell, 49 Cal. 3d 502, 262 Cal. Rptr. 1, 778 P.2d 129 (1989)          14

**Federal Statutes**

United States Constitution and Article I          3, 5

**State Statutes**

18 Pa. C.S.A. §903(a)(1)                                         21

18 Pa. C.S.A. §2502(b)                                       20, 35

18 Pa. C.S.A. §3502(a)                                          21

18 Pa. C.S.A. §3701(a)(1)(i)(ii)                               21

18 Pa.C.S.A. § 903(a)                                           36

18 Pa.C.S.A. § 3502(a)(1)                                       35

18 Pa.C.S.A. §§ 3701(a)(1)(i), (ii)                             35

Federal Rules

F.R.A.P. 25                                                     41

F.R.A.P. 32(a)                                                1, 40

F.R.A.P. 32(a)(5)                                              40

F.R.A.P. 32(a)(6)                                              40

F.R.A.P. 32(a)(7)(B)                                           40

Fed. R. App. P. 32(f)                                          40

State Rules

Pa.R.A.P. 1925(a)                                              34

Rules of Professional Conduct, Rule 3.4(e)                    14

Other Authorities

id. 155                                                       36

**COUNTER-STATEMENT OF THE QUESTIONS INVOLVED**

I.    WHETHER THE EVIDENCE WAS SUFFICIENT TO SUPPORT THE JURY'S GUILTY VERDICT FOR PETITIONER'S CONVICTION AND THE SUPERIOR COURT'S DECISION WAS NOT AN OBJECTIVELY UNREASONABLE APPLICATION UNDER <u>JACKSON</u>?

## **COUNTER-STATEMENT OF THE CASE**

On November 20, 2014, following a four-day jury trial, Petitioner was found guilty of Murder of the Second Degree, two counts of Robbery, Burglary, and Criminal Conspiracy.  On April 17, 2015, Petitioner was sentenced to life in prison for Murder of the Second Degree, 90 months to 20 years on each count of Robbery, 54 months to 20 years for Burglary, and 90 to 20 years for Conspiracy.  All counts were imposed consecutively to each other.

On April 30, 2017, Petitioner appealed the judgment of sentence to the Superior Court of Pennsylvania.  On December 29, 2016, the Superior Court of Pennsylvania, in a published opinion affirmed the judgment of sentence. Commonwealth v. Rayner, 1263 EDA 2015, 153 A.3d 1049 (Pa. Super. 2016).  On direct appeal to the Superior Court, Petitioner raised the following claims:

> Petitioner raises five issues for the Court's review.
>
> 1.  Were the convictions for murder of the second degree, robbery, burglary and conspiracy to commit robbery and burglary against the weight of the evidence? Were the verdicts against the weight of the evidence when the only evidence was [Appellant's] DNA on a black tee shirt found [one and one-half] blocks from the crime and [fifteen] feet from a jar taken from the house, which jar had his half-brother's fingerprints?
>
> 2.  Were the convictions for murder of the second degree, robbery, burglary and conspiracy to commit robbery and burglary not supported by sufficient evidence?

3. Did the Assistant District Attorney err in his opening statement and err when presenting Detective Dutter by stating his office received an anonymous tip linking Dominique Lee (half-brother of [Appellant]) as a participant in the crime? Did [the trial court] err in denying the defense request for a mistrial? Did this intentional error violate [Appellant's] right to confront a critical witness in violation of the Sixth Amendment of the United States Constitution and Article I, Section 9 of the Pennsylvania Constitution and further, was this improper hearsay, particularly since [Appellant] was charged with conspiracy?

4. Did [the Commonwealth] err in [its] closing speech by incorrectly suggesting [Appellant] kept the alibi defense a secret until the last day of trial when, in fact, the alibi notice had been filed long before the trial, and did the [Commonwealth] err in giving [a] personal opinion that [Appellant] was guilty? Did [the trial court] err in not granting a timely mistrial?

5. Did [the trial court] err by interfering improperly with [defense counsel's] cross-examination of a key prosecution witness on his critical testimony on the tee shirt, and did [the trial court] err in criticizing [defense counsel] before the jury? Did [the trial court] further err in repeatedly and incorrectly criticizing [defense counsel] during his closing argument on the issue of burden of proof? Did [the trial court] wrongly criticize [defense counsel] in front of the jury? Did [the trial court] err in not granting a mistrial? Did [the trial court's] improper inference and criticism of [defense counsel] prejudice [Appellant], deny him a fair trial, and impact on [Appellant's] [Sixth] Amendment right to effective counsel?

(Appellant's Brief, at 6-8).

Commonwealth v. Rayner, 1263 EDA 2015, 2-3, 153 A.3d 1049, 1053-1054 (Pa.

Super. 2016).

On January 11, 2017, Petitioner filed a Petition for Allowance of Appeal.  On July 11, 2017, the Supreme Court of Pennsylvania denied the Petitioner filed a Petition for Allowance of Appeal.  Commonwealth v. Rayner, 24 MAL 2017, ___ Pa. ___, 169 A.3d 1046 (2017).

On September 28, 2017, Petitioner filed a Petition for a Writ of Certiorari with the United States Supreme Court.  On February 20, 2018, the United States Supreme Court denied Petition for a Writ of Certiorari.  Rayner v. Pennsylvania, ___ U.S. ___, 138 S.Ct. 976, 200 L.Ed.2d 259 (2018).

On November 9, 2018, Petitioner filed a Petition for Writ of Habeas Corpus, which has been assigned to the Honorable J. Curtis Joyner, and referred to United States Magistrate Judge Henry S. Perkin.  Petitioner raises the following claims:

> 1.    Were the convictions for murder of the second degree, robbery, burglary and conspiracy to commit robbery and burglary against the weight of the evidence and based on pure speculation?  Were the verdicts against the weight of the evidence when the only evidence was Mr. Rayner's DNA with other persons' DNA on a black tee shirt found l½ blocks from the crime and 15 feet from a jar taken from the house, which jar had his half-brother's fingerprints?  Did the Superior Court fail to properly address and discus this lack of evidence and its speculative nature in a case of actual innocence and does this implicate due process?  --- Judge MacElree affirmed the judgment of sentence.  The Superior Court, in an Opinion that failed to properly discuss and address this issue, affirmed.

> 2.    Were the convictions for murder of the second degree, robbery, burglary and conspiracy to commit robbery and burglary not supported by sufficient evidence?  Was the evidence too speculative in nature and did the Superior Court fail to

address the speculative nature of these verdicts?   Did the Superior Court fail to discuss this highly speculative evidence and lack of evidence and does this implicate due process?  --- Judge MacElree affirmed the judgment of sentence.   The Superior Court, in an Opinion that failed to properly address the issue, affirmed.

3.      Did the Assistant District Attorney err in his opening statement and err again when presenting Detective Dutter by stating his office received an anonymous tip linking Dominique Lee (half-brother of Mr. Rayner) as a participate in the crime? Did Judge MacElree err in denying the defense request for a mistrial?  Did this intentional error violate Mr. Rayner's right to confront a critical witness in violation of the Sixth Amendment of the United States Constitution and Article I, Section 9 of the Pennsylvania Constitution and further, was this improper hearsay, particularly since Mr. Rayner was charged with conspiracy?  Did the Superior Court wrongly treat this as course of conduct hearsay? --- Judge MacElree affirmed the judgment of sentence.  The Superior Court affirmed.

4.      Did the District Attorney err in his closing speech by incorrectly suggesting Mr. Rayner kept the alibi defense a secret until the last day of trial when, in fact, the alibi notice had been filed long before the trial, and did the Assistant District Attorney err in giving his personal opinion that Mr. Rayner was guilty? Did Judge MacElree err in not granting a timely mistrial?  Did the Superior Court neglect its responsibility by calling this oratorical flair, thus not addressing the serious misconduct?  --- Judge MacElree affirmed the judgment of sentence.   The Superior Court affirmed the Judgment of Sentence.

5.      Did Judge MacElree err by interfering improperly with Mr. Stretton's cross-examination of a key prosecution witness on his critical testimony on the tee shirt, and did Judge MacElree err in criticizing Mr. Stretton before the jury? Did Judge  MacElree further err in repeatedly and incorrectly criticizing Mr. Stretton during his closing argument on the issue of burden of proof?  Did Judge MacElree wrongly criticize Mr. Stretton in front of the jury?  Did Judge MacElree err in not granting a mistrial?  Did

Judge MacElree's improper interference and criticism of Mr. Stretton prejudice Mr. Rayner, deny him a fair trial, and impact on Mr. Rayner's 6th Amendment right to effective counsel? Did the Superior Court fail to responsibly address this most serious issue of a trial judge wrongly interfering and criticizing a trial lawyer in front of the jury? Judge MacElree affirmed the judgment of sentence. The Superior Court affirmed, but failed to properly address the issue.

November 9, 2018 Petition for Writ of Habeas Corpus, Exhibit "A".

The Commonwealth of Pennsylvania adopts the factual summary as set forth by the trial court:

The evidence offered at trial established that in the early morning hours of June 29, 2012, Dominick Williams was sitting in the living room of his apartment when three black men burst into the apartment. N.T. 11/17/14, pp. 67, 120. All carried guns and were disguised by t-shirts worn across their faces. N.T. 11/17/14, pp. 66-68, 77, 118-119, 132. Without warning, one of the men shot Dominick Williams. N.T. 11/17/15, p. 68. One of the gunmen then yelled "where it's at," signifying a robbery. N.T. 11/17/14, p. 69. Another pistol-whipped visitor Jalell Outz. N.T. 11/17/14, p. 72. One of the intruders then went to Aaron Crawford's bedroom and demanded of him "where is it at, where is it at, give it up," and then pistol whipped Aaron Crawford as well. N.T. 11/17/14, p. 150. Mr. Crawford opened his top right dresser drawer and showed the intruder a clear plastic lidded jar that contained marijuana, money, and a pack of Newport cigarettes. The intruder grabbed the jar and ran from the bedroom carrying the jar. N.T. 11/17/14, pp. 155-157. The intruder who grabbed the jar was not wearing gloves. N.T. 11/17/14, p. 150. All three of the intruders ran out of the apartment.

Dominick Williams was transported to the hospital and rushed to surgery in an attempt to save his life. He died on the operating table. N.T. 11/18/14, p. 124. Dr. Ian Hood, a forensic pathologist with thirty years of experience performed the autopsy

of Dominick Williams. N.T. 11/18/14, p. 212. At trial, Dr. Hood testified that Mr. Williams' cause of death was a gunshot wound to the left groin. N.T. 11/18/14, p. 218.

Approximately 90 minutes after Dominick Williams had been shot, police officer Stephen Galletta of the Coatesville City Police Department located the clear plastic jar tossed in a hedge row approximately a block and a half from the crime scene. N.T. 11/17/14, p. 244. The jar contained a pack of Newport cigarettes. N.T. 11/17/14, p. 163. Located several feet away was a black t-shirt. N.T. 11/17/14, pp. 244, 248. Witness Aaron Crawford was brought to the discovery scene and identified the jar as the one taken from his bedroom earlier that morning, and the t-shirt as the type of shirt that one of the robbers had been wearing across his face. N.T. 11/17/14, pp. 161-164.

Chester County Detective Kenneth Beam testified as an expert in the field of fingerprint analysis. Detective Beam received as evidence the plastic jar and t-shirt found close to the scene of the robbery. N.T. 11/18/14, p. 49. Detective [Beam] testified that the print with the sharpest and clearest detail found on the plastic jar belonged to co-defendant Dominique Lee. N.T. 11/18/14, pp. 65, 69, 73. Because Detective [Beam] knew that the t-shirt had possibly been tied to across the face of one of the intruders as a disguise, he surmised that the intruder might have left saliva on the shirt. Accordingly, Detective [Beam] sent the t-shirt to the State Police Laboratory for DNA analysis. N.T. 11/18/14, p. 55.

Michael Gossard, a forensic scientist with the Pennsylvania State Police, testified as a serology expert. Mr. Gossard tested the t-shirt for evidence of salvia. N.T. 11/18/14, p. 117. His testing indicated the presence of saliva on two different areas of the t-shirt. N.T. 11/18/14, pp.121, 135.

Timothy Gavel, a forensic scientist with the Pennsylvania State Police DNA lab, performed a DNA analysis on the evidence left on the t-shirt. Mr. Gavel testified that DNA evidence left on the t-shirt belonged to Petitioner Marquis Rayner. N.T. 11/18/14, pp. 149, 153. He also testified that the chance of a coincidental

DNA match in the African-American population was one in 7.9 quintillion.  N.T. 11/18/14, p. 154.

Viewing the above-listed evidence in the light most favorable to the Commonwealth, and drawing all proper inferences favorable to the Commonwealth, we find that the trier of fact could reasonably have concluded that all of the elements of the crimes of which Petitioner was convicted were established beyond a reasonable doubt. Thus, his sufficiency of the evidence claim must fail.

May 2, 2016 Opinion of the Honorable James P. MacElree, II, at 4-6.

On September 1, 2021, United States Magistrate Judge Henry S. Perkin issued a Report and Recommendation that the Petition should be denied and that the Certificate of Appealability limited to Petitioner's claim challenging the sufficiency of the evidence.

## RECOMMENDATION

AND NOW, this 1st day of September, 2021, it is respectfully RECOMMENDED that the petition for a writ of habeas corpus be DENIED with prejudice. It is FURTHER RECOMMENDED that a certificate of appealability SHOULD ISSUE, limited to Petitioner's claim challenging the sufficiency of the evidence.  Petitioner may file objections to this Report and Recommendation. See Local Civ. Rule 72.1. Failure to file timely objections may constitute a waiver of any appellate rights.

BY THE COURT:

/s/ Henry S. Perkin
HENRY S. PERKIN
UNITED STATES MAGISTRATE JUDE

On September 9, 2021, and September 14, 2021, Petitioner objected to the Report and Recommendation.  The objections raised insufficient evidence and prosecutorial and judicial misconduct claims.    On November 22, 2021, the Honorable John M. Gallagher Approved and Adopted the Report and Recommendation.  Rayner v. Overmyer, 2021 WL 5495812.  Judge Gallagher noted that "[a]fter review, the Court finds that Magistrate Judge Perkin did not err in his determination that the Superior Court's decision was not an objectively unreasonable application under Jackson."  Specifically, the District Court "concur[red] with Judge Perkin's determination that there is probable cause to ISSUE a certificate of appealability with respect to Petitioner's second claim challenging the sufficiency of the evidence."  Id.  However, the District Court stated that "we believe that reasonable jurists could find our assessment debatable. Accordingly, because Petitioner has made a substantial showing of the denial of a constitutional right, in particular, his rights under the Due Process Clause, I respectfully recommend that a certificate of appealability issue on Petitioner's second claim."  Id.  This Court issued an Order on April 21, 2022, denying Petitioner's request for a certificate of appealability on additional claims.

## <u>STATEMENT OF THE SCOPE AND STANDARD OF REVIEW</u>

"Scope of review" refers to the confines within which an appellate court must conduct its examination.  In other words, it refers to the matters (or "what") the appellate court is permitted to examine.  In contrast, "standard of review" refers to the manner in which (or "how") that examination is conducted.

In <u>Davis v. Adm'r New Jersey State Prison</u>, 795 Fed. Appx. 100, 102 (3d Cir. 2019), *cert. denied sub nom*. <u>Davis v. Johnson</u>, 140 S.Ct. 2748, 206 L.Ed.2d 923 (2020), the United States Court of Appeal for the Third Circuit stated in part:

> Where, as here, the District Court based its decision on the state court record without holding an evidentiary hearing, we apply a plenary standard of review. <u>Branch v. Sweeney</u>, 758 F.3d 226, 232 (3d Cir. 2014).  But while our review of the District Court's decision is plenary, we analyze the state court's decision with "considerable deference" in light of the Antiterrorism and Effective Death Penalty Act of 1996. <u>Palmer v. Hendricks</u>, 592 F.3d 386, 391-92 (3d Cir. 2010) (quotation marks omitted).

<u>Davis</u> at 102.

"The evidence is sufficient to support a conviction whenever, 'after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " <u>Parker v. Matthews</u>, —— U.S. ——, 132 S.Ct. 2148, 2152, 183 L.Ed.2d 32 (2012) (quoting <u>Jackson v. Virginia</u>, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)).  A state court decision rejecting a sufficiency challenge may not be

overturned on federal habeas review unless the "decision was 'objectively unreasonable.' " <u>Cavazos v. Smith</u>, ——U.S. ——, 132 S.Ct. 2, 4, 181 L.Ed.2d 311 (2011) (quoting <u>Renico v. Lett</u>, 559 U.S. 766, 768, 130 S.Ct. 1855, 176 L.Ed.2d 678 (2010)).

## SUMMARY OF ARGUMENT

The Third Circuit granted the certificate of appealability with respect to Petitioner's second claim challenging the sufficiency of the evidence. Specifically, to determine whether the District Court erred in his determination that the Superior Court's decision was not an objectively unreasonable application under Jackson. Petitioner contends that insufficient evidence exists to support the verdict. Petitioner does not dispute that the relevant statutes for robbery, burglary, conspiracy, and second-degree murder were violated. Rather, Petitioner argues that evidence was insufficient to identify him as a perpetrator of these crimes. Specifically, Petitioner claims that no one identified him at the crime scene.

Here, Petitioner's DNA was recovered from the black t-shirt resembling that of the kind used by a robber to cover his face, and the shirt was located next to the jar taken from Dominick Williams' apartment. Further, the fingerprint on the jar matched Petitioner's half-brother, Dominique Lee, allowing the jury to reasonably infer that Petitioner aided and participated in the crime with someone with whom he was familiar, which was consistent with the facts that more than one person committed this robbery. Under Travillion, the Superior Court applying Jackson was not an "objectively unreasonable" manner. As the Supreme Court noted in a case challenging sufficiency of the evidence, "[d]oubts as to whether [Petitioner] is in

fact guilty are understandable. But it is not the job [of federal courts] to decide whether the State's theory was correct." Thus, the Commonwealth asks this Court to find that sufficient evidence exists to sustain Petitioner's convictions.

## **ARGUMENT**

I. **THE EVIDENCE WAS SUFFICIENT TO SUPPORT THE JURY'S GUILTY VERDICT FOR PETITIONER'S CONVICTION AND THE SUPERIOR COURT'S DECISION WAS NOT AN OBJECTIVELY UNREASONABLE APPLICATION UNDER JACKSON.**

Petitioner contends that insufficient evidence exists to support the verdict. Petitioner does not dispute that the relevant statutes for robbery, burglary, conspiracy, and second-degree murder were violated.[1] Rather, Petitioner argues that evidence was insufficient to identify him as a perpetrator of these crimes. Specifically, Petitioner claims that no one identified him at the crime scene. In

---

[1] Petitioner's attorney states that he "believes and actually knows that Mr. Rayner is innocent." (See Appellant's Brief at P. 7). Counsel also improperly states: "Mr. Stretton, who is firmly convinced of Mr. Rayner's innocence…" Id. at 8. Prosecutors and defense counsel alike are generally prohibited from making assertions about their personal beliefs over the accused's guilt or innocence. U.S. v. Young, 470 U.S. 1, 105 S. Ct. 1038, 84 L. Ed. 2d 1 (1985); ("Defense counsel, like the prosecutor, must refrain from interjecting personal beliefs into the presentation of his case"); U.S. v. Frazier, 580 F.2d 229 (6th Cir. 1978); People v. Bell, 49 Cal. 3d 502, 262 Cal. Rptr. 1, 778 P.2d 129 (1989) (noting defense counsel's personal belief in his client's guilt or innocence is no more relevant than the belief of the prosecutor); ABA Standards for Criminal Justice, The Prosecution Function (3d ed. 1993) 3-5.8(a) ("It is unprofessional conduct for the prosecutor to express his or her personal belief or opinion as to the truth or falsity of any testimony or evidence or the guilt of the defendant"); ABA Standards for Criminal Justice, The Defense Function (3d ed. 1993) 4-7.8(b) ("It is unprofessional conduct for a lawyer to express a personal belief or opinion in his client's innocence or personal belief … unless such an inference is warranted by the evidence"). "A lawyer shall not ... state a personal opinion as to ... the credibility of a witness ... or the guilt or innocence of an accused." Model Rules of Professional Conduct, Rule 3.4(e) (1984); see also Code of Professional Responsibility, DR 7–106(C)(4) (1980).

challenging the sufficiency of the evidence, Petitioner stresses that the only evidence connecting him to the crimes was the black t-shirt, that contained Petitioner's DNA, that was found one and one-half blocks away from the crime scene near a jar that was taken from the victim's home which also contained his half-brother's fingerprints. He notes that the t-shirt also contained the DNA of four other unknown persons. Thus, Petitioner avers that the evidence suggesting that he was involved in the crime was also consistent with the inference that his half-brother and co-defendant could have taken the shirt from the house and used in in the robbery and consistent with the inference that other people could have been involved. Petitioner concludes that the evidence was insufficient to support the verdict because it required pure speculation. (See Appellant's Brief at P. 75).

The appropriate standard of review concerning a claim of insufficient evidence to support a state criminal conviction is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

A claim challenging the sufficiency of the evidence does provide a potential basis for habeas relief as it implicates the Due Process Clause. See Jackson v. Virginia, 443 U.S. 307, 315-324 (1979). Under Jackson, evidence is sufficient to support a conviction if, "after viewing the evidence in the light most favorable to the

prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." <u>Id.</u> at 319.

"<u>Jackson</u> claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference." <u>Coleman v. Johnson</u>, 566 U.S. 650, 651 (2012) (per curiam). The first layer of deference applies both on direct appeal and in the habeas context: "it is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury." <u>Id.</u> (quoting <u>Cavazos v. Smith</u>, 565 U.S. 1, 2 (2011) (per curiam)). On habeas review, a second layer of deference is added: "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'" <u>Id.</u> (quoting <u>Renico v. Lett</u>, 559 U.S. 766, 773 (2010)).

In <u>Cavazos v. Smith</u>, 565 U.S. 1, 132 S.Ct. 2, 181 L.Ed.2d 311 (2011), the United States Supreme Court stated in part:

> The opinion of the Court in <u>Jackson v. Virginia</u>, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed. 2d 560 (1979), makes clear that it is the responsibility of the jury - not the court - to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have

agreed with the jury. What is more, a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was "objectively unreasonable." Renico v. Lett, 559 U.S. [766], [733], 130 S.Ct. 1855, 1862, 176 L.Ed.2d 678 (2010) (internal quotation marks omitted).

Because rational people can sometimes disagree, the inevitable consequence of this settled law is that judges will sometimes encounter convictions that they believe to be mistaken, but that they must nonetheless uphold. The Court of Appeals in this case substituted its judgment for that of a California jury on the question whether the prosecution's or the defense's expert witnesses more persuasively explained the cause of a death. For this reason, certiorari is granted and the judgment of the Court of Appeals is reversed.

Cavazos v. Smith, 565 U.S. at 2, 132 S.Ct. at 3-4.

In United States v. Quiles, 618 F.3d 383 (3d Cir. 2010), the United States

Court of Appeals for the Third Circuit stated in part:

When evaluating a challenge to a jury's verdict, we apply a particularly deferential standard of review. United States v. Dent, 149 F.3d 180, 187 (3d Cir. 1998). We do not re-weigh the evidence or assess the credibility of witnesses. Id. (citing United States v. Voigt, 89 F.3d 1050, 1080 (3d Cir. 1996)). Instead, we view the evidence in the light most favorable to the government before deciding whether any rational trier of fact could have found the presence of the essential elements of the crime beyond a reasonable doubt. Id. (citing United States v. Thomas, 114 F.3d 403, 405 (3d Cir. 1997)).

Quiles at 395. See also United States v. Tyson, 653 F.3d 192, 202 (3d Cir. 2011);

United States v. McBane, 433 F.3d 344, 348 (3d Cir. 2005) (courts do not weigh

evidence or determine the credibility of witnesses on sufficiency of the evidence review).  The United States Court of Appeals for the Third Circuit stated in part:

> [T]he verdict must be upheld as long as it does not "fall below the threshold of bare rationality." Coleman v. Johnson, [566] U.S. [650], 132 S.Ct. 2060, 2065, 182 L.Ed.2d 978 (2012) ("The jury in this case was convinced, and the only question under Jackson v. Virginia is whether that finding was so insupportable as to fall below the threshold of bare rationality.").

United States v. Caraballo-Rodriguez, 726 F.3d 418, 431 (3d Cir. 2013) (en banc).

The Pennsylvania standard is the same as the federal standard.  Evidence will be deemed sufficient to support a guilty verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt.  Commonwealth v. Weston, 561 Pa. 199, 749 A.2d 458 (2000). In deciding the sufficiency of the evidence, the reviewing court must accept as true all the evidence, and the reasonable inferences therefrom, upon which the factfinder could have based its verdict and then ask whether that evidence, viewed in the light most favorable to the Commonwealth as verdict winner, was sufficient to prove guilt beyond a reasonable doubt.  Commonwealth v. Young, 494 Pa. 224, 431 A.2d 230 (1981); Commonwealth v. Boettcher, 313 Pa. Super. 194, 459 A.2d 806 (1983).

In applying this test, the entire trial record must be evaluated and all the evidence received must be considered.  A reviewing court must not give weight to or speculate upon matters not in evidence.  A reviewing court must recognize and honor the right and obligation of the trier of fact, while passing upon the credibility

of witnesses and the weight to be afforded the evidence produced, to believe all, part or none of the evidence. Commonwealth v. Griscavage, 512 Pa. 540, 517 A.2d 1256 (1986); Commonwealth v. Harper, 485 Pa. 572, 403 A.2d 536 (1979).

The facts and circumstances established by the Commonwealth need not be absolutely incompatible with the defendant's innocence, but the question of any doubt is for the trier of fact, unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances. Commonwealth v. Sullivan, 472 Pa. 129, 371 A.2d 468 (1977); Commonwealth v. Libonati, 346 Pa. 504, 31 A.2d 95 (1943); Commonwealth v. Davis, 799 A.2d 860 (Pa. Super. 2002); Commonwealth v. Seibert, 424 Pa. Super. 242, 622 A.2d 361 (1993). In other words, before granting a motion in arrest of judgment, the court must make a finding that the evidence supporting the verdict of guilt is so weak and inconclusive that a reasonable fact finder of fact could not be satisfied as to the guilt of the defendant beyond a reasonable doubt. Commonwealth v. Blevins, 453 Pa. 481, 309 A.2d 421 (1973); Commonwealth v. Lanager, 360 Pa. Super. 578, 521 A.2d 53 (1987).

The Supreme Court of Pennsylvania has articulated the reasons why the trier of fact has the right and obligation to believe all, part or none of the evidence:

> The trier of fact has the unique opportunity to see and hear subtleties of answers and movements of witnesses and parties not viewable from the cold record. Words are delivered in a wider context than appear on a printed page. What they mean is often

19

determined from how they are said, by whom and for what reason, for which reason a trier of fact is not required to accept all he hears.

Commonwealth v. Griscavage, 512 Pa. 540, 546, 517 A.2d 1256, 1259 (1986).

The jury, as factfinder, determined that the evidence presented at trial proved Petitioner committed the crimes of Murder of the Second Degree, Robbery, Burglary, and Conspiracy. A thorough review of the evidence, when viewed in the light most favorable to the Commonwealth, does not show that the evidence was so weak and inclusive that a reasonable factfinder could not be satisfied as to the guilt of the Petitioner beyond a reasonable doubt. As a result, this Court should affirm Petitioner's convictions and sentence.

Here, Petitioner was convicted of the Murder of the Second Degree, two counts of Robbery, Burglary, and Criminal Conspiracy the elements for each offense is stated below as follows:

Murder of the Second Degree is codified as

> Murder of the second degree.-- A criminal homicide constitutes murder of the second degree when it is committed while defendant was engaged as a principal or an accomplice in the perpetration of a felony.

18 Pa. C.S.A. §2502(b). Robbery is codified as

> (1) A person is guilty of robbery if, in the course of committing a theft, he:
>
> > (i) inflicts serious bodily injury upon another;

(ii) threatens another with or intentionally puts him in fear of immediate serious bodily injury;

18 Pa. C.S.A. §3701(a)(1)(i)(ii). Burglary is codified as

(a) Offense defined.--A person is guilty of burglary if he enters a building or occupied structure, or separately secured or occupied portion thereof, with intent to commit a crime therein, unless the premises are at the time open to the public or the actor is licensed or privileged to enter.

18 Pa. C.S.A. §3502(a).[2] Conspiracy is codified as:

(a) Definition of conspiracy.--A person is guilty of conspiracy with another person or persons to commit a crime if with the intent of promoting or facilitating its commission he:

(1) agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime; or

18 Pa. C.S.A. §903(a)(1).

In this case, there is no dispute that the relevant Pennsylvania statutes for murder and robbery were violated. In fact, Petitioner concedes this point in his brief. (See Appellant's Brief at P. 57).[3] The question on appeal is whether there was sufficient evidence for a rational trier of fact to identify Petitioner as the perpetrator

---

[2] The Burglary statute listed is the statute in effect at the time of Defendant's crime. The statue has since been updated on September 4, 2012, and again on February 21, 2014.

[3] Petitioner admits that "the facts as presented [at trial] would meet the elements of the crime…" (See Appellant's Brief at 57). Petitioner concedes the "issue is not elements. The issue is who was the perpetrator…" Id. at 59.

of these crimes. Simply put, whether the evidence placed Petitioner at the scene of the crime, beyond a reasonable doubt, and ultimately, whether the Pennsylvania court's denial of relief on Petitioner's direct appeal was objectively unreasonable, in light of the evidence in this case.

Under § 2254(d)(1), "[a] state court decision is an unreasonable application ... if the court identifies the correct governing legal rule from the Supreme Court's cases but unreasonably applies it to the facts of the particular case." Jacobs v. Horn, 395 F.3d 92, 100 (3d Cir. 2005) (internal quotation marks omitted). "[T]he state court's application of clearly established law must be objectively unreasonable before a federal court may grant the writ." Rountree v. Balicki, 640 F.3d 530, 537 (3d Cir. 2011) (internal quotation marks omitted). In determining whether a state court's application of clearly established Supreme Court law is objectively reasonable, this Court may consider the reasoning of federal courts below the level of the Supreme Court. Marshall v. Hendricks, 307 F.3d 36, 71 n.24 (3d Cir. 2002) ("We have concluded ... that decisions of federal courts below the level of the United States Supreme Court may be helpful to us in ascertaining the reasonableness of state courts' application of clearly established United States Supreme Court precedent, as well as helpful amplifications of that precedent") (internal quotation marks omitted).

When a petitioner alleges entitlement to habeas relief by challenging the sufficiency of the evidence supporting his state court conviction, as Petitioner does,

the clearly established federal law governing the insufficient evidence claim is the standard set out by the Supreme Court in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). See, e.g., Eley, 712 F.3d at 847 ("The clearly established federal law governing Eley's [insufficient evidence] claim was determined in Jackson"). Under Jackson, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson, 443 U.S. at 319, 99 S.Ct. 2781 (citing Johnson v. Louisiana, 406 U.S. 356, 362, 92 S.Ct. 1620, 32 L.Ed.2d 152 (1972)).

This reasonable doubt standard of proof requires the finder of fact "to reach a subjective state of near certitude of the guilt of the accused." Id. at 315, 99 S.Ct. 2781 (citing In re Winship, 397 U.S. 358, 372, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970) (Harlan, J., concurring)) (emph. added). It " 'plays a vital role in the American scheme of criminal procedure,' because it operates to give 'concrete substance' to the presumption of innocence to ensure against unjust convictions, and to reduce the risk of factual error in a criminal proceeding." Id. (quoting Winship, 397 U.S. at 363, 90 S.Ct. 1068). A conviction that fails to satisfy the Jackson standard violates due process, see Jackson, 443 U.S. at 319, 99 S.Ct. 2781, and thus a convicted habeas petitioner is entitled to relief if the state court's adjudication denying the insufficient

evidence claim was objectively unreasonable, see <u>Parker v. Matthews</u>, 567 U.S. 37, 43, 132 S.Ct. 2148, 183 L.Ed.2d 32 (2012).

In determining whether the Superior Court's decision was objectively unreasonable, this Court can consider <u>Travillion v. Superintendent Rockview SCI</u>, 982 F.3d 896 (3d Cir. 2020). In <u>Travillion</u>, the Court of Appeals granted *habeas corpus* relief, finding that the Pennsylvania court's adjudication of Travillion's insufficient evidence claim involved an unreasonable application of <u>Jackson</u>. <u>Id.</u> at 898, 99 S.Ct. 2781.

At trial, the jury found Travillion guilty of robbery based on testimony presented by two witnesses for the Commonwealth, (1) Deborah Lynn Diodati, the manager of the store that was robbed; and (2) Detective John J. Godlewski, a fingerprint expert. <u>Id.</u> at 196. Ms. Diodati could not identify Travillion as the robber, as the robber's face was covered, but described the robber as: 5'9'' to 5'10''; around 160 pounds; probably in his early-to mid-twenties; possibly African-American based on his voice; and wearing a big, bulky off-white winter coat with fur around the hood, a turtle neck pulled up to his nose, and dark pants. <u>Id.</u> at 899. At the time of arrest, the police report indicated that Travillion "was 6'1" tall and weighed 170 pounds" and "had black, straight and short hair, brown eyes, medium complexion, medium frame build, a 'U.S. region' accent, and a pierced left ear." Id. Detective Godlewski testified that the fingerprints found on a Manila folder left at the scene of

the crime matched those of Travillion. Id. The Superior Court rejected Travillion's sufficiency claim, concluding that the fingerprints on the Manila envelope and paper left at the scene sufficiently proved Travillion's identity as the robber. Id. at 902. On review, the Third Circuit found the state court's conclusion "objectively unreasonable," explaining:

Travillion's fingerprints were only found on easily movable objects, i.e., the Manila folder and the paper, and there was no evidence of his prints anywhere else at the crime scene. There was no evidence that the folder and paper were unavailable to Travillion prior to the robbery, no evidence as to the age of the prints, and no evidence as to how long the prints could remain on the folder and paper after their impression. The fingerprint expert was unable to say when the prints were placed on the folder and paper.

In addition, there was a lack of sufficient additional incriminating evidence, circumstantial or otherwise, or any other evidence so as to allow a rational juror to find guilt beyond a reasonable doubt. Evidence established that Travillion touched the folder at some indefinite time with his left hand, and there is evidence that the robber carried the folder at the time of the crime in his left hand, there is not sufficiently incriminating evidence that Travillion was the perpetrator holding the folder at the time of the crime.

Ms. Diodati's description of the offender did not exclude Travillion as the perpetrator. Specifically, Diodati testified that she never saw the robber's face, and believed that he was African-American based on his voice. It is undisputed that Travillion was actually three to four inches taller than the offender described by the witness. The Court noted that the general description given by the witness in this case was insufficient additional incriminating evidence for any rational trier of fact to find Travillion guilty of being the robber beyond a reasonable doubt.

The witness' testimony also revealed the robber had knowledge about the store unknown to the general public, including, among other things, the store's layout and inner offices, the existence and location of a second safe known only to store management and assistants, and (possibly) that the witness had children. The timing of the robbery also suggests the robber knew when a large amount of cash would be present before the armored car pickup. There was no evidence, however, that Travillion was privy to any of this information.

> There was no evidence connecting Travillion to the robbery, such as evidence he owned clothing worn by the intruder, or that he owned a bag similar to the one used during the crime, or that he had any connection to the getaway vehicle, or possessed any of the robbery's proceeds. There was also no evidence of any attempt to match the photographed shoeprint at the crime scene with shoes owned by Travillion, or even his shoe size.

Travillion, 982 F.3d at 904–05.

In this case, the District Court noted that Petitioner's case was more compelling than the facts in <u>Travillion</u>.  Specifically, the District Court found:

> In comparison to <u>Travillion</u>, the evidence presented by the Commonwealth of Petitioner's guilt is more compelling."   Not only was Petitioner's DNA recovered from the black t-shirt resembling that of the kind used by a robber to cover his face, but the shirt was located next to the jar taken from Dominick Williams' apartment. Further, the fingerprint on the jar matched Petitioner's half-brother, Dominique Lee, allowing the jury to reasonably infer that Petitioner aided and participated in the crime with someone with whom he was familiar. Although this case presents a close issue on the question of sufficiency, we cannot find, as in Travillion, that the Superior Court applied Jackson in an "objectively unreasonable" manner. As the Supreme Court noted in a case challenging sufficiency of the evidence, "[d]oubts as to whether [Petitioner] is in fact guilty are understandable. But it is not the job [of federal courts] to decide whether the State's theory was correct." <u>Cavazos</u>, 565 U.S. at 8, 132 S.Ct. 2.

<u>Rayner v. Overmyer</u>, No. CV 18-4909, 2021 WL 5496867, at *11 (E.D. Pa. Sept. 1, 2021), report and recommendation adopted, No. 2:18-CV-04909-JMG, 2021 WL 5495812 (E.D. Pa. Nov. 23, 2021).

A state court decision reflects an "unreasonable application of such law" only "where there is no possibility fair minded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents," a standard the Supreme Court has advised is "difficult to meet" because it was "meant to be." <u>Richter</u>, 562 U.S. at 100, 102, 131 S.Ct. 770. As the Supreme Court has cautioned, an "unreasonable application of federal law is different from an incorrect application of federal law," id. at 101, 131 S.Ct. 770 (quoting <u>Williams</u>, 529 U.S. at 410, 120 S.Ct.

1495), and whether we "conclude[ ] in [our] independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly" is irrelevant, as AEDPA sets the bar higher. Williams, 529 U.S. at 411, 120 S.Ct. 1495.

Finally, "a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." Miller-El v. Cockrell, 537 U.S. 322, 340, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003); see also Lambert v. Blackwell, 387 F.3d 210, 234-35 (3d Cir. 2004). In conducting this inquiry, this Court may not deem state-court factual determinations unreasonable "merely because [it] would have reached a different conclusion in the first instance." Brumfield v. Cain, 576 U.S. 305, 313-14, 135 S.Ct. 2269, 192 L.Ed.2d 356 (2015) (quoting Wood v. Allen, 558 U.S. 290, 301, 130 S.Ct. 841, 175 L.Ed.2d 738 (2010)). Instead, § 2254(d)(2) demands we accord the state trial court substantial deference. So if " '[r]easonable minds reviewing the record might disagree' about the finding in question, 'on habeas review that does not suffice to supersede the trial court's ... determination.' " Wood, 558 U.S. at 301, 130 S.Ct. 841 (quoting Rice v. Collins, 546 U.S. 333, 341-42, 126 S.Ct. 969, 163 L.Ed.2d 824 (2006)). Yet "[e]ven in the context of federal habeas, deference does not imply

abandonment or abdication of judicial review," and "does not by definition preclude relief." <u>Miller-El</u>, 537 U.S. at 340, 123 S.Ct. 1029.

In support of his claim challenging the sufficiency of the evidence, Petitioner emphasizes that he presented four alibi witnesses who confirmed that he was with them at the time of this murder. The introduction of an alibi defense frequently poses the risk that if the alibi evidence is disbelieved, the defense will backfire, leading the jury to convict because of the failure of the defense rather than because the evidence introduced by the government has satisfied the jury of the defendant's guilt beyond a reasonable doubt. <u>Wright v. Smith</u>, 569 F.2d 1188, 1191 (2d Cir. 1978). Even if a defendant presents alibi testimony, the jury is free to disbelieve the evidence and reject the defense. <u>United States v. Cotton</u>, 770 F.2d 940, 945 (11th Cir.1985); <u>United States v. Spoonhunter</u>, 476 F.2d 1050 (10th Cir. 1973); <u>United States v. Depalma</u>, 414 F.2d 394 (9th Cir. 1969) (whether to believe or disbelieve alibi evidence is typically a question for the jury). Petitioner's proof of alibi contained internal inconsistencies and could well have been disbelieved by the jury.

In this case, Petitioner called four alibi witnesses. The first alibi witness was Petitioner's aunt, Tara Lee, who testified that on the evening of June 28th and early morning of June 29th she was working as the "Canteen Manger" at the VFW club. (A. 638-640). According to her testimony, Petitioner arrived at the VFW approximately 10:40 pm and he left at 2:10 am. Id. The bar contained approximately

50 to 100 patrons that evening. Id. at A. 645. Although his aunt knew that Petitioner was charged with murder, she admitted that she never contacted the police to inform them that her nephew was in the VFW the night of the murder. Id. at 649.

The second alibi witness was Petitioner's first-cousin, Porscha Hoggard. Id. at A. 663. Hoggard testified that she sat at the main door to the VFW and collected money. Id. She also failed to notify and police after discovering Petitioner was arrested and refused to talk about her testimony before trial with a county detective. Id. at A. 670. The third alibi witness was Petitioner's best friend, Cornell Dickinson. Dickinson testified that when he met with the county detective, he thought Petitioner was with him at the Valley Forge Casino the night of the murder. Id. at A. 686, 689.

The fourth and final alibi witness was Nichelle McCain. She testified that Petitioner was "her best friend's [Tara Lee] family member," and she was working as a bartender at the VFW the night of the murder. Id. at A. 698. McCain admitted that she could not be sure if Petitioner was in fact in the VFW at the time the murder occurred, between 12 and 12:30 that night. Id. at A. 699. Nor was she able to recall the time Petitioner left the VFW that night. Id.

As evident from the alibi witnesses, they were all either related to Petitioner, or close friends to him or his relatives. Thus, their testimony was suspect due to their interest in his case. Further, three of them flatly refused to talk with a county detective about this case prior to the trial. And none of the four informed the police

about this information after Petitioner was arrested. Finally, even if Petitioner did

go to the VFW none of the witnesses could say for certain whether he remained there

all night. The jury was free to discredit their testimony and his alleged alibi.

The United States Supreme Court explained circumstantial evidence is

sufficient to support a conviction as follows:

> Circumstantial evidence in this respect is intrinsically no different from
> testimonial evidence. Admittedly, circumstantial evidence may in some
> cases point to a wholly incorrect result. Yet this is equally true of
> testimonial evidence. In both instances, a jury is asked to weigh the
> chances that the evidence correctly points to guilt against the possibility
> of inaccuracy or ambiguous inference. In both, the jury must use its
> experience with people and events in weighing the probabilities. If the
> jury is convinced beyond a reasonable doubt, we can require no more.

Holland v. United States, 348 U.S. 121, 140, 75 S. Ct. 127, 137–38, 99 L. Ed. 150

(1954).

Linking Petitioner to the crimes is the presence of his DNA on the black t-

shirt, found next to the stolen jar. The expert witness, Mr. Gavel, also testified that

there were at least two other DNA profiles present on the t-shirt that he could not

identify. (N.T. 11/18/14, 150:4-15.) As Petitioner argues, it is possible that his co-

defendant, and half-brother, could have taken the black t-shirt with Petitioner's DNA

and used it during the robbery and shooting. For the DNA profile identified as

Petitioner's on the t-shirt, Mr. Gavel explained that the chance of a coincidental DNA

match in the African-American population was one in 7.9 quintillion. (Id. at 153, 2-

23.) With respect to the other two sections of t-shirt tested, Mr. Gavel testified that a "DNA profile was obtained but due to the complexity of the mixture no results were obtained from [those] particular items." (Id. at 156:19-157:5.)

The evidence establishing the essential elements of these crimes is entirely circumstantial, "Jackson leaves juries broad discretion in deciding what inferences to draw from the evidence presented at trial, requiring only that jurors 'draw reasonable inferences from basic facts to ultimate facts.' " Coleman, 566 U.S. at 655, 132 S.Ct. 2060 (quoting Jackson, 443 U.S. at 319, 99 S.Ct. 2781.) As previously stated, a black t-shirt, matching the description of one used by a robber to disguise his face, contained the DNA of Petitioner in an area that also tested positive for saliva. This shirt was found only ninety minutes after the robbery, burglary, and shooting a block and a half from the crime scene. Further, the shirt was located nearby the recovered jar taken from the apartment of Dominick Williams. Expert witness testimony indicated the presence of a left thumbprint on the jar belonging to Petitioner's half-brother, Dominique Lee. On the basis of these facts, a rational jury could infer that Petitioner left the DNA on the black shirt when he participated in the robbery, burglary, and shooting at Dominick Williams' residence. Further, a rational jury could infer that, after the wearing the black shirt across his face during the crime, either he, or an accomplice, discarded the shirt and stolen jar shortly after and only one and one-half blocks away from the scene of the crime.

Petitioner argues that the DNA found on the black t-shirt is "speculative and conflicting" as other profiles were also identified but did not produce a match to any individuals. Thus, he reasons that the jury could have easily inferred either that Petitioner's half-brother and co-defendant took the shirt from the house to use in the robbery or that another unidentified person could have been involved. However, the test for sufficiency of the evidence before this Court, and the Superior Court, is not whether additional inferences are consistent with the evidence presented, but rather, whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson, 443 U.S. at 319, 99 S.Ct. 2781. Jackson unambiguously instructs that a reviewing court, "faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution and must defer to that resolution." Id. at 326, 99 S.Ct. 2781.

The test for sufficiency under Jackson states that evidence is sufficient to support a conviction if, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." See Jackson, 443 U.S. at 319.

The Commonwealth adopts the legal analysis of the trial court and the Superior Court in determining that the evidence was sufficient to prove that Petitioner committed the aforementioned offenses:

> The evidence offered at trial established that in the early morning hours of June 29, 2012, Dominick Williams was sitting in the living room of his apartment when three black men burst into the apartment. N.T. 11/17/14, pp. 67, 120. All carried guns and were disguised by t-shirts worn across their faces. N.T. 11/17/14, pp. 66-68, 77, 118-119, 132. Without warning, one of the men shot Dominick Williams. N.T. 11/17/15, p. 68. One of the gunmen then yelled "where it's at," signifying a robbery. N.T. 11/17/14, p. 69. Another pistol-whipped visitor Jalell Outz. N.T. 11/17/14, p. 72. One of the intruders then went to Aaron Crawford's bedroom and demanded of him "where is it at, where is it at, give it up," and then pistol-whipped Aaron Crawford as well. N.T. 11/17/14, p. 150. Mr. Crawford opened his top right dresser drawer and showed the intruder a clear plastic lidded jar that contained marijuana, money, and a pack of Newport cigarettes. The intruder grabbed the jar and ran from the bedroom carrying the jar. N.T. 11/17/14, pp. 155-157. The intruder who grabbed the jar was not wearing gloves. N.T. 11/17/14, p. 150. All three of the intruders ran out of the apartment.
>
> Dominick Williams was transported to the hospital and rushed to surgery in an attempt to save his life. He died on the operating table. N.T. 11/18/14, p. 124. Dr. Ian Hood, a forensic pathologist with thirty years of experience performed the autopsy of Dominick Williams. N.T. 11/18/14, p. 212. At trial, Dr. Hood testified that Mr. Williams' cause of death was a gunshot wound to the left groin. N.T. 11/18/14, p. 218.

May 2, 2016, Opinion Pursuant to Pa.R.A.P. 1925(a) by the Honorable James P. MacElree, II, at pgs. 4 – 6.

Likewise, the Superior Court of Pennsylvania correctly addressed this claim stating in part:

> In his second issue, Petitioner argues that the evidence was insufficient to support the verdict because it required pure speculation. (*See* Appellant's Brief, at 49-55). Appellant's issue lacks merit.
>
>> In reviewing the sufficiency of the evidence, we must determine whether the evidence admitted at trial, and all reasonable inferences drawn from that evidence, when viewed in the light most favorable to the Commonwealth as verdict winner, was sufficient to enable the fact finder to conclude that the Commonwealth established all of the elements of the offense beyond a reasonable doubt. The Commonwealth may sustain its burden by means of wholly circumstantial evidence. Further, the trier of fact is free to believe all, part, or none of the evidence.
>
> Commonwealth v. Taylor, 137 A.3d 611, 614 (Pa. Super. 2016) (citation omitted). In this case, Petitioner was convicted of murder of the second degree, robbery, burglary, and conspiracy.
>
> Pursuant to section 2502(b) of the Crimes Code, "[a] criminal homicide constitutes murder of the second degree when it is committed while defendant was engaged as a principal or an accomplice in the perpetration of a felony." 18 Pa.C.S.A. § 2502(b). The Crimes Code also provides, in pertinent part, that "[a] person is guilty of robbery if, in the course of committing a theft, he ... inflicts serious bodily injury upon another [or] threatens another with or intentionally puts him in fear of immediate serious bodily injury[.]" 18 Pa.C.S.A. §§ 3701(a)(1)(i), (ii). It further provides, "[a] person commits the offense of burglary if, with the intent to commit a crime therein, the person ... enters a building or occupied structure, or separately secured or occupied portion thereof that is adapted for overnight accommodations in which at the time of the offense any person is present[.]" 18 Pa.C.S.A. § 3502(a)(1). Finally:

> A person is guilty of conspiracy with another person or persons to commit a crime if with the intent of promoting or facilitating its commission he ... agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime ... or ... agrees to aid such other person or persons in the planning or commission of such crime
>
> ....

18 Pa.C.S.A. § 903(a).

In this case, the evidence at trial established that three men broke into Dominick Williams' apartment with the intent of robbing him. (*See* N.T. Trial, 11/17/14, at 67, 69, 150). The men were armed with guns and wore t-shirts across their faces. (*See* id. at 66-68, 77, 118-119, 132). After shooting Mr. Williams, and pistol whipping his roommate, Aaron Crawford, one of the men stole a plastic-lidded jar that contained marijuana and other items. (*See* id. 155-57). The individual was not wearing gloves. (*See* id. at 150).

As further described by the trial court:

> Approximately [ninety] minutes after Dominick Williams had been shot, police officer Stephen Galletta of the Coatesville City Police Department located the clear plastic jar tossed in a hedge row approximately a block and a half from the crime scene. (*See* id. at 244). The jar contained a pack of Newport cigarettes. (*See* id. at 163). Located several feet away was a black t-shirt. (*See* id. at 244, 248). Witness Aaron Crawford was brought to the discovery scene and identified the jar as the one taken from his bedroom earlier that morning, and the t-shirt as the type of shirt that one of the robbers had been wearing across his face. (*See* id. at 161-64).
>
> Chester County Detective Kenneth Beam testified as an expert in the field of fingerprint analysis. Detective Beam received as evidence the plastic jar and t-shirt found close

to the scene of the robbery. (*See* N.T. Trial, 11/18/14, at 49).

Detective Bean testified that the print with the sharpest and clearest detail found on the plastic jar belonged to co-defendant Dominique Lee. (*See* id. at 65, 69, 73). Because Detective Bean knew that the t-shirt had possibly been tied across the face of one of the intruders as a disguise, he surmised that the intruder might have left saliva on the shirt. Accordingly, Detective Bean sent the t-shirt to the State Police Laboratory for DNA analysis. (*See* id. at 55).

Michael Gossard, a forensic scientist with the Pennsylvania State Police, testified as a serology expert. Mr. Gossard tested the t-shirt for evidence of saliva. (*See* id. at 117). His testing indicated the presence of saliva on two different areas of the t-shirt. (*See* id. at 121, 135).

Timothy Gavel, a forensic scientist with the Pennsylvania State Police DNA lab, performed a DNA analysis on the evidence left on the t-shirt. Mr. Gavel testified that DNA evidence left on the t-shirt belonged to Petitioner [ ]. (*See* id. at 149, 153). He also testified that the chance of a coincidental DNA match in the African-American population was one in 7.9 quintillion. (*See* id. at 154).

(Trial Ct. Op., at 4-6) (some record citation formatting provided).

Based on the above evidence, and our review of the record in the light most favorable to the Commonwealth as verdict winner, we conclude that it was sufficient to establish the elements of the crimes of which Petitioner was convicted. *See* Taylor, *supra* at 614. Appellant's sufficiency challenge does not merit relief.

Commonwealth v. Rayner, 1263 EDA 2015, 4-8, 153 A.3d 1049, 1054-1056 (Pa.

Super. 2016 (footnote in original).

While the evidence against Petitioner was circumstantial, it was sufficient to

sustain his convictions. <u>See</u> <u>Gray</u>, 867 A.2d at 567. Consequently, this Court should affirm his convictions and sentence.  For the foregoing reasons, the Appellee, the Commonwealth of Pennsylvania, contends that the evidence was sufficient to support the jury's guilty verdicts.

# **CONCLUSION**

WHEREFORE, Appellee/Respondent, the District Attorney of Chester County, respectfully requests this Honorable Court to affirm the November 21, 2021, Order, denying Petitioner's Habeas Corpus Petition.

                                        Respectfully submitted,

July 8, 2022                                  /s/ Gerald P. Morano
_____         _____
DATE                                         Gerald P. Morano, Esquire
                                             Attorney I.D. No. 82269
                                             Chief Deputy District Attorney
                                             District Attorney's Office
                                             Chester County Justice Center
                                             201 West Market Street, P.O. Box 2746
                                             West Chester, PA  19380-0989
                                             (610) 344-6801

---

## CERTIFICATION OF BAR MEMBERSHIP

I hereby certify, pursuant to 3rd Cir. L.A.R. 46.1, that I am a member
of the bar of the United States Court of Appeals for the Third Circuit.

---

## CERTIFICATION OF COMPLIANCE WITH F.R.A.P. 32(a)

1.      I hereby certify that this brief complies with the type-volume limitation of
F.R.A.P. 32(a)(7)(B), which is 13,000 words, as it contains **[11,057]** words,
excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2.      I hereby certify that this brief complies with the typeface requirements of
F.R.A.P. 32(a)(5) and the type style requirements of F.R.A.P. 32(a)(6) as it has been
prepared in a proportionally spaced typeface using **[Microsoft Word]** in **[14 Point
Font - Times New Roman Style]**.

---

## CERTIFICATION OF COMPLIANCE WITH 3d Cir. L.R.A. 31.1

1.      I hereby certify that I am filing seven (7) copies of this brief with the clerk,
and serving two (2) copies of this brief on opposing counsel [*See* **Proof of Service**].

2.      I hereby certify that I am filing with the court the identical brief in electronic
form [PDF format], as the seven (7) copies of this brief filed with the clerk, and the
two (2) copies of this brief served on opposing counsel.

3.      I hereby certify that a virus detection program **[Cisco AMP for Endpoints]**
has been run on the electronic brief and that no virus was detected.

---

July 8, 2022                        /s/ Gerald P. Morano
_____          _____
DATE                             Gerald P. Morano, Esquire
                                 Attorney I.D. No. 82269
                                 Chief Deputy District Attorney
                                 Attorney for Appellees

**IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT**

_____

NO. 21-3230
_____

**MARQUIS LEE RAYNER,**
Appellant

**vs.**

**SUPERINTENDENT FOREST SCI, et al.,**
Appellees
_____

**PROOF OF SERVICE**

I hereby certify that I am serving two (2) copies of this document,
upon the person, indicated below, by **FIRST CLASS MAIL**,
which satisfies the requirements of F.R.A.P. 25:

Samuel C. Stretton, Esquire
103 South High Street
P.O. Box 3231
West Chester, PA 19381-3231


_____


July 8, 2022                          /s/ Gerald P. Morano
_____          _____
DATE                                    Gerald P. Morano, Esquire
                                        Attorney I.D. No. 82269
                                        Chief Deputy District Attorney
                                        Attorney for Appellees
                                        District Attorney's Office
                                        Chester County Justice Center
                                        201 West Market Street, P.O. Box 2746
                                        West Chester, PA  19380-0989
                                        (610) 344-6801